UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

THE ESTATE OF KRISTINA ANN FIEBRINK,
by Special Administrator Nathaniel Cade, Jr.;
THE ESTATE OF ANGELICA M. FIEBRINK;
JOSE D. MARTINEZ JR.; and ROBERT
MARTINEZ,

    Plaintiffs,

v.

ARMOR CORRECTIONAL HEALTH
SERVICES, INC.; DR. KAREN RONQUILLO-
HORTON; BROOKE SHAIKH APNP;
VERONICA WALLACE LPN; BRITENY R.
KIRK, LPN; EVA CAGE, LPN; BRANDON
DECKER APNP; MILWAUKEE COUNTY;
DAVID A. CLARKE JR.; RICHARD R.
SCHMIDT; LATISHA AIKENS; BRIAN
PIASECKI; JENNIFER MATTHEWS;
LATRAIL COLE; LATOYA RENFRO; JOHN
DOES 1-10; JOHN DOES 11-20; EVANSTON
INSURANCE COMPANY; and WISCONSIN
COUNTY MUTUAL INSURANCE
CORPORATION,

    Defendants.

Case No.: 18-CV-832

---

**DEFENDANT ARMOR CORRECTIONAL HEALTH SERVICES, INC.'S,
BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT TWO**

---

Defendant Armor Correctional Health Services, Inc. ("Armor"), by its attorneys, Hinshaw & Culbertson LLP, submits the following brief in support of its Rule 12(b)(6) motion for dismissal of The Estate of Kristina A. Fiebrink's ("The Estate") Count Two, the *Monell* claim, against Armor.

## INTRODUCTION

The Estate's *Monell* claim against Armor must be dismissed for three reasons: 1) It is overbroad and lacks the requisite detail; 2) there is no alleged widespread policy that caused similar incidents; and 3) the alleged policy is not the moving force behind its alleged injury.

## PROCEDURAL BACKGROUND

The Estate filed a §1983 complaint, asserting *Monell* claims against Armor, Milwaukee County, Sheriff David Clarke, Sheriff Richard Schmidt, and Dr. Karen Ronquillo-Horton, as well as other claims. (ECF No. 1.) The Estate's *Monell* claim against Armor broadly alleges Armor had policies of failing to provide constitutionally mandated care, intervene, and adequately train staff (ECF No. 1 at ¶43, ¶62, ¶¶67-70, ¶¶98-101), and that it adopted de facto policies of failing to intervene and fabricating medical records, lacked policies for staff, and was deliberately indifferent. (Id. at ¶¶103-109.)

## LEGAL STANDARD

### I. STANDARD ON MOTIONS TO DISMISS

Rule 12(b)(6) authorizes a court to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), a complaint must be dismissed if "there is a 'lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" **Conservation Force v. Salazar**, 646 F.3d 1240, 1242 (9th Cir. 2011). A court must accept as true "all well-pleaded allegations of material fact" but it is not "required to accept as true allegations that contradict . . . matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." **Daniels-Hall v. Nat'l Educ. Ass'n**, 629 F.3d 992, 998 (9th Cir. 2010).

When a complaint pleads facts that are merely "consistent with a defendant's liability," it "stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (*quoting*

***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007)). To determine if a complaint meets this pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." ***Bistrian v. Levi***, 696 F.3d 352, 365 (3d Cir. 2012) (internal quotation marks omitted). The ultimate determination of "whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." ***Ashcroft v. Iqbal***, 556 U.S. 662, 679 (2009).

## II. THE ESTATE OF KRISTINA FIEBRINK HAS FAILED TO PROPERLY PLEAD A *MONELL* CLAIM

*Monell* claims are subject to the pleading standard set forth in *Twombly* and *Iqbal*, which require a plaintiff provide "some specific facts" to support the basic elements of the causes of action. ***McCauley v. City of Chi.***, 671 F.3d 611, 616 (7th Cir. 2011); *see also* ***Braun v. Abele***, Case No. 15-CV-252-JPS, 2015 U.S. Dist. LEXIS 82574, at *4, 12 (E.D. Wis. June 25, 2015). As a result, boilerplate allegations and legal conclusions are disregarded in determining the sufficiency of a *Monell* claim. *See* ***Braun***, 2015 U.S. Dist. LEXIS 82574, at *12; ***McCauley***, 671 F.3d at 616.

