UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF KRISTINA ANN FIEBRINK,
by Special Administrator Nathaniel Cade, Jr.; THE
ESTATE OF ANGELICA M. FIEBRINK; JOSE D.
MARTINEZ, JR.; and ROBERT MARTINEZ,

    Plaintiffs,

v.                                           Case No.: 2:18-cv-00832

ARMOR CORRECTION HEALTH SERVICE, INC.;
DR. KAREN RONQUILLO-HORTON; BROOKE
SHAIKH APNP; VERONICA WALLACE, LPN;
BRITENY R. KIRK, LPN; EVA CAGE, LPN;
BRANDON DECKER APNP; MILWAUKEE
COUNTY, a municipal corporation; DAVID
A. CLARKE, JR.; RICHARD R. SCHMIDT;
LATISHA AIKENS; BRIAN PIASECKI;
JENNIFER MATTHEWS; LATRAIL COLE;
LATOYA RENFRO; JOHN DOES 1-10; JOHN
DOES 11-20; EVANSTON INSURANCE COMPANY;
and WISCONSIN COUNTY MUTUAL INSURANCE
COMPANY,

    Defendants.

---

**PLAINTIFF ROBERT MARTINEZ'S BRIEF IN OPPOSITION TO DEFENDANTS', ARMOR CORRECTIONAL HEALTH SERVICES, INC., BROOKE SHAIKH APNP, AND BRANDON DECKER APNP'S BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT THREE**

---

**INTRODUCTION**

    Defendants baldly assert that *Russ v. Watts* "conclusively" held that our Constitution does not protect the relationship between a parent and a minor child

1

"unless the state action at issue was specifically aimed at interfering" with that relationship. ECF No. 33, at 3. Defendants are wrong.

First, this Court, as well as the Western District of Wisconsin, have determined that the Seventh Circuit will hold that a minor child has a cognizable claim for the loss of society and companionship under 42 U.S.C. § 1983 for the death of their parent.

Second, *Russ v. Watts* as well as corresponding case law cited by defendants are irrelevant to the present case as *Russ* and analogous cases pertain to an adult child and Robert Martinez was a minor at the time of his mother's incarceration and death.

Third, the question of whether a minor child may bring a claim for loss of society and companionship under 42 U.S.C. § 1983 is unsettled among the circuits. Significantly, the Seventh Circuit appropriately aligns with the Ninth and D.C. Circuits which hold that a minor child may bring a claim for loss of society and companionship, without a showing of intent and, therefore, the Seventh Circuit will likely hold in favor of Robert Martinez on the pendant motion.

Plaintiff Robert Martinez further submits, that if the Seventh Circuit reverses this Court's decision denying the defendants' motion, the United States Supreme Court will nonetheless resolve the circuit court split in favor of the plaintiff and in agreement with the legislative intent of Section 1983 and reverse *Russ v. Watts*.

Accordingly, Plaintiff Robert Martinez does have standing to bring his claim

and defendants' motion to dismiss should be denied.

## BACKGROUND

This case arises out of the preventable, tragic death of Kristina Fiebrink. (ECF No. 1 at ¶2). On August 24, 2016, Kristina Fiebrink was brought to the Milwaukee County Justice Facility while suffering from heroin and alcohol withdrawal symptoms. *Id*. Although she exhibited an obvious medical condition, she was not given any access to medical care, did not receive any medical screening, and was placed in the general population. *Id*. On the night of August 27, 2016 and into the early morning hours of August 28, 2016, Kristina began suffering from acute symptoms related to her withdrawal. *Id*. Her symptoms included hallucinations, vomiting, and profuse diarrhea. *Id*. Despite Kristina's cries for help and these obvious and acute symptoms, she was provided no medical care. *Id*. Absent any treatment, Defendants left Kristina alone to die, alone on the floor of a jail cell. (ECF No. 1 at ¶2). This preventable tragedy occurred as a result of Defendants' intentional and reckless disregard for Kristina's life. *Id*. At the time of her death, Kristina had a minor son, Robert Martinez. *Id*. at ¶10. His date of birth is October 6, 1998. *Id*. The present motion before the Court regards Plaintiff Robert Martinez's standing to bring claims under 42 USC § 1983, as well as Fourth, Eighth, and Fourteenth Amendment claims for the loss of his mother's society and companionship.