"Factual specificity" is required to sustain a *Monell* claim. ***Braun***, 2015 U.S. Dist. LEXIS 82574, at *12-13; ***McCauley***, 671 F.3d at 616-17 ("The required level of factual specificity rises with the complexity of the claim.") (citation omitted). This specificity is required in order to "satisfy the rigorous standards of culpability and causation required for municipal liability." ***Braun***, 2015 U.S. Dist. LEXIS 82574, at *13 (*citing* ***McTernan v. City of York, PA***, 564 F.3d 636, 658 (3d Cir. 2009). Factual specificity is required "both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be

3

302497229v1 0991053
Case 2:18-cv-00832-AJS   Filed 09/11/18   Page 3 of 17   Document 31

connected." *McCauley*, 671 F.3d at 617 (*citing* ***Swanson v. Citibank, N.A.***, 614 F.3d 400, 405 (7th Cir. 2010)).

The elements of a *Monell* claim are (1) the deprivation of a constitutional right; (2) that was taken pursuant to a custom, policy or practice of the local government unit; and (3) was the cause of the deprivation. ***Gaughan v. Crawford***, Case No. 05-C-4664, 2008 U.S. Dist. LEXIS 107910, at *6 (N.D. Ill. July 24, 2008) (*citing* ***Monell v. Dep't of Social Services of New York***, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).

Under *Monell*, a local government unit may violate §1983 in one of three ways: (1) through an express policy that causes a constitutional deprivation when enforced; (2) through a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through a constitutional injury caused by the person with final decision policymaking authority. *See* ***Calhoun v. Ramsey***, 408 F.3d 375, 379 (7th Cir. 2005). To state a widespread practice *Monell* claim (the type of *Monell* claim The Estate has plead), a plaintiff must allege facts tending to show the policymakers were aware of the behavior of individuals, or that the activity was so persistent and widespread the policymakers should have known about the behavior. *See* ***Latuszkin v. City of Chicago***, 250 F.3d 502, 505 (7th Cir. 2001). The policy must be "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." ***Calhoun***, 408 F.3d at 379.

The Estate's *Monell* claim against Armor is insufficiently pled on three grounds. First, the *Monell* claim is overbroad because the allegations do not contain sufficient specificity to notify Armor of the alleged unlawful policy or policies at issue and because the complaint, in essence, is about the entire spectrum of emergent medical care provided by Armor's operations at Milwaukee County Jail. Second, the *Monell* claim is not sufficiently tethered to Kristina

4

302497229v1 0991053
Case 2:18-cv-00832-AJS   Filed 09/11/18   Page 4 of 17   Document 31

Fiebrink's alleged individual injury in that the other incidents upon which The Estate relies to establish a widespread practice are dissimilar to Kristina Fiebrink's own alleged constitutional injury. Third, The Estate has not pled the requisite causal connection between any alleged policy and Kristina Fiebrink's alleged individual injuries.

> **A. The Estate of Kristina Fiebrink's *Monell* Claim Must Be Dismissed Because It Is Overbroad.**

*Monell* claims must be pled with sufficient facts, not just conclusions, to put a defendant on notice of the alleged wrongful policy or custom. *See* **Brooks v. Ross**, 578 F.3d 574, 581-82 (7th Cir. 2009) ("So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of his claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."). Thus, allegations that are "vague, broad, and lacking sufficient detail to put the defendant on notice" are insufficient to support a *Monell* claim. **Springs v. Schwarz**, Case No. 15 C 5437, 2017 U.S. Dist. LEXIS 152210, at *7 (N.D. Ill. Sept. 19, 2017) (noting "some facts must be pleaded to put the defendant on notice of the alleged wrongdoing"); **Young v. Peoria Cty.**, Case No. 1:16-cv-01367-JBM, 2017 U.S. Dist. LEXIS 139919, at *12-13 (C.D. Ill. Aug. 30, 2017) (requiring the *Monell* plaintiff to provide allegations "specific and sufficient" for the defendants "to be put on notice as to the policies or customs personal to them" the plaintiff claimed were a *Monell* violation). In evaluating motions to dismiss or motions for judgment on the pleadings on *Monell* claims, district courts within the Seventh Circuit have determined overbroad *Monell* claims are properly dismissed at the pleading stage on several grounds.