## ARGUMENT

### I. Standard of Review

"A motion to dismiss pursuant to [Rule] 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state enough facts that, when accepted as true, 'state a claim for relief that is plausible on its face.'" *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The Court must "tak[e] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiffs." *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008).

Similarly, "[m]otions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014) (citing *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)); *see also Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (applying the same principle to motions under Rule 12(b)(6)). As when deciding a Rule 12(b)(6)

4

motion, "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the Court must] accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002).

> **II. Wisconsin district court precedent affords Plaintiff Robert Martinez standing to bring his claim for loss of society and companionship under 42 U.S.C. § 1983 and the United States Constitution.**

The constitutionally protected liberty interest that exists in the familial relationships of minor children is well-grounded in precedent. *See Smith v. City of Fontana*, 818 F.2d 1411, 1418 (9th Cir. 1987). Although the Seventh Circuit has not expressly addressed whether a minor child has standing to bring a constitutional claim or 42 USC § 1983 claim for the loss of society and companionship of their parent, the Court's presumed position is clear in the language of its past decisions.

In *Avery v. City of Milwaukee*, this Court anticipated that the Seventh Circuit will find a minor child has a cognizable claim for loss of society and companionship under 42 USC § 1983 for the death of their parent. No. 11-C-408, 2015 U.S. Dist. LEXIS 65372, at *3–4 (E.D. Wis. May 19, 2015). Acknowledging the circuit court split over whether a loss of companionship claim is cognizable under 42 U.S.C § 1983 in the context of a parent-child relationship, this court determined that *Russ* agreed with its sister circuits that minor children's need for the guidance and support of their parents warrants sharply different constitutional treatment than adult children. *Id.* at 3. In doing so, this Court understood *Russ* to mean:

> not only that there is (or may be) a constitutionally protected interest in a parent's relationship with a minor child, but also a

5

> constitutionally protected interest in a minor child's relationship with a parent. Therefore, the Court discerns that *the Seventh Circuit would find that the loss of companionship claims brought by Avery's children, all of whom were minors during the time of his incarceration, are cognizable under Section 1983.*

*Id.* at 3–4 (emphasis added).[1] Accordingly, this district was unwavering in finding that the Seventh Circuit would find a minor child's claim cognizable under 42 U.S.C. § 1983. *Id.*[2]

Additionally, the Western District's holding in *Mombourquette v. Amundson*, which involved 42 U.S.C. § 1983 claims of two minor children for the loss of society and companionship of their mother who was left severely cognitively impaired after attempting suicide while in Monroe County Jail, is in accord. 469 F. Supp. 2d 624 (W.D. Wis. 2007). In addressing defendant's Rule 56 motion, the court analyzed whether the minor children had cognizable constitutional claims after the Seventh Circuit's decision in *Russ*. *Id.* at 654. The defendants argued that the claims were barred under circuit precedent because "children may not recover for loss of society and companionship under § 1983 unless the defendants 'intentionally interfered' with the parent-child relationship." *Id.*

The Western District rejected this argument, finding that the defendant relied solely on *Russ v. Watts* which "is limited to adult children." *Id.* Specifically, the Western District Court held that the Seventh Circuit, "expressly declined to

---

[1] It is critical to note this Court's assessment of *when* a child is considered a minor for purposes of 42 U.S.C. 1983 analysis. In the present case, Robert Martinez turned 18 one month after his mother's death. Defendants set forth this fact in their brief, yet are imprecise as to whether he is considered an adult or a minor for this Court's analysis. *See* ECF No. 33, at p. 2. As *Avery* establishes, Robert Martinez is a minor for purposes of determining whether he has standing to bring a loss of society and companionship claim under 42 U.S.C. § 1983.

[2] *Estate of Cowser v. Clark Jr. et al.*, No. 17-CV-866 (E.D. Wis. Sept. 12, 2018), applied *Russ v. Watts* in dismissing a parent's claim for the loss of an adult child.