5

First, a *Monell* claim is properly dismissed if it refers to policies so broadly, and without sufficient specificity, that a defendant is not given notice of the specific policy alleged to be unlawful. In ***Chaparro v. Powell***, for example, the plaintiff based his *Monell* claim on an alleged widespread practice or custom he described as the "code of silence," or "city-wide acceptance of police misconduct," alleging instances of police misconduct "spanning two decades not directly related to his arrest." Case No. 07 C 5277, 2008 U.S. Dist. LEXIS 834, at *5-6 (N.D. Ill. Jan. 2, 2008). Upon the city's motion to dismiss, the court agreed with the city the *Monell* claim was deficiently overbroad:

> Count IX is deficient. The factual allegations fail to plausibly suggest a policy cognizable under *Monell*. The custom or policy underlying a *Monell* claim cannot be so amorphous that it effectively exposes a municipality to *respondeat superior* liability. *See Bd. of the County Comm'rs,* 520 U.S. at 403. Chaparro relies on a purported "code of silence" based on numerous, tenuously related instances of police misconduct. But that misconduct is so multifarious that the allegations do not identify a discrete policy or custom.

*Id*. at *6-7.

In ***Payne v. County of Cook***, the plaintiff included, as part of the allegations in support of his *Monell* claim, "broadly worded allegations of wrongdoing, such as '[t]he City of Chicago has a practice of condoning police misconduct and not disciplining officers who engage in misconduct.'" Case No. 15 CV 3154, 2016 U.S. Dist. LEXIS 35865, at *58 (N.D. Ill. Mar. 21, 2016). The court granted the county's motion to dismiss, in part, explaining its decision as follows: "The court can easily dispose of the broadly worded allegations. Policy, custom, and practice claims that are not specifically tied into Payne's core allegations about the purported task force consisting of the employees of the Cook County Adult Probation Department, the City of Chicago, and the FBI are impermissibly conclusory." *Id*. *See also **Arita v. Wexford Health Sources, Inc.***, Case No. 15-cv-01173, 2016 U.S. Dist. LEXIS 150106, at *4, 9 (N.D. Ill. Oct. 31,

6

302497229v1 0991053
Case 2:18-cv-00832-AJS   Filed 09/11/18   Page 6 of 17   Document 31

2016) (alleging defendant Wexford, "through its employees, systematically ignored his complaints of pain and requests for treatment" and had "a policy of ignoring inmates' medical needs") (noting, in response to Wexford's motion to dismiss, that among other deficiencies, the complaint did not "shed any light on what Wexford's alleged policy might be – that is, what specific policy might lead to the systemic disregard of inmates' medical needs").

Second, *Monell* claims that are so broad as to encompass essentially all the activities of the defendant entity are properly dismissed. In ***Young v. Peoria County***, for example, the plaintiff brought *Monell* claims against Peoria County and the private medical company contracted with the county. Case No. 1:16-cv-01367-JBM, 2017 U.S. Dist. LEXIS 139919, at *12 (C.D. Ill. Aug. 30, 2017). In evaluating the defendants' motion to dismiss, the court determined the plaintiff's allegations were impermissibly overbroad:

> Plaintiff's allegations are a myriad of conclusory statements about the "policies, practices, procedures, and rules" for handling, screening evaluating, examining, identifying, supervising, monitoring, and treating inmates. However, these allegations are a formulaic recitation of the elements of a *Monell* claim followed by virtually all the activities that a local jail performs and most of its contact with inmates. These broad allegations, coupled with not identifying which particular defendant is responsible for which policies, practices, procedures, or rules, fail to provide sufficient notice of a § 1983 *Monell* claim.