6

consider the scope of minor children's ability to recover, stating that their 'need for the guidance and support of their parents *warrants sharply different constitutional treatment.*'" *Id.*, quoting *Russ,* 414 F.3d at 790 (emphasis added). Consequently, the court concluded that defendants failed to meet their burden under Fed. R. Civ. P 56 to show that they are entitled to summary judgment on the minor children's loss of society and companionship claims. *Id.*

Pursuant to precedent of this Court, as well as of the Western District of Wisconsin, minor children can undoubtedly bring a claim for loss of society and companionship for the death of their parent under 42 U.S.C. § 1983. Accordingly, Plaintiff Robert Martinez, a minor at the time of his mother's incarceration, has standing to bring his claims under 42 USC § 1983, as well as Fourth, Eighth, and Fourteenth Amendments for the loss of his mother's society and companionship. As this Court has held, the Seventh Circuit will certainly find that the loss of society and companionship claims of minor children are cognizable and will affirm this Court's decision to deny defendants' motion.

### III. *Russ* and corresponding case law pertain solely to adult children and, therefore, are inapplicable because Plaintiff Robert Martinez was a minor at the time of his mother's incarceration and death.

Defendants extensively and inappropriately rely upon *Russ v. Watts* in asserting that Plaintiff Robert Martinez lacks standing to bring his claim in the present case. *Russ* involved claims arising from the death of 22-year-old Robert Russ, a Northwestern University student, who was fatally shot by a Chicago police officer at the conclusion of a police chase. *Russ v. Watts*, 414 F.3d 783, 784 (7th Cir.

7

Case 2:18-cv-00832-AJS   Filed 10/02/18   Page 7 of 19   Document 48

2005). Russ's family sued the police officers involved in the fatal chase under § 1983 for loss of society and companionship, citing *Bell v. City of Milwaukee*. *Id.* at 783. Accordingly, the Seventh Circuit was presented with the opportunity to reconsider *Bell*'s holding that the "parent's constitutional liberty interest in his relationship with his *adult* son was violated when his son was killed by police." *Id.* Ultimately, the Seventh Circuit determined that § 1983 wrongful death actions cannot be maintained by parents of an adult child unless the behavior of the state actors was "for the specific purpose of terminating [the decedent's] relationship with his family." *Id.* at 790; *see also id.* at 791 ("We therefore overrule our decision in *Bell* insofar as it recognized a constitutional right to recover for the loss of the companionship of an *adult child* when that relationship is terminated as an incidental result of state action." (emphasis added)), *see also Orlowski v. Milwaukee County*, 872 F. 3d 417, 425-426 (7th Cir. 2017) (citing *Russ* and noting: "Because Orlowski was an adult, Gary was required to provide evidence of the Defendants' intent to interfere with the familial relationship.")

A careful reading of *Russ v. Watts* confirms that the Seventh Circuit fully acknowledges the parent-*minor child* liberty interest. *Russ*, 414 F.3d at 790. In overruling *Bell*, the court stressed that while precedent does protect the parental liberty interest under the due process clause, *Bell* was distinct from the scope of past decisions because of the decedent's *adult-child status*. *See Russ*, 414 F.3d at 790 ("Our finding of a constitutional violation in *Bell* was not appropriately moored to Supreme Court precedents establishing the contours of the parental liberty

8

interest. The decisions on which we relied…all dealt with the right to [ ] make decisions about rearing one's minor children without state inference."). In fact, *Russ* all but overtly held that a minor child's liberty interest in his relationship with his mother is protected under the due process clause in stating that: "although we need not impose an absolute rule that parents of adult children lack any liberty interest in their relationship with their children, *we agree with our sister circuits that minor children's need for the guidance and support of their parents warrants 'sharply different constitutional treatment.'*" *Id.* at 790 (emphasis added) (quoting *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) ("a parent does not have a constitutionally protected liberty interest in the companionship of a child who is past minority and independent"); *McCurdy v. Dodd*, 352 F.3d 820, 829 (3d Cir. 2003) ("the bond between a parent and child when the child is an adult usually bears some resemblance to the same bond when the child was a minor. But, as a long line of Supreme Court cases attests, the differences between the two stages of the relationship are sufficiently marked to warrant sharply different constitutional treatment.")).