*Id*. at *12-13. On this basis, the court granted the defendants' motion to dismiss. *Id*. at *13.

Similarly, in ***Armour v. Country Club Hills***, the plaintiff pled "the facts relevant to his own injury" and then alleged the city failed to properly train and supervise its officers regarding "the use of force, the completion of reports, and the collection of evidence." Case No. 11 C 5029, 2014 U.S. Dist. LEXIS 1849, at *23 (N.D. Ill. Jan. 8, 2014). In evaluating the defendant's motion to dismiss, the court rejected the plaintiff's argument his allegations were sufficient to alert the city to its alleged wrongdoing:

7

302497229v1 0991053
Case 2:18-cv-00832-AJS   Filed 09/11/18   Page 7 of 17   Document 31

> The problem with Armour's allegations is that they encompass virtually all the activities of a police department and every contact it has with the public. Armour has lumped together myriad "customs" and "policies," and the scope of the discovery relevant to his claims is boundless. The allegations are in no way tailored to identify particular police training procedures or policies. In other words, discovery relevant to Armour's allegations would be the epitome of a fishing expedition.

*Id*. at 23.

Likewise, in *Freeman v. City of Crown Point*, the plaintiff alleged police officers "routinely fail to report instances of police misconduct and lie to protect each other from punishment, and go undisciplined for doing so" and "abuse citizens in a similar manner to that alleged by [the plaintiff] on a frequent basis," with the police department rarely making "findings of wrongdoing." Case No. 2:13-CV-059 JD, 2014 U.S. Dist. LEXIS 16595, at *27-28 (N.D. Ind. Feb. 11, 2014). The court found these allegations impermissibly broad, as insufficient to provide the defendant notice of the claim against it or create a reasonable inference that the city adopted the policy. *Id*. at *28-29. Moreover, the court determined that because the plaintiff alleged multiple violations by the officers, the allegation officers "abuse citizens in a similar manner" to that alleged by the plaintiff "would encompass nearly every activity of the department" and "deprive[] the City of the notice to which it is entitled as to what policies it maintains that deprived [the plaintiff] of his rights." *Id*. at 29-30.

Like in the above cases, The Estate's *Monell* claim is impermissibly overbroad. (ECF No. 1 at ¶¶43-86, 97-109.) The Estate claims Armor:

- Defendants failed to adequately train officers, correctional employees, and CJF staff at all times material hereto on how to care for inmates intoxicated at time of intake, persons in their custody suffering from withdrawal symptoms, persons in their custody suffering from serious acute-obvious medical conditions, and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, amongst other failures.

8

- The failure of the Defendants to adequately train and supervise their employees concerning several key issues such as how to care for inmates intoxicated at time of intake, persons in their custody suffering from withdrawal symptoms, persons in their custody suffering from serious acute-obvious medical conditions, and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, demonstrated a deliberate indifference on the part of Defendants MC, Clarke, Schmidt, Armor and Horton as to whether the failure to adequately train and supervise their correctional employees would result in the violation of the Constitutional, Civil, and Statutory Rights of individuals in their custody, such as Fiebrink.

- [Defendants] failed to comply with the terms and provisions of the Consent Decree concerning healthcare; failed to follow the recommendations of the Court approved Medical Monitor; exhibited a systematic deficiency in staffing; ratified and approved a de facto policy of fabricating medical records; ratified and approved a de facto policy of failing to intervene when adequate medical care was not being provided, ratified and approved a de facto policy of have no policies and procedures required to be followed by staff, amongst other failures, these actions have been ratified as official policy thereby creating a culture where healthcare staff and correctional staff are deliberately indifferent to the Constitutional Rights of persons in their custody, such as Fiebrink.