It is noteworthy that the lower court in *Russ* also focused on the adult-child status. *See Russ v. Watts,* 190 F. Supp. 2d 1094, 1098 (N.D. Ill. 2002). As the United States District Court for the Northern District of Illinois, Eastern Division set forth, verbatim:

> the court in *Valdivieso Ortiz v. Burgos* 807 F.2d 6, 8 (1st Cir. 1986), pointed out two significant differences between its case "and those in which the Supreme Court has recognized a substantive right in the parent-child relationship." Those reasons were that: 1) the decedent in

9

> that case, "was over 21 at the time of his death, was not a minor child still within 'the care, custody and management' of his parents"; and 2) the state was not seeking impose on the child "its own choice as to how or by whom he should be reared." *Id*. For those reasons, the *Valdivieso* court concluded that the deceased's parents did not have standing to sue.

*Russ v. Watts*, 190 F. Supp. 2d 1094, 1098 (N.D. Ill. 2002). The decision in the lower court focuses on the significance of a child who is no longer in the custody or care of his parent and was no longer a minor as the crux of their rationale. Thus, both the Seventh Circuit and the district court in *Russ* appear to confer standing on a child who was a minority at the time of his parent's incarceration, as is true in the present case.

As defendants note in their brief, under *Russ v. Watts* adult children lack standing to bring a claim of loss of society and companionship under 42 U.S.C. § 1983 unless it can be established that the state actor acted with intent to interfere with the family relationship. In fact, all but one of the cases defendants cite pertain to an adult child's ability to bring a wrongful death claim under Section 1983. *See e.g.* ECF No. 33, at 4–5 (*Trujillo v. Bd. Of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985) (adult son); *Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (adult son); *McCurdy v. Dodd*, 352 F.3d 820, 830 (3rd Cir. 2003) (adult son); *Robertson v. Hecksel*, 420 F.3d 1254, 1260 (11th Cir. 2005) (adult son)). *But see Shaw v. Stroud*, 13 F.3d 791, 804–05 (4th Cir. 1994) (minor child). Instead, *Russ* and corresponding case law do not specifically foreclose on a *minor child's* ability to bring a loss of society and companionship claim under 42 USC § 1983 or based on a constitutional violation.

10

Although not cited by defendants, Justice Garwood's dissent in *Grandstaff v. Borger* illustrates the recognized distinction between a parent-adult child relationship and a parent-minor child relationship for purposes of § 1983 analysis:

> Section 1983 recovery is limited to "the party injured," the "citizen" whose federal rights have been invaded. . . . In contrast to the protections afforded the spousal and parent-minor child relationships, the common law did not recognize any action for injury to the parent-adult child relationship. . . . Although the Constitution may protect some aspects of the parent-adult child relationship, so that [§] 1983 damages may be recoverable where the illegality of the complained of governmental action consists, in whole or in part, of interference with or failure to give proper recognition to that relationship as such . . . it does not necessarily follow that such damages are recoverable where, as here, the parent-adult child relationship is only fortuitously and indirectly related to the wrongdoing.

*Grandstaff v. Borger,* 767 F.2d 161, 173 n.* (5th Cir. 1985) (Garwood, J., dissenting) (emphasis added).  Thus, the analysis that is undertaken for an adult child as opposed to a minor child in the context of a 42 U.S.C. § 1983 claim for loss of society and companionship is incomparable.  The cases that defendants cite pertaining to adult children are not only irrelevant, but ineffectual.

Absent a reversal from the United States Supreme Court, it is uncontested that *Russ* specifically forecloses an adult child's ability to bring a loss of society and companionship claim under Section 1983 without proof of a state actor's intent to interfere with the family relationship.  However, this holding is inapplicable in the present case as Plaintiff Martinez is considered a minor for purposes of the § 1983 analysis.  Moreover, the pertinent questions raised by *Russ* are not about whether a liberty interest exists in *minor* children for the death of their parent under 42

11

U.S.C. § 1983, as it is clear that it does. Thus, despite defendants' contentions, *Russ* and all cited precedent pertaining to adult children is immaterial.

### IV. Even if the court finds in favor of defendants, the United States Supreme Court will resolve the circuit court split in favor of plaintiff.