- Milwaukee County's policy of allowing the failures identified in the previous paragraphs became a de facto policy of MC, Clarke, Schmidt, Armor and Horton, creating a culture of indifference, which lead to de facto policy of officers and health care staff not being held accountable for their failure to provide medical care and/or call for medical care, further creating a de facto policy of MC, Clarke, Schmidt, Armor and Horton that officers and health care staff were not required to provide a constitutional level of health care and/or follow policies and procedures in regards to medical care.

(ECF No. 1 at ¶¶98, 99, 103, 105.) This is a broad, scattershot approach that encompasses essentially all Armor's activities in providing health care to inmates at the Milwaukee County Jail. While The Estate attempts to distinguish "inmates intoxicated at the time of intake," "persons in their custody suffering from withdrawal symptoms," "serious acute-obvious medical conditions," "individuals in their custody in need of immediate medical attention," and "serious medical emergencies, how to react to serious medical emergencies," these identifiers are as

9

302497229v1 0991053
Case 2:18-cv-00832-AJS   Filed 09/11/18   Page 9 of 17   Document 31

broad as The Estate's use of the general term "Defendants" when describing the alleged tortious conduct throughout the *Monell* claim. There is nothing sufficiently specific to put Armor on notice of what policy or policies are at issue or which particular defendant is responsible. *See Young v. Peoria County*, Case No. 1:16-cv-01367-JBM, 2017 U.S. Dist. LEXIS 139919, at *12 (C.D. Ill. Aug. 30, 2017). Furthermore, the attempted specification is neutered by use of phrases like "amongst other failures" and "concerning several key issues such as" which imply the specification is not exclusive. As such, Armor asks the Court to dismiss The Estate's *Monell* claim against it.

As a consequence of these overbroad allegations, The Estate's *Monell* claim should be dismissed on two bases. Fatal is the lack of sufficient specificity to notify Armor of the alleged unlawful policy or policies at issue. *See, e.g., Chaparro*, 2008 U.S. Dist. LEXIS 834, at *5-6. And, because The Estate's allegations encompass nearly the entirety of Armor's constitutional obligation to adequately address inmates' serious medical needs at the Milwaukee County Jail, the *Monell* claim is impermissibly broad. *Young*, 2017 U.S. Dist. LEXIS 139919, at *12, and the other cases cited above. Because The Estate's *Monell* claim is impermissibly broad, it is properly dismissed.

### B. The Estate of Kristina Fiebrink's *Monell* Claim Must Be Dismissed Because It Is Not Sufficiently Tethered To Its Alleged Injury.

To support the widespread practice *Monell* claim, The Estate must allege facts tending to show the alleged activity was so persistent and widespread the policymakers should have known about the behavior and the practice was "so permanent and well-settled" as to constitute a "custom or usage" with the force of law. *See Latuszkin*, 250 F.3d at 505; *Calhoun*, 408 F.3d at 379. However, only allegations of <u>similar</u> incidents are sufficient to support a widespread practice *Monell* claim and a single incident is insufficient to support a *Monell* claim.

In *Connick v. Thompson*, the plaintiff asserted a widespread practice *Monell* claim against a district attorney's office, alleging the prosecutors had committed a Brady violation during his criminal trial and the office had a policy of failing to train its attorneys to produce exculpatory evidence to opposing counsel. 563 U.S. 51, 54, 131 S. Ct. 1350 (2011). To support his *Monell* claim, he alleged four criminal convictions over ten years had been overturned due to Brady violations of the office and this was a pattern to establish deliberate indifference. *Id*. at 62. The United States Supreme Court rejected the argument, finding the Brady violation in those cases were not sufficiently similar to the violation giving rise to the plaintiff's claim. *Id*. at 62-63 ("None of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind. Because those incidents are not similar to the violation at issue here, they could not have put Connick on notice that specific training was necessary to avoid this constitutional violation.").