To date, circuit courts are split as to whether a minor child can bring a loss of society and companionship claim under 42 U.S.C. § 1983 without a showing of intentional interference with the familial relationship. Some circuits require a showing of intentional inference with the family relationship from both minor and adult children, whereas others only require adult children show intent, yet at the same time other circuits do not require any showing of intent.[3] Presently, the Seventh Circuit takes a hybrid approach by requiring a showing of intent for adult children, yet clearly indicating that minor children warrant a "sharply different constitutional analysis". *Russ,* 414 F.3d at 790. Thus, the Seventh Circuit aligns itself more with the Second, Fifth, Ninth, and D.C. Circuits which require no showing of intent or only require proof of intent from adult children. Although it is likely the Seventh Circuit will hold that minor children have a cognizable claim for loss of society and companionship under Section 1983, the circuit split on this issue raises severe inconsistencies relating to matters of a fundamental right across the

---

[3] *See e.g. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190-92 (3d Cir. 2009) (holding that "only deliberate executive conduct" gives rise to a familial association violation, and explicitly noting that this rule applies to both minor and adult children); *Franz v. United States*, 229 U.S. App. D.C. 396, 712 F.2d 1428, 1432 (D.C. Cir. 1983) ("the bond between a parent and child when the child is an adult usually bears some resemblance to the same bond when the child was a minor. But, … the differences between the two stages of the relationship are sufficiently marked to warrant sharply different constitutional treatment"); *Patel v. Searles*, 305 F.3d 130, 137 (2d Cir. 2002) ("this Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association").

12

country and should be resolved in favor of the plaintiff at the Supreme Court.

The First, Third, Fourth, and Sixth Circuits take the most stringent approach to a minor child's claim for loss of society and companionship under 42 U.S.C. § 1983. The First and Third Circuits overtly require a showing of intentional interference with the familial relationship, and explicitly state that the intent requirement applies to parents' relationships with both minor and adult children. *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190-92 (3d Cir. 2009) (holding that "only deliberate executive conduct" gives rise to a familial association violation, and explicitly noting that this rule applies to both minor and adult children). Thus, the First and Third Circuits have both held that a § 1983 claim may be had in the context of a parental liberty interest so long as the disruption to the interest was targeted. *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003); *Soto v. Flores*, 103 F.3d 1056, 1062 (1st Cir. 1997). The Fourth and Sixth Circuits are even more severe, holding that wrongful death damages are unavailable even in the context of minor children because § 1983 is a personal action. *Compare McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003); *Soto v. Flores*, 103 F.3d 1056, 1062 (1st Cir. 1997) with *Shaw v. Stroud*, 13 F.3d 791, 804–05 (4th Cir. 1994); *Claybrook v. Birchwell,* 199 F.3d 350, 357–58 (6th Cir. 2000).

The Tenth Circuit is likely aligned with the First and Third Circuits in finding that the challenged "conduct or statement must be directed at the familial relationship with knowledge that the statements or conduct will adversely affect that relationship" yet does not expressly state that this standard is applicable to

13

minor children. *Lowery v. Cnty. of Riley*, 522 F.3d 1086, 1092 (10th Cir. 2008) (internal quotation marks omitted).

Conversely, all of the aforementioned circuits are in direct conflict with the Ninth Circuit and Second Circuit, which do not impose a strict intent requirement on a claim for deprivation of a Fourteenth Amendment right of familial association brought pursuant to 42 U.S.C. § 1983. *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir. 1992); *Patel v. Searles*, 305 F.3d 130 (2d Cir. 2002). The Ninth Circuit has repeatedly stated that specific intent is not required for adult, as well as minor, children. *See Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (holding that plaintiffs adequately alleged familial association claim with no discussion of specific intent); *Ward v. City of San Jose*, 967 F.2d 280, 284 (9th Cir. 1991) (declining to impose the Tenth Circuit's *Trujillo* decision's specific intent requirement on familial association claims). The Second Circuit seems to align with the Ninth Circuit, although the Second Circuit has not yet directly decided the issue. *See Patel v. Searles*, 305 F.3d 130 (2d Cir. 2002) ("this Circuit has never held that a challenged action must be directed at a protected relationship for it to infringe on the right to intimate association. But, in any event, [plaintiff] has alleged facts sufficient to prove that the officers' conduct *was* intentionally directed at his family." (emphasis in original) (citation omitted)).