Similarly, the Seventh Circuit recognized the requirement of pleading similar incidents in *Gill v. City of Milwaukee*, affirming a Rule 12(c) dismissal of a widespread practice *Monell* claim. *See Gill*, 850 F.3d 335 (7th Cir. 2017). The court agreed dismissal on the pleadings was appropriate because the plaintiff's allegations were insufficient:

> At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom. Gill's complaint fails to do so. It does not provide examples of other Milwaukee police officers taking actions similar to those complained of here. More importantly, it does not plausibly allege that such examples exist. Instead, it simply states that this *de facto* policy caused the "Defendant Detectives named *supra* to commit the aforesaid wrongful acts against Plaintiff."

*Id*. at 344 (internal citations omitted). That is exactly the case here.

The Estate fails to allege ***any*** pattern or practice of medical emergencies similar to Kristina Fiebrink's. One incident is not sufficient to establish a pattern. *See, e.g., Thomas v.*

11

*Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citations omitted) (explaining the requisite conduct for *Monell* liability "must be more than one instance, or even three").

The Estate is required to allege similar incidents sufficient to allow the Court to plausibly infer a widespread practice as to constitute a custom with the force of law. It has not done so. The Estate has not set forth any similar incidents to allow the Court to plausibly infer a widespread practice. This failure is fatal to The Estate's *Monell* claim and it must be dismissed. *See, e.g., Thomas*, 604 F.3d at 303; *Gill,* 850 F.3d at 344.

> C. **The Estate of Kristina Fiebrink's *Monell* Claim Must Be Dismissed Because It Has Not Sufficiently Pled The Requisite Causal Connection Between Any Alleged Policy Or Practice And Its Alleged Injuries.**

A *Monell* claim is insufficiently plead if it fails to allege facts in support of the requisite causal connection between an alleged policy or pattern and the alleged injury. *See, e.g., Estate of Sims*, 506 F.3d at 514-15. A proper *Monell* complainant must allege specific causation, that an official policy or custom "not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims v. Cty. of Bureau*, 506 F.3d 509, 514-15 (7th Cir. 2007) ("The first question, therefore, is whether the complaint alleges a direct causal link between a policy or custom [] and the alleged constitutional violations."); *see also Arlotta v. Bradley Ctr.*, 349 F.3d 517, 522 (7th Cir. 2003). Alleging a policy or custom was "likely" to have caused a particular violation is insufficient. *White v. Chicago*, Case No. 90 C 6336, 1991 U.S. Dist. LEXIS 13869, at *16 (N.D. Ill. Sep. 23, 1991) (*citing Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027, 108 S. Ct. 752 (1988); *and City of Canton v. Harris*, 489 U.S. 387, 391, 109 S. Ct. 1197 (1989)). Moreover, alleging a policy was a factor or a contributing factor in the alleged constitutional injury is also insufficient. *See Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013).

Along these lines, it is important to recognize the Seventh Circuit has held, consistent with the directive of the United States Supreme Court, that "but for" causation of injury is insufficient for *Monell* liability as a matter of law. *See* **Wilson v. Cook Cty.**, 742 F.3d 775, 784 (7th Cir. 2014) (*citing* **Bd. of Cnty. Comm'rs v. Brown**, 520 U.S. 397, 410, 117 S. Ct. 1382 (1997)) ("[T]he decision to hire [the official] was not the cause of [the plaintiff's] injury in anything but the 'but for' sense. It was not, in other words, the 'moving force' behind the injury."); **Brown**, 520 U.S. at 410 ("Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a 'but-for' sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged."); **City of Springfield, Mass. v. Kibbe**, 480 U.S. 257, 267-68, 107 S. Ct. 1114 (1987) ("In some sense, of course, almost any injury inflicted by a municipal agent or employee ultimately can be traced to some municipal policy. Finding §1983's causation requirement satisfied by such a remote connection, however, would eviscerate *Monell*'s distinction, based on the language and history of §1983, between vicarious liability and liability predicated on the municipality's own constitutional violations."); **Pembaur v. City of Cincinnati**, 475 U.S. 469, 484 n.11, 106 S. Ct. 1292 (1986). *See also* **Spearman v. Elizondo**, 230 F. Supp. 3d 888, 894 (N.D. Ill. 2016) ("to prevail on a *Monell* claim, … [i]t is not enough for a plaintiff to show merely that the custom or policy was the but-for cause of her injury"); **Scheidler v. Metro. Pier & Exposition Auth.**, Case No. 16-CV-4288, 2017 U.S. Dist. LEXIS 37724, at *10 (N.D. Ill. Mar. 16, 2017) (citations

omitted) ("Pleading that a municipality's policy is a "but for" cause of an alleged injury is insufficient as a matter of law.").[1]