Similarly, the Fifth and D.C. Circuits, have not decided the issue of whether a minor may bring a wrongful death claim under Section 1983 without a showing of intent. *Butera v. District of Columbia*, 235 F.3d 637, 656 n.23, 344 U.S. App. D.C.

265 (D.C. Cir. 2001) ("Because we hold that a parent-child relationship between two independent *adults* does not invoke constitutional 'companionship' interests, we do not reach [defendant's] contention that [plaintiff's] claim fails because [defendant's] actions were not intentionally directed or aimed at her relationship with her son."); *Phillips v. Monroe Cty.*, 311 F.3d 369, 374 (5th Cir. 2002) ("Wrongful death recovery under § 1983 has 'generated considerable confusion and disagreement.'…The Supreme Court has not yet addressed this issue, and, while the circuits are divided over whether such recovery is appropriate, we have consistently allowed it." (citations omitted)); *see also Gunn v. City of Montgomery*, No. 2:16-CV-557-WKW (WO), 2018 U.S. Dist. LEXIS 61074, at *14 (M.D. Ala. Apr. 11, 2018) (discussing Fifth Circuit precedent allowing wrongful death claims under U.S.C. § 1983).

The Eighth Circuit is equally unclear as to whether a minor child must show intent to interfere with the family relationship under 42 U.S.C. § 1983. *See Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir. 1987) *overruled on other grounds*, *Burns v. Reed*, 500 U.S. 478, 111 S. Ct. 1934, 114 L. Ed. 2d 547 (1991) ("While there may be a constitutional right to familial association, such right 'is limited by the compelling governmental interest in protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves.'"); *but see Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 585 (8th Cir. 2006) ("A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship." (internal quotation marks omitted)).

15

Unlike the Fifth, Eighth, and D.C. Circuits, the Eleventh Circuit stated in dicta that specific intent is necessary only when decedent is an adult child. *See Robertson v. Hecksel*, 420 F.3d 1254, 1259, 1260 n.5 (11th Cir. 2005) (holding that "a parent-child relationship between two independent adults does not invoke constitutional 'companionship' interests," noting that even if it were to hold that right existed, mere negligence does not implicate the due process clause, and the mother had not alleged that the officer who shot her adult son acted with "more than negligence concerning her rights").

The Seventh Circuit's approach to wrongful death under § 1983 is distinct from each of the other circuits in that it requires that the state actor intentionally interfere with a parent-adult child relationship, yet confers that minor children are afforded a sharply different constitutional analysis. As such, the Seventh Circuit created a hybrid approach to analyzing § 1983 wrongful death claims. *Russ v. Watts* draws from various aspects of circuit positions, without adopting the full approach of any one circuit. As an example, *Russ*'s suggestion that the harms suffered under § 1983 are not merely derivative, seems to incorporate the views of the Sixth and Fourth Circuits, which hold that wrongful death and other derivative rights are flatly unavailable because § 1983 is personal. *Compare Russ v. Watts*, 414 F.3d 783, 788 (7th. Cir. 2005), with *Claybrook v. Birchwell*, 199 F.3d 350, 357–58 (6th Cir. 2000), and *Shaw v. Stroud*, 13 F.3d 791, 804–05 (4th Cir. 1994). Similarly, *Russ*'s intent requirement for adult children is consistent with the First, Third, and Tenth Circuits, which have all created a similar intention requirement. *Compare Russ*,

16

414 F.3d at 788, with *Valdivieso Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986), and *McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003), and *Trujillo v. Bd. of Cnty. Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985). However, *Russ*'s declaration that minor children should receive different constitutional treatment diverges from the First, Third, Fourth, Sixth, and Tenth Circuits. *See e.g.*, *id.*; *Claybrook v. Birchwell*, 199 F.3d 350, 357–58 (6th Cir. 2000); *Shaw v. Stroud*, 13 F.3d 791, 804–05 (4th Cir. 1994). Instead, *Russ* more directly aligns with the Second, Ninth, and D.C. Circuit in that regard. *Compare Russ*, 414 F.3d at 788, with *Butera v. District of Columbia*, 235 F.3d 637, 654 (D.C. Cir. 2001) and *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). In considering this divergence, it is clear that the Seventh Circuit will hold that minor children have a cognizable claim for loss of society and companionship under 42 U.S.C. § 1983 (and in agreement with the Second, Ninth, and D.C. Circuits).