Seventh Circuit district courts have repeatedly enforced this principle by granting motions to dismiss. In **Mikolon v. City of Chicago**, the plaintiff set forth vague allegations the city failed to train its officers in avoiding "unconstitutional and criminal misconduct," failed to investigate allegations of or discipline its officers as to "unconstitutional and criminal misconduct," and condoned or embraced a "code of silence" concerning reports of "unconstitutional and criminal misconduct." Case No. 14 CV 1852, 2014 U.S. Dist. LEXIS 171318, at *13-14 (N.D. Ill. Dec. 11, 2014). The court granted the defendant's motion to dismiss, finding that without the requisite "factual link," namely, factual allegations to support the notion that a well-settled policy was the moving force behind the police officers' conduct, the plaintiff's *Monell* claim "approach[ed] too closely a claim that s[ought] to hold the City responsible for all official actions of its employees." *Id*. at *15. Similarly, in **Chaparro v. Powell**, the court determined the plaintiff's allegations of a "code of silence," or "city-wide acceptance of police misconduct," failed to "plausibly suggest" a causal link between a municipal policy and his injury:

> He asserts a general lawlessness among CPD officers caused the violations surrounding his arrest. But he provides no facts to show that link; and the policy he alleges is so nebulous that any connection to a particular constitutional violation is highly attenuated. Indeed, the injury Chaparro allegedly suffered is no more related to the "code of silence" than any other injury caused by any other kind of police misconduct.

2008 U.S. Dist. LEXIS 834, at *5, 7 (further noting that, under the plaintiff's logic, "any instance of police misconduct would be 'caused' by the 'code of silence' because any misconduct could be

---

[1] The majority of other federal circuits have also rejected "but for" causation for *Monell* claims. *See **Scheidler***, 2017 U.S. Dist. LEXIS 37724, at *10 n. 4 (collecting cases).

14

302497229v1 0991053
Case 2:18-cv-00832-AJS   Filed 09/11/18   Page 14 of 17   Document 31

linked to an officer's imputed belief he could escape punishment"). *See also* ***Wilson v. City of Chicago***, Case No. 17 C 2525, 2017 U.S. Dist. LEXIS 172649, at *6 (N.D. Ill. Oct. 18, 2017) (finding the plaintiff's causal allegations, namely that a failure to train and supervise led to the plaintiff's injury, insufficient, noting the plaintiff failed to allege, among other things, "how a failure to train or supervise created the circumstances in which the officers were able to violate his civil rights").

The court also considered the required causal connection in ***Peacock v. Rigsby***, Case No. 15 C 1884, 2016 U.S. Dist. LEXIS 46994 (N.D. Ill. Apr. 7, 2016). In ***Peacock***, the plaintiff alleged the defendant implemented and maintained policies "to cut medical costs" and further asserted his allegedly deficient treatment was caused by said policies. *Id*. at *7-8. The court found such allegations insufficient:

> Peacock's allegation of a cost-cutting policy is too speculative and untethered to his injury to support his claim. His factual allegations do not plausibly allege how a cost-cutting policy could possibly have caused his infection. Peacock alleges that his infection was caused by a failure to change his bandages frequently enough or give him a sufficient regimen of antibiotics. Peacock fails to allege that the cost of bandages and antibiotics is a significant percentage of Wexford's budget such that a cost-cutting policy would have entailed restricting provision of bandages and antibiotics. Even if Peacock had made such an allegation, the Court finds such an allegation to be speculative and implausible absent additional facts from which the Court could infer that a cost-cutting policy existed that would have impacted the kind of treatment Peacock allegedly received.