Further support for this proposition can be found in the legislative history of 42 U.S.C. § 1983. The Seventh Circuit's decision in *Bell v. City of Milwaukee* includes the specific inference that a child may maintain a § 1983 action for the wrongful death of a parent, quoting the legislative history of the original version of § 1983 enacted in 1871:

> This then is what we offer to the people of the United States as a remedy for wrongs, arsons and murders done. This is what we offer to a man whose house has been burned, as a remedy; to the woman whose husband has been murdered, as a remedy; *to the children whose father has been killed*, as a remedy.

*Bell*, 746 F.2d at 1244 (emphasis added).

17

The Seventh Circuit's 2007 decision in *Henning v. O'Leary* further supports that the Seventh Circuit will consider the constitutional claims of a minor child to have more constitutional protection than an adult family member. 477 F. 3d 492, 495 (7th Cir. 2007). In *Henning*, decedent's daughter and parents appealed from the Western District of Wisconsin's grant of summary judgment on plaintiffs' 42 U.S.C. § 1983 action for violation of decedent's Fourth Amendment rights and their right as his relatives to society and companionship. *Henning v. O'Leary*, 477 F.3d 492, 493 (7th Cir. 2007). Although the Seventh Circuit affirmed the lower court's finding on the basis of the Fourth Amendment claim, the court provided guidance as to whether a minor can sustain a wrongful death claim under § 1983. *Id.* at 496. The court stated, in relevant part:

> [Decedent's minor daughter] and the parents assert their own rights in bringing the loss of companionship claims, but even if those rights are constitutionally protected (a dubious proposition, at least for the parents, after *Russ v. Watts*, 414 F.3d 783, 790 (7th Cir. 2005); *but see Smith v. City of Fontana*, 818 F.2d 1411, 1418-19 (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) (recognizing § 1983 cause of action against state based on substantive due process where officers' actions causing father's death deprived children of his companionship)), whether they were in fact violated turns on whether there was excessive force.

*Henning v. O'Leary*, 477 F.3d 492, 495 (7th Cir. 2007). Accordingly, the Seventh Circuit clearly provides a distinction between a minor child's loss of society and companionship claim and the "dubious" adult family member's claim. *See id.*

In analyzing the language of the Seventh Circuit, it is more than likely that the court will find that a cognizable claim for loss of society and companionship

18

exists for a minor child under § 1983, as well as the Fourth, Eighth, and Fourteenth Amendments. This decision is loosely aligned with the Second, Ninth, and D.C. Circuits, and is consistent with the legislative history of 42 U.S.C. § 1983. Certainly, Congress's clear and unambiguous intent is to afford children whose parent had been killed a remedy for the wrong. Several other circuits have diverged from this purpose and, therefore, the United States Supreme Court will likely resolve the circuit court split in favor of the plaintiff and in accord with the legislative intent of 42 U.S.C. § 1983.

## CONCLUSION

For the reasons stated above, Plaintiff Robert Martinez respectfully requests that this Court deny Defendants', Armor Correctional Health Services, Inc., Brooke Shaikh APNP, and Brandon Decker APNP, Motion to Dismiss Count Three.

Dated this 2nd day of October, 2018.

Respectfully Submitted,

/s/ Mark L. Thomsen
Mark L. Thomsen
State Bar No.: 1018839
Whitney A. Johnson
State Bar No. 1101530

GINGRAS CATES & WACHS LLP
3228 Turnberry Oak Drive
Suite 210
Waukesha, WI 53188
Phone: 414-778-0700
Fax: 414-778-1770
mthomsen@gcwlawyers.com
wjohnson@gcwlaeyers.com

*Attorneys for Plaintiff Robert Martinez*