*Id*. at *7-8. Thus, the court granted Wexford's motion to dismiss. *Id*. at *12. *See also* ***Taylor v. Wexford Health Sources, Inc.***, No. 15 C 5190, 2016 U.S. Dist. LEXIS 76341, at *13-14 (N.D. Ill. June 13, 2016) ("Instead of tying his injury to specific policies, Taylor has chosen to provide a laundry list of ten alleged policies maintained by Wexford. Without additional facts to allow

302497229v1 0991053

the Court to infer that these policies impacted the care Taylor received, they do not support a *Monell* claim against Wexford.").

This district has followed the Seventh Circuit's holding on "but for" causation in at least one case. *See **Orlowski v. Milwaukee Cty.***, Case No. 13-CV-1318-PP, 2016 U.S. Dist. LEXIS 53537, at *56 (E.D. Wis. Apr. 21, 2016) ("[T]he plaintiff argues that the County is liable for Mr. Orlowski's death, but his causation theory does not adequately account for the difference between a 'but for' cause, which is not sufficient to impose liability under *Monell*, and a 'moving force' or proximate cause of a constitutional violation.").

The Estate's *Monell* claim can only proceed if it has sufficiently alleged proximate cause, that is, the alleged widespread practice was the moving force driving its alleged injuries. *See, e.g., **Wilson***, 742 F.3d at 784. It fails to do so. The Estate uses the *Monell* nomenclature, alleging Kristina Fiebrink's injuries were proximately caused by policies and practices of Defendants (ECF No. 1 at ¶¶83-85, 100-101, 108-109); that Defendants' failure to train and supervise employees "was a direct and proximate cause of the violations of Fiebrink's Constitutional, Civil, and Statutory Rights" and "was a direct and proximate cause of Fiebrink's suffering and death[;]" and "each and every one of the above-mentioned policies, practices, and or customs/was a direct and proximate cause of the violation of Fiebrink's Constitutional, Civil, and Statutory Rights, which lead to the injuries and damages suffered by Fiebrink." (Id. at ¶¶100, 101, 108.) This language is, however, insufficient because it is conclusory. The Estate does not allege any facts that establish how specific Armor policies were the moving force behind Kristina Fiebrink's injuries.

Seventh Circuit case law is clear, a *Monell* claim must allege facts in support of the causal connection between an alleged policy or pattern and the alleged individual injury, namely

proximate cause. *See, e.g., **Estate of Sims***, 506 F.3d at 514-15; ***Wilson***, 742 F.3d at 78. The Estate, however, has only set forth conclusory allegations and has failed to allege facts to establish how the alleged practices proximately caused Kristina Fiebrink's injuries. Because The Estate has failed to plead with any specificity how any alleged policy or practice was the moving force behind Kristina Fiebrink's alleged injuries, the *Monell* claim against Armor must be dismssed. *See **Mikolon***, 2014 U.S. Dist. LEXIS 171318, at *13-14; ***Peacock***, 2016 U.S. Dist. LEXIS 46994, at *7-8.

## CONCLUSION

The Estate's *Monell* claim against Armor must be dismissed for three reasons: 1) It is overbroad and lacks the requisite detail; 2) there is no alleged widespread policy that caused similar incidents; and 3) the alleged policy is not the moving force behind its alleged injury.

Dated this 11th day of September, 2018.

/s/ Jill M. Munson
Jill M. Munson
State Bar No. 1019540
Alyssa A. Johnson
State Bar No. 1086085
Attorneys for Armor Correctional Health Services, Inc.; Brooke Shaikh APNP; and Brandon Decker APNP
**HINSHAW & CULBERTSON LLP**
100 E. Wisconsin Avenue, Suite 2600
Milwaukee, WI 53202
Phone No. 414-276-6464
Fax No. 414-276-9220
E-mail Address(es):
jmunson@hinshawlaw.com
ajohnson@hinshawlaw.com