UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

**THE ESTATE OF KRISTINA ANN FIEBRINK,**
**by Special Administrator Nathaniel Cade, Jr.; THE**
**ESTATE OF ANGELICA M. FIEBRINK; JOSE D.**
**MARTINEZ JR.;** and, **ROBERT MARTINEZ**;

      Plaintiffs,

    v.                                                                    Case No. 2:18-cv-0832-JPS

**ARMOR CORRECTIONAL HEALTH SERVICE,**
**INC.;**
    and,
**DR. KAREN RONQUILLO-HORTON; BROOKE**
**SHAIKH APNP; VERONICA WALLACE LPN;**
**BRITENY R. KIRK, LPN; EVA CAGE, LPN;**
**BRANDON DECKER APNP;**
    and,
**MILWAUKEE COUNTY,** a municipal corporation;
    and,
**DAVID A. CLARKE JR.**; **RICHARD R. SCHMIDT;**
**NANCY L. EVANS; KEVIN NYKLEWICZ; LATISHA**
**AIKENS; BRIAN PIASECKI; JENNIFER MATTHEWS;**
**LATRAIL COLE; LATOYA RENFRO;**
    and,
**JOHN DOES 1-10; JOHN DOES 11-20;**
    and,
**EVANSTON INSURANCE COMPANY;**
    and,
**WISCONSIN HEALTH CARE LIABILITY**
**INSURANCE PLAN;**
    and,
**WISCONSIN COUNTY MUTUAL INSURANCE**
**CORPORATION,**

      Defendants.

---

## AMENDED COMPLAINT AND JURY DEMAND

---

1

NOW COMES the above-named Plaintiffs, The Estate of Kristina A. Fiebrink, The Estate of Angelica M. Fiebrink, Jose D. Martinez Jr. and Robert Martinez, and as for their claims for relief against the above-named Defendants, allege and show the Court as follows:

## I. INTRODUCTION

1.      This case involves Armor Correctional Health Services, Inc. ("Armor") Milwaukee County ("MC"), the Milwaukee County Sheriff's Office ("MCSO"), and the individually named Defendants' unlawful methods of infringing on and violating the Constitutional, Civil, and/or Statutory Rights of Kristina A. Fiebrink ("Fiebrink"), causing Fiebrink to suffer damages, injuries and ultimately, death. While under the Defendants' care and custody, Fiebrink was subjected to inadequate and unconstitutional health care that involved the wanton and unnecessary infliction of pain.

2.      Fiebrink was brought to the Milwaukee County Justice Facility ("CJF") on August 24, 2016, suffering from heroin and alcohol withdrawal symptoms. Despite her acute obvious medical condition, Fiebrink was placed in the general population with no access to medical care. Despite an alleged policy and procedure requiring an inmate to receive a medical screening within 72 hours of admission, Fiebrink did not receive a medical screening; in fact, her medical screening appointment scheduled for August 26, 2016, was cancelled. On the night of August 27th and into the morning of August 28, 2016, Fiebrink was suffering acute symptoms related to her withdrawal, including hallucinations, vomiting, and profuse diarrhea. Despite these obvious acute symptoms, and Fiebrink's verbal cries for help, which could be heard throughout unit 6D, Fiebrink was provided no medical care and tragically died on the floor of her cell. As a result of the Defendants' unlawful conduct and reckless disregard and deliberate indifference, Fiebrink unnecessarily suffered and ultimately lost her life. Her death was preventable if she would have received the constitutionally required care.

2

3.	Defendants were at all times, material hereto, fully aware that Fiebrink was suffering life threatening withdrawal symptoms. In direct violation of Fiebrink's constitutional and civil rights, Defendants failed to administer withdrawal medications, employ the preventative detox protocol, or provide any treatment, intentionally and in regardless disregard of Fiebrink's life.

4.	Plaintiffs bring this action under the United States Constitution, particularly under the provisions of the Fourth, Fourteenth and Eighth Amendments; Title 42 of the United States Code Sections 1983 and, *inter alia,* pursuant to Wis. Stat. §§ 895.03 for substantial pain and suffering, loss of society and companionship, loss of life and punitive damages.

## II.	JURISDICTION & VENUE

5.	That this Court has jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), 1342(a)(4), and 1367(a).

6.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as all of the events identified in this Complaint occurred in this District.

## III.	THE PARTIES

7.	Plaintiff the Estate of Kristina Fiebrink ("the Estate"), by Special Administrator Nathaniel Cade, Jr., represents the decedent, Kristina Fiebrink, ("Fiebrink"). Nathaniel Cade Jr. brings this action in his capacity as Special Administrator and for the benefit of Fiebrink's linear heirs. A Notice of injury and claim and itemized statement of relief sought pursuant to Wis. Stat. § 893.80 dated December 27, 2016 was timely served and all state law claims are therefore properly before the Court.

8.	Plaintiff the Estate of Angelica M. Fiebrink is in the process of being opened in Milwaukee County. Angelica M. Fiebrink is the daughter of Fiebrink and the Estate of Angelica N. Fiebrink brings this action as Fiebrink's linear heir.

3

9. Plaintiff Jose Martinez is an adult citizen of the United States and a resident of the State of Wisconsin. Jose Martinez is the son of Fiebrink and brings this action as Fiebrink's linear heir.

10. Plaintiff Robert Martinez is a citizen of the United States and a resident of the State of Wisconsin residing at 3102 East Holmes Avenue, Cudahy WI 53110. Robert Martinez is the son of Fiebrink with a date of birth of October 6, 1998 and was a minor at the time of his mother's preventable wrongful death. He brings this action as Fiebrink's linear heir and for his loss of society and companionship. A Notice of injury and claim and itemized statement of relief sought pursuant to sec. 893.80 dated December 27, 2016 was timely served and all state law claims are therefore properly before the Court.

11. Defendant Armor Correctional Health Services, Inc. ("Armor"), with its principal office located at 4960 S.W. 72nd Avenue, Suite #400, Miami, FL 33155, and its registered agent for service of process, CT Corporation System, 8020 Excelsior Dr., Ste. 200, Madison, WI 53717, is a for-profit correctional healthcare corporation incorporated under the laws of the State of Florida and doing business in the State of Wisconsin. Armor is considered a "person" for 42 U.S.C. U.S.C. § 1983 purposes and acts under color of state law to provide medical care and services to detainees at CJF. Armor was responsible for adopting, implementing, and enforcing policies and practices pertaining to medical care for CJF. Armor also was responsible for ensuring that the care provided at CJF met minimum constitutional and other legal standards and requirements.

12. Defendant Dr. Karen Ronquillo-Horton ("Horton") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Horton was employed by at CJF by MC and Armor as the Medical Director and therefore was directly responsible for the health, safety, security, welfare and humane treatment of all inmates at the CJF, including Fiebrink. Horton had policy making authority over medical policies and procedures at CJF and was

4

responsible for ensuring that the policies and practices of Armor complied with federal and state requirements for the treatment of detainees. At times material hereto, Horton had personal knowledge of the de facto policy, practice and custom of the provision of inadequate medical care and/or the failure to provide any medical care at CJF, as well as other de facto polices set forth herein, approved, condoned and facilitated the aforementioned de facto polices, practices, customs and conduct or turned a blind eye for fear of what she might see. Horton was acting under the color of state law and within the scope of her employment at all times relevant hereto.

13.     Defendant Brooke Shaikh, APNP, ("Shaikh") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Shaikh was employed as an Advanced Practice Nurse Prescriber ("APNP") at CJF by MC and Armor and was responsible for the health, safety, welfare and humane treatment of all inmates at CJF, including Fiebrink, in August of 2016. Shaikh was tasked with conducting a Level 2 assessment at staff's request, which was required to be conducted within three days of Fiebrink's admission per policy and procedure. Shaikh failed to conduct the assessment and rescheduled the same for three days late. Shaikh was acting under color of state law and within the scope of her employment at all times material hereto.

14.     Defendant Veronica Wallace, LPN ("Wallace") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Wallace was employed as a Licensed Practice Nurse ("LPN") at CJF by MC and Armor and was responsible for the health, safety, welfare and humane treatment of all inmates at CJF, including Fiebrink, in August of 2016. Wallace was assigned to conduct a detox/withdrawal monitoring session with Fiebrink on August 26, 2018 but failed to do so, and instead, and upon information and belief, fabricated a record that Fiebrink refused detox/withdrawal monitoring. Alternatively, if Wallace did actually attempt to provide care to Fiebrink, she ignored Fiebrink's withdrawals symptoms, failed to provide any medical care and failed to intervene to assure Fiebrink received the necessary and appropriate care

5

and treatment. Wallace was acting under color of state law and within the scope of her employment at all times material hereto.

15. Defendant Britney R. Kirk, LPN ("Kirk") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Kirk was employed as an LPN at CJF by MC and Armor and was responsible for the health, safety, welfare and humane treatment of all inmates at CJF, including Fiebrink, in August of 2016. Kirk was assigned to conduct a detox/withdrawal monitoring session with Fiebrink on August 25, 2018 but failed to do so and instead, upon information and belief, fabricated a record that Fiebrink refused detox/withdrawal monitoring. Alternatively, if Kirk did actually attempt to provide care to Fiebrink she ignored Fiebrink's withdrawals symptoms, failed to provide any medical care and failed to intervene to assure Fiebrink received the necessary and appropriate care and treatment. Kirk was acting under color of state law and within the scope of her employment at all times material hereto.

16. Defendant Eva Cage, LPN ("Cage") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Cage was employed as an LPN at CJF by MC and Armor and was responsible for the health, safety, welfare and humane treatment of all inmates at CJF, including Fiebrink, in August of 2016. Cage was assigned to conduct a detox/withdrawal monitoring session with Fiebrink on August 27, 2018 but failed to do so, and instead, upon information and belief, fabricated a record that Fiebrink refused detox/withdrawal monitoring. Alternatively, if Cage did actually attempt to see Fiebrink she ignored Fiebrink's withdrawals symptoms, including her profuse diarrhea, failed to provide any medical care and failed to intervene to assure Fiebrink received the necessary appropriate care and treatment. Cage was acting under color of state law and within the scope of her employment at all times material hereto.

17. Defendant Brandon Decker, ARNP ("Decker") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Decker was employed as

6

an Advanced Registered Nurse Practitioner ("ARNP") at CJF by MC and Armor and was responsible for the health, safety, welfare and humane treatment of all inmates at CJF, including Fiebrink, in August of 2016. On August 25, 2016 Decker was contacted via phone concerning Fiebrink's medical issue, withdrawal, but ordered, "No TAPER MEDS AT THIS TIME." Decker never followed up with Fiebrink concerning her medical care and symptoms. Decker was acting under color of state law and within the scope of his employment at all times material hereto.

18.     Defendant Milwaukee County ("MC") is a municipal entity in the State of Wisconsin with a principal place of business in the City of Milwaukee. Milwaukee County manages and oversees the Milwaukee County Criminal Justice Facility ("CJF"). Acting through the Milwaukee County Sheriff's Office, MC is responsible for training, supervising and disciplining jail employees; adopting, implementing and enforcing policies and practices; and ensuring that jail conditions and the treatment of detainees complies with the United States Constitution and other federal, state and local laws. MC is liable for CJF's policies, practices and customs that caused the harm alleged herein, and pursuant to Wis. Stat. § 895.46(1)(a), MC is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that may be awarded against its officials, employees and agents, which include all parties named herein as defendants.

19.     Defendant David A. Clarke Jr. ("Clarke") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Clarke was the Sheriff of the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Pursuant to Wis. Stat. § 302.336(2), Clarke was responsible for the confinement, maintenance, and medical care of all persons confined at CJF. Clarke was responsible for training, supervising and disciplining CJF employees; adopting, implementing, and enforcing CJF policies and practices; and ensuring jail conditions and treatment of detainees complied with the United States Constitution and other federal, state, and local laws, as well as

7

written jail policies. At all times relevant hereto, Clarke had personal knowledge of the de facto policies, practice and custom of the provision of inadequate medical care and/or the failure to provide any medical care at CJF, amongst other de facto polices referred to herein and approved, condoned, and facilitated those de facto polices, practices, customs and conduct, or turned a blind eye for fear of what he might see. Clarke was acting under the color of state law and within the scope of his employment at all times relevant hereto.

20.     Defendant Richard E. Schmidt ("Schmidt") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Schmidt was employed by MC and MCSO as an Inspector, was part of its senior command and was directly responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Upon information and belief, Clarke stated that Schmidt was in charge of the jail as the series of severe deaths occurred there in 2016 and 2017. Clarke specifically said that Schmidt never notified him of the unlawful and unconstitutional conditions then existing at the jail. By law, custom and/or delegation, Schmidt had policy making authority over CJF and was responsible for ensuring that the policies and practices of CJF complied with federal and state requirements for the treatment of detainees. At times material hereto, Schmidt had personal knowledge of the de facto policy, practice and custom of the provision of inadequate medical care and/or the failure to provide any medical care at CJF, in addition to other de facto polices mentioned herein and approved, condoned, and facilitated these de facto polices, practices, customs and conduct or turned a blind eye for fear of what he might see. Schmidt was acting under the color of state law and within the scope of his employment at all times relevant hereto.

21.     Defendant Nancy L. Evans ("Evans") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Evans was employed by MC and MCSO as a sheriff's major, was part of its senior command and was directly responsible for the

health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Evans served as commander of the CJF and had discretionary power over all aspects of jail function. By law, custom and/or delegation, Evans had policy making authority over CJF and was responsible for ensuring that the policies and practices of CJF complied with federal and state requirements for the treatment of detainees. At times material hereto, Evans had personal knowledge of the de facto policy, practice and custom of the provision of inadequate medical care and/or the failure to provide any medical care at CJF, in addition to other de facto polices mentioned herein and approved, condoned, and facilitated the aforementioned de facto polices, practices, customs and conduct or turned a blind eye for fear of what she might see. Evans was acting under the color of state law and within the scope of her employment at all times relevant hereto.

22. Defendant Kevin Nyklewicz ("Nyklewicz") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Nyklewicz was employed by MC and MCSO as a sheriff's deputy inspector, was part of its senior command and was directly responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Nyklewicz served as one of two persons responsible for the operations and administration of CJF and had discretionary power over all aspects of jail function. By law, custom and/or delegation, Nyklewicz had policy making authority over CJF and was responsible for ensuring that the policies and practices of CJF complied with federal and state requirements for the treatment of detainees. At times material hereto, Nyklewicz had personal knowledge of the de facto policy, practice and custom of the provision of inadequate medical care and/or the failure to provide any medical care at CJF, in addition to other de facto polices mentioned herein and approved, condoned, and facilitated the aforementioned de facto polices, practices, customs and conduct, approved condoned or turned a blind eye for fear of what he might see. Nyklewicz was acting under the color of state law and within the scope of his employment at all times relevant hereto.

9

23.     Defendant Latisha Aikens ("Aikens") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Aikens was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Aikens was assigned to the 6th floor where Fiebrink was housed on August 27th and 28th 2018, from the hours of approximately 10:00 p.m. to 6:30 a.m., and was directly responsible for monitoring Fiebrink and her health and safety. Aikens ignored Fiebrink's cries for help and obvious profuse diarrhea and her state of distress, providing no assistance, medical or otherwise. Aikens was acting under color of state law and within the scope of her employment at all times relevant hereto.

24.     Defendant Brian Piasecki ("Piasecki") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Piasecki was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Piasecki was assigned to the 6th floor where Fiebrink was housed on August 27th and 28th, 2016, from the hours of approximately 10:00 p.m. to 6:30 a.m., and was directly responsible for monitoring Fiebrink and her health and safety. Piasecki ignored Fiebrink's cries for help and obvious profuse diarrhea and her state of distress providing no assistance, medical or otherwise. Piasecki was acting under color of state law and within the scope of his employment at all times relevant hereto.

25.     Defendant Jennifer Matthews ("Matthews") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Matthews was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Matthews was assigned to the 6th floor where Fiebrink was housed on August 27th and 28th, 2016, from the hours of approximately 10:00 p.m. to 6:30 a.m. August 28, 2016, and was directly responsible for

monitoring Fiebrink and her health and safety. Matthews ignored Fiebrink's cries for help and obvious profuse diarrhea and her state of distress, providing no assistance, medical or otherwise. Matthews was acting under color of state law and within the scope of her employment at all times material hereto.

26.     Defendant Latrail Cole ("Cole") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Cole was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink. Cole was assigned to the 6th floor where Fiebrink was housed on August 28, 2016 and was directly responsible for monitoring Fiebrink and her health and safety. Cole ignored Fiebrink's cries for help and obvious state of distress, providing no assistance, medical or otherwise. Cole was acting under color of state law and within the scope of his employment at all times material hereto.

27.     Defendant Latoya Renfro ("Renfro") is an adult citizen of the United States and a resident of the State of Wisconsin. At all times material hereto, Renfro was employed as a Correctional Officer at CJF by MC and the MCSO and was responsible for the health, safety, security, welfare and humane treatment of all inmates at CJF, including Fiebrink, in August of 2016. Renfro was assigned to the 6th floor where Fiebrink was housed on August 25 or 26, 2016 and was directly responsible for monitoring Fiebrink and her health and safety. Renfro ignored Fiebrink's obvious and known signs of withdrawal in the days leading up to her death, failed to intervene and provided no assistance, medical or otherwise. Renfro was acting under color of state law and within the scope of her employment at all times material hereto.

28.     Defendants John Does 1-10 are unnamed adult citizens of the United States and, upon information and belief, residents of the State of Wisconsin. At all times material hereto, John Does 1-10 were employed as Correctional Officers/Employees/staff at CJF by MC and the MCSO

and were responsible for the health, safety, security, welfare and humane treatment of all inmates housed at CJF, including Fiebrink, in August of 2016. Upon information and belief, John Does 1-10 were all acting under color of state law and within the scope of their employment at all times material hereto.

29. John Does 11-20 are unnamed adult citizens of the United States and, upon information and belief, residents of the State of Wisconsin. At all times material hereto, John Does 11-20 were employed at CJF by Armor and were responsible for the providing health care to all inmates at CJF, including Fiebrink in August of 2016. Upon and belief, John Does 11-20 were all acting under color of state law and within the scope of their employment at all times material hereto.

30. Wisconsin County Mutual Insurance Corporation is a domestic insurance corporation duly conducting business in the State of Wisconsin and is engaged in the business of, among other things, issuing policies of insurance within the State of Wisconsin, with a mailing address of 22 E. Mifflin St., Ste. 900, Madison, WI 53703, with offices of its registered agent, Aegis Corporation located at 18550 W. Capitol Dr., Brookfield, WI 53045. Upon information and belief, prior to and including all relevant times hereto, Wisconsin County Mutual Insurance Company issued a policy of liability insurance to Milwaukee County and all employees and/or agents thereof. By the terms of said policy, Milwaukee County Mutual Insurance Company agreed to pay any and all sums for which MC and/or employees and agents thereof might be held legally liable for injuries or damages caused by MC and/or employees and agents thereof. Upon information and belief, said policy was in full force and effect during all time periods relevant hereto. Pursuant to Wis. Stat. § 803.04, Wisconsin County Mutual Insurance Corporation is a proper party to this action.

31. Evanston Insurance Company is a foreign insurance corporation duly conducting business in the State of Wisconsin and is engaged in the business of, among other things, issuing policies of insurance within the State of Wisconsin, with a business address of Ten Parkway North,

Deerfield, IL 60015 with offices of its registered agent, Aegis Corporation located at 18550 W. Capitol Dr., Brookfield, WI 53045. Upon information and belief, prior to and including all relevant times hereto, Evanston Insurance Company issued a policy of liability insurance to Armor and all employees and/or agents thereof. By the terms of said policy, Evanston Insurance Company agreed to pay any and all sums for which Armor and/or employees and agents thereof might be held legally liable for injuries or damages caused by Armor and/or employees and agents thereof. Upon information and belief, said policy was in full force and effect during all time periods relevant hereto. Pursuant to Wis. Stat. § 803.04, Evanston Insurance Corporation is a proper party to this action.

32. Wisconsin Health Care Liability Insurance Plan ("WHCLIP") is a domestic insurance corporation duly conducting business in the State of Wisconsin and is engaged in the business of, among other things, issuing policies of insurance within the State of Wisconsin, with a mailing address of 500 3rd Street, Suite 700, Wausau, WI 54403. Upon information and belief, prior to and including all relevant times hereto, WHCLIP issued a policy of liability insurance to Horton. By the terms of said policy, WHCLIP agreed to pay any and all sums for which Horton might be held legally liable for injuries or damages caused. Upon information and belief, said policy was in full force and effect during all time periods relevant hereto. Pursuant to Wis. Stat. § 803.04, WHCLIP is a proper party to this action.

## IV.    FACTS

33. On August 24, 2016, Fiebrink arrived at CJF. She previously had been an inmate at CJF with known addictions to heroin, cocaine and alcohol.

34. Despite Defendants' prior knowledge of the facts that: (a) Fiebrink suffered from chronic addiction to heroin, cocaine and alcohol; (b) Fiebrink was under the influence of heroin and alcohol upon her arrival to CJF; (c) Fiebrink was exhibiting signs of being under the influence of heroin and alcohol; and (d) that Fiebrink was going to suffer from withdrawals, Fiebrink was not

13

seen or assessed by a medical practitioner nor was Fiebrink placed on preventive detoxification protocol nor was Fiebrink provided medications for withdrawal.

35.     Defendant Decker specifically ordered that Fiebrink not be provided withdrawal medications.

36.     On August 24, 2016, despite the above cited knowledge and understanding of correctional staff, Fiebrink was classified as a Level II inmate and placed into the general population with no monitoring, despite the fact that she had yet to be seen by any medical provider at CJF and was visibly suffering from withdrawal. MCSO Policy and Procedure required all Level II inmates at CJF to be seen by a medical practitioner within three days of arrival.

37.     RN Mai Bruno ("Bruno") did the initial health screen for Fiebrink on August 24, 2016. Fiebrink told Bruno that she uses heroin daily and last used heroin on August 24, 2016. Bruno noted a "Level 2 Appointment Needed" for "opiate w/d," meaning withdrawal.

38.     Renfro observed Fiebrink several times between August 25 and August 26, 2018. Renfro knew that Fiebrink was going through withdrawals and did nothing.

39.     On August 26, 2016, Fiebrink was scheduled to be assessed by a medical practitioner. Fiebrink was exhibiting severe signs and symptoms of withdrawal including: (a) profuse diarrhea; sweats; tremors; vomiting; delirium; hallucinations; insomnia; disorientation; runny nose; and watery eyes. These symptoms were observed by correctional staff, including Defendants. Fiebrink's scheduled medical assessment was cancelled and rescheduled to August 29, 2016, five days after she had been incarcerated, without medical or legal justification. Despite the acute symptoms cited above and defendants' knowledge of the same and ample opportunity, Fiebrink never saw a medical practitioner before she died after being incarcerated for four days.

40.     On the evening of August 27, 2016, Fiebrink continued to suffer severe withdrawal symptoms, including hallucinations of the devil trying to choke her inside her cell. Fiebrink

14

continually yelled out and cried for help, which many of the other inmates in the cell block heard but Fiebrink's calls for help were ignored by Defendants.

41.     On August 27, 2018, Fiebrink was provided with change of clothes because she had defecated on herself.

42.     Fiebrink's cries for help continued to the morning of August 28, 2016, when they abruptly stopped as Fiebrink had died.

43.     At 7:20 a.m. on August 28, 2016, correctional staff finally took notice of that Fiebrink would not come out of her cell. At that time Cole ordered another inmate to check on Fiebrink. After the inmate could not elicit a response from Fiebrink, Cole stepped into the cell and found her unresponsive.

44.     At 7:38 a.m. on August 28, 2016, Fiebrink was declared dead.

45.     Between August 24, 2016 and August 28, 2016, Fiebrink suffered withdrawal symptoms accompanied by blatantly obvious symptoms and corresponding medical issues.

46.     Between August 24, 2016 and August 28, 2016: (a) Fiebrink: was not seen by a medical practitioner; (b) Fiebrink's medical history or chart was not reviewed by a medical practitioner; (c) Fiebrink was not assessed for or placed on any withdrawal medication; and (d) Fiebrink was not monitored.

47.     Dr. Ronald Shansky ("Shansky") is the court-appointed medical monitor who was appointed to monitor MC's compliance with the terms of a consent decree entered into in Milwaukee County Case No. 1996-CV-1835, determined that Fiebrink should have undergone a medical assessment that included, "an interval history, as well as physical exam." Shanksy commented that if an exam had occurred, "it was possible that medication for withdrawal would have been initiated and other issues might have been addressed." Shansky was informed by CJF that all patients experiencing withdrawal symptoms have medication initiated at the time of the

15

identification of their condition. The Defendants, with deliberate indifference and pursuant to de facto policy and procedure, avoided "identifying" Fiebrink's medical condition by avoiding performance of a medical exam. Nevertheless, the Defendants were fully aware at all times that Fiebrink, a known addict, was experiencing withdrawals, but chose to take no action, which ultimately led to Fiebrink's death.

48.     MC is liable for the acts of Armor and its employees who were acting as agents of MC pursuant to Wis. Stat. § 895.46(1)(a).

### Milwaukee County's Pattern Of Violating Constitutional Rights Of Inmates At The Justice Facility

49.     At all times relevant hereto, Milwaukee County and Armor had a constitutional duty to provide adequate medical care and services to all detainees at CJF, including Fiebrink.

50.     The physical and mental anguish suffered by Fiebrink in August of 2016 was part a persistent and widespread pattern of disregarding constitutionally mandated medical care.

51.     In 2001, Milwaukee County entered into a Consent Decree governing medical care at the CJF, which included mandates that MC was required to follow, including retaining adequate, well-trained staff to provide reasonably necessary care to detainees.

52.     Pursuant to the Consent Decree, Dr. Shansky has issued periodic reports in which he continually identified the deficiencies of both medical and correctional staff at CJF. Shansky repeatedly points out insufficient staffing and failure to monitor medical needs leads to inadequate care that caused detainees to suffer from lengthy delays in the provision of medical care. Further, it was reported that correctional officers ignored complaints of detainees and failed to report medical issues to medical staff, further causing delay and, at times, the complete absence of medical care.

16

53.     The Defendants were repeatedly and persistently put on notice of deficient staffing, inadequate medical care and inadequate access to medical care at CJF. Despite, repeated notice and the elapses of time, the Defendants are currently not in compliance with the Consent Decree.

54.     Despite the continually reports of Shansky and the continually inadequate staffing and medical care provided at CJF, MC, Armor, Clarke, Schmidt, Evans, Nyklewicz and Horton ignored and completely failed to institute any policy or procedures to comply with recommendations and/or provide adequate staffing and medical care. MC, Armor, Clarke, Schmidt, Evans, Nyklewicz and Horton, despite being aware of the deficient staffing and inadequate medical care, facilitated, condoned, approved the same and turned a blind eye for fear of the what they might see.

55.     The Defendants' complete failure to take any action in response to Shansky's reports and recommendations, pursuant to the Consent Decree, along with the recent deaths and injuries at CJF evidence the consistent and persistent de facto policy of utter disregard for the medical needs of detainees at CJF.

56.     For a significant and persistent duration of time health care staffing shortages at CJF have contributed to delays in access to care and deterioration in quality of care for detainees; reductions in the number of correctional officers has contributed to a dangerous lack of access to health care and inability to detect health crisis, continued turnover in health care leadership positions contributes to lack of oversite of quality of care; and that the electronic record has serious deficiencies and must be altered or replaced.

57.     MC has exhibited a systematic deficiency in staffing for a period lasting over ten years. MC, MCSO, Armor, Clarke, Schmidt, Evans, Nyklewicz and Horton had full knowledge of the same for years, but, upon information and belief, have taken no legitimate or reasonable steps to address and correct this systematic deficiency. MC, MCSO, Armor, Clarke, Schmidt, Evans, Nyklewicz and Horton, despite being aware of the deficient staffing, inadequate medical and

17

inadequate medical care, facilitated, condoned and approved the same or turned a blind eye for fear of what they might see.

58.     As a result of the lack of health care staff and deficient medical services at CJF, correctional officers often improperly attempted to substitute their untrained judgment for that of medical professionals, creating a de facto policy of allowing correctional staff to make medical determinations about the health and well-being of detainees.

59.     The lack of staff at the CJF drastically affects MC's, MCSO's and Armor's ability to respond timely and appropriately to medical emergencies and needs, which is precisely what caused Fiebrink's untimely, horrific, and preventable death.

60.     Physical exams, when performed by CJF staff or Armor, are incomplete and inadequate, often lacking a referral to an appropriate medical professional.

61.     That inmates with acute medical conditions routinely suffer for days, fail to receive appropriate medical care or referrals and then died at CJF.

62.     MC, MCSO, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton, each had a duty to ensure that reasonable measures were taken to provide for the safety and welfare of inmates at CJF.

63.     As a result of MC, MCSO, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton's failure to ensure that reasonable measures were taken to provide for the safety and welfare of inmates at CJF, as well as these individuals condoning, approving, and facilitating this conduct described herein four detainees died while housed at CJF in 2016 alone.

64.     On April 24, 2016, Terrill Thomas died at CJF.  Despite suffering from a severe mental illness and in the midst of a mental breakdown, Thomas was placed in a Maximum-Security Unit at the CJF and never seen by any mental health professional.  After displaying bizarre and erratic behavior, CJF staff cut-off the water supply to Thomas' cell on April 18, 2016.  Six days later,

Thomas' was found dead in his cell. Thomas' death subsequently was ruled a homicide by the Milwaukee County Medical Examiner with the cause of death being dehydration. *See* Eastern District of Wisconsin Case No. 2017-cv-01128.

65. On August 14, 2016 Laliah Swayzer, a newborn, died at CJF in a maximum-security cell where her mother was being held, but provided no medical treatment. Despite her obvious need for care and monitoring, Shade Swayzer, Laliah's mother, was placed into solitary confinement, deprived of medical care and forced to give birth alone in a solitary cell. Staff failed to provide Laliah or her mother with any medical care. As a result, baby Laliah tragically died. *See* Eastern District of Wisconsin Case No. 2016-cv-01703.

66. On October 28, 2016, Michael Madden died at the CJF at the time of Madden's arrest, he was suffering from a heart condition that he had since birth. Despite these serious and grave medical conditions, Madden received little to no health care while in the CJF. On October 28, 2016, Madden suffered a seizure rendering him unconscious. The responding officers believed Madden was faking and failed to call a medical emergency. The officers then attempted to pick and hold Madden up, but dropped him on his head. Madden subsequently was pronounced dead the night of October 28, 2016, at the CJF. *See* Eastern District of Wisconsin Case No. 18-cv-00758.

67. Several other deaths have occurred at CJF since 2016.

68. At all times relevant hereto, MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton were aware of the injuries and deaths occurring at CJF, but no action to remedy the chronic problem that existed.

69. The Defendants consistently and systematically failed to provide adequate medical care at CJF.

70. The Defendants, consistently and systematically fabricated medical records to cover for the lack of medical staff and the lack of care being provided to those in need of medical care.

19

71.     In the Thomas matter mentioned herein, Armor was criminally charged due to the fact that its employees/agents were creating false entries into Thomas's medical records for care that had never been provided. In addition, certain employees of the MCSO also were criminally charged with falsification and dereliction of duty.

72.     Upon information and belief, in the Swayzer matter mentioned herein, the Defendants fabricated medical visits and medication distributions records for care and medications that were never provided.

73.     The Defendants adopted a wide spread de facto policy and procedure of fabricating medical records in an effort to cover up the fact that medical care was not being provided.

74.     The Defendants and/or their agents and employees consistently and persistently failed to intervene when other state actors were not providing adequate medical care.

75.     In the Thomas matter, mentioned herein, correctional and medical staff failed to intervene despite their knowledge that other state actors had cut off Thomas's access to water and were not providing him medical care.

76.     In the Swayzer matter, mentioned herein, correctional medical staff failed to intervene when, despite medical orders to the contrary, Swayzer was moved to solitary confinement while eight and half-months pregnant and denied the medical care and monitoring, despite orders from medical doctors that she be housed in the Special Needs Unit and monitored.

77.     The Defendants adopted a widespread, de facto policy of failing to intervene when other state actors were failing to provide adequate or any medical care.

78.     Defendants failed to have policies and procedures in place in regard to the Medical Housing Unit or the Special Needs Unit, which allowed employees/agents to disregard proper medical procedures in the units that housed detainees with the most acute medical and mental health needs.

20

79.     Defendants did not require its employees/agents to follow policy and procedures but hoped that those employees/agents try to follow those procedures.

80.     The Defendants adopted a widespread, de facto policy of failing to have any policy and procedures in place to dictate the standard by which medical care was to be provided, allowing employees/agents to disregard proper medical procedures with no threat of repercussions.

81.     There existed wide spread practices at CJF under which staff, including correctional and medical staff, commonly failed or refused to:

(a)  Properly examine detainees with a serious medical need or an emergency medical need;

(b)  Provide proper medication and medication management to a detainee in need of the same;

(c)  Respond to detainees who exhibited obvious persistent medical needs;

(d)  Adequately staff CJF with the personally necessary to provide adequate medical care;

(e)  Provide proper medical documentation and fabricated the same;

(f)  Intervene when it was clear that other staff, medical or correctional failed to provide adequate medical care.

82.     These widespread de facto policies and procedures were permitted to rule the day because MC, Schmidt, Clarke, Evans, Nyklewicz, Armor and Horton directly encouraged, approved, condoned and facilitated and were the moving force behind these de facto polices because they refused to adequately train, supervise and control staff, both correctional and medical. Further, MC, Schmidt, Clarke, Armor and Horton failed to punish or discipline staff, both correctional and medical, for instances of misconduct and failure to provide medical care. These defendants directly encouraged the further provision of inadequate medical care, like the complete lack of medical care received by Fiebrink here.

21

83.     MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton violated Fiebrink's rights by encouraging, condoning, approving, facilitating and maintaining de facto policies and widespread practices that were the moving force behind the constitutional violations inflicted upon and suffered by Fiebrink.

84.     At all times material hereto, MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton, with deliberate indifference, failed to develop and implement or modify existing policies, practices and procedures to ensure that detainees at CJF received medical care and monitoring for serious illnesses, referrals to doctors or outside medical care, instead they allowed the de facto policies and procedures mentioned herein to continue and prosper.

85.     At all times material hereto, MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton with deliberate indifference, failed to train, supervise and discipline staff at CJF to ensure that detainees received proper medical care, instead they allowed the de facto policies and procedures mentioned here to continue and prosper.

86.     At all times relevant hereto, MC, Clarke, Schmidt, Armor, Evans, Nyklewicz, and Horton, with deliberate indifference, failed to properly staff CJF to ensure that detainees received proper medical care, instead they allowed the de facto policies and procedures mentioned herein to continue and prosper.

87.     Fiebrink's damages were directly caused by employees of MC, CJF and Armor, including but not limited to the individually named Defendants, who acted pursuant to the de facto policies and procedures set forth herein, in addition to the misconduct described herein.

88.     Fiebrink's reports of withdrawals, along with the Defendants' knowledge of Fiebrink's medical history and symptoms provided more than adequate opportunity for the Defendants to properly treat Fiebrink's condition.   The Defendants failed to even provide medication required by policy and procedure and the Consent Decree.

Case 2:18-cv-00832-AJS   Filed 10/16/18   Page 22 of 34   Document 57

89.     Despite Fiebrink's report that she was suffering from withdrawals along with her medical history and symptoms, Defendants, failed to monitor Fiebrink, to provide any medical treatment or withdrawal medications, to report her condition to a medical doctor, or transport her for outside medical services, all of which were clearly indicated by the circumstances.

90.     As a result of the Defendants' deliberate indifference and adherence to the de facto policies and procedures set forth herein, Fiebrink's withdrawal condition, which was treatable, was substantially aggravated leading to her death.

91.     Fiebrink's death was a direct and proximate result of the Defendants failure to provide any medical care of provide any withdrawal medications to Fiebrink despite here obvious withdrawal symptoms along with her reports of withdrawal.

92.     Fiebrink's death was a direct and proximate result of the Defendants' adherence to the de facto policies and procedures set forth herein.

93.     At all times material hereto, the Defendants were fully aware of Fiebrink's serious medical condition, but were deliberately indifferent, and failed to ensure that Fiebrink was appropriately evaluated and provided treatment.

94.     Robert Martinez's damages and loss of society and companionship were a direct and proximate result of the Defendants' adherence to the de facto policies and procedures set forth herein.

**VIOLATIONS OF LAW**

**COUNT I – FEDERAL CONSTITUTIONAL CLAIMS BY THE ESTATE KRISTINA A. FIEBRINK**
**Section 1983 Claims — Violation of 4th, 8th and 14th Amendment Rights**
**All Defendants**

95.     Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

23

96. As a result of the Defendants' blatant disregard of Fiebrink's acute obvious medical condition, Fiebrink died at CJF.

97. As a result of Defendants' fabrication of medical records, Fiebrink did not receive the medical care she needed, or any care for that matter, ultimately leading to Fiebrink's death.

98. At all relevant times, it was obvious and known to each of the above listed Defendants that: (a) Fiebrink suffered from chronic addiction; (b) Fiebrink was under the influence of heroin and alcohol upon her arrival to CJF; (c) Fiebrink was exhibiting signs of being under the influence of heroin and alcohol and withdrawals therefrom; and (d) that Fiebrink was going to suffer from withdrawals. Defendants deliberately chose to ignore these facts along with policy and procedure requiring withdrawals medications and monitoring, ultimately causing damages, including death. Defendants collectively, and each of them individually, knew or should have known, that Fiebrink was suffering from serious medical conditions and needed immediate treatment, but deliberately ignored the same by failing to provide proper medical care while Fiebrink was in the CJF and by denying Fiebrink's requests for help.

99. That the above-named Defendants collectively, and each of them individually, were deliberately indifferent to Fiebrink's serious medical needs and intentionally deprived Fiebrink of the required medical care and treatment and acted with reckless disregard of Fiebrink's obvious and serious medical conditions.

100. The above-named Defendants collectively, and each of them individually, were deliberately indifferent to Fiebrink's serious medical needs and failed to intervene when each of them became acutely aware that Fiebrink was not being provided any medical care while at CJF and that her constitutionally protected right to health care was being violated by other state actors.

24

101.    That the conduct of the Defendants collectively, and each of them individually, shocks the conscience, was reckless, and demonstrates a deliberate indifference to the consequences of their refusal to provide Fiebrink medical care.

102.    That the actions and omissions of all Defendants collectively, and each of them individually, under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983, were performed under the color of state law and were unreasonable and performed knowingly, intentionally, maliciously, and with deliberate indifference to Fiebrink's safety, well-being and serious medical needs; with wanton intent for Fiebrink.

103.    That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of Fiebrink's Constitutional Rights, Plaintiffs suffered injuries and damages.

## COUNT II
## FEDERAL CONSTITUTIONAL CLAIMS BY THE ESTATE KRISTINA A. FIEBRINK
### Monell Liability
### Defendants Milwaukee County, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton

A.      *Failure to Train and Adequately Supervise.*

104.    Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

105.    Evans became the jail commander of CJF in April 2015.  Evans did not have any training on being a jail commander at the time of her appointment.  Evans did not receive any training after she became jail commander.

106.    Nyklewicz did not have any training on the operations or administration of the jail at the time of his appointment.  Nyklewicz did not receive any training after his appointment.

107.    That the Defendants failed to adequately train officers, correctional employees, and CJF staff at all times material hereto on how to care for inmates intoxicated at time of intake, persons in their custody suffering from withdrawal symptoms, persons in their custody suffering

25

from serious-acute-obvious medical conditions, and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, amongst other failures.

108.    That the failure of the Defendants to adequately train and supervise their employees concerning several key issues such as how to care for inmates intoxicated at time of intake, persons in their custody suffering from withdrawal symptoms, persons in their custody suffering from serious-acute-obvious medical conditions, and individuals in their custody in need of immediate medical attention, how to perform life-saving procedures, how to recognize serious medical emergencies, how to react to serious medical emergencies, demonstrated a deliberate indifference on the part of Defendants MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton as to whether the failure to adequately train and supervise their correctional employees would result in the violation of the Constitutional, Civil, and Statutory Rights of individuals in their custody, such as Fiebrink.

109.    That the above-mentioned failure to adequately train and supervise correctional staff was a direct and proximate cause of the violations of the Constitutional, Civil, and Statutory Rights of Fiebrink.

110.    That the above-mentioned failure to adequately train and supervise correctional staff, and the acts and omissions of these Defendants was a direct and proximate cause of Fiebrink's suffering and death.

B.      *De facto Policies, Practices, and/or Customs In Which Milwaukee County Employees were Deliberately Indifferent to the Constitutional Rights of Inmates and Disregarded Proper Policy and Procedure.*

111.    Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

112.    Fiebrink was booked in the Milwaukee County jail on August 24, 2016.

26

113.    At the time that Fiebrink was booked in the Milwaukee County jail, Milwaukee County and Armor were aware that Fiebrink had a history of heroin use and had used heroin on the day she was booked.

114.    Despite knowing that Fiebrink had a history of using heroin, including on the day she was booked, Milwaukee County and Armor did not start Fiebrink on a preventative detox protocol.

115.    Despite knowing that Fiebrink had a history of using heroin, including on the day she was booked, Milwaukee County and Armor did not assess or monitor Fiebrink for opiate withdrawal.

116.    Knowing that Fiebrink had a history of using heroin, Milwaukee County and Armor categorized Fiebrink as a Level II.

117.    Level II detainees should be seen by medical practitioner within three days.  Fiebrink was not seen by a medical practitioner before her death.

118.    Although an assessment of Fiebrink was scheduled for August 27, 2016, within the three-day timeframe, the assessment was cancelled because of Milwaukee County and Armor's policy of relying on an intake assessment from a prior jailing.  That intake assessment is obviously not a substitute for clinical opiate withdrawal monitoring and detainees likely Fiebrink will obviously be harmed or killed by a policy that cancels the standard of care of three days because of an intake assessment from earlier in the year.

119.    Milwaukee County and Armor lack a policy to assess the needs of detainees suffering from opiate withdrawal, like Fiebrink.

120.    Milwaukee County and Armor's policy is not to conduct an interval history or physical examinations of detainees, like Fiebrink, who are suffering from withdrawal if they had an intake assessment from earlier in the year.

27

121.    Because Milwaukee County and Armor's policy is not to conduct an interval history or physical examination of detainees suffering from withdrawal, Fiebrink was not given medication or other treatment for the withdrawal she was experiencing, i.e., a de facto policy to do nothing existed.  This is why Renfro did nothing on August 25 and 26, 2018 even though Renfro was aware that Fiebrink was suffering from withdrawals.

122.    Because Milwaukee County and Armor's policy is not to conduct an interval history or physical examination of detainees suffering from withdrawal, Fiebrink died.

123.    It is obvious that without a policy that requires an interval history and physical examination, detainees like Fiebrink will be harmed or killed.

124.    Defendants MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton failed to comply with the terms and provisions of the Consent Decree concerning healthcare; failed to follow the recommendations of the Court approved Medical Monitor; exhibited a systematic deficiency in staffing; ratified and approved a de facto policy of fabricating medical records; ratified and approved a de facto policy of failing to intervene when adequate medical care was not being provided, ratified and approved a de facto policy of have no policies and procedures required to be followed by staff, amongst other failures, these actions have been ratified as official policy thereby creating a culture where healthcare staff and correctional staff are deliberately indifferent to the Constitutional Rights of persons in their custody, such as Fiebrink.

125.    Milwaukee County's policy of allowing the failures identified in the previous paragraph have continued for years and are contrary to acceptable correctional practices.

126.    Milwaukee County's policy of allowing the failures identified in the previous paragraphs became a de facto policy of MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton, creating a culture of indifference, which lead to de facto policy of officers and health care staff not being held accountable for their failure to provide medical care and/or call for medical care, further

creating a de facto policy of MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton that officers and health care staff were not required to provide a constitutional level of health care and/or follow policies and procedures in regards to medical care.

127.    That these above mentioned de facto policies of MC, Clarke, Schmidt, Evans, Nyklewicz, Armor and Horton constitute deliberate indifference against individuals detained at CJF, and the de facto policies created an environment that would allow officers and health care staff to ignore the medical needs of inmates and were factors that were significant and causal to the injuries and damages suffered by Fiebrink, as well as her eventual death.

128.    That the Defendants had actual and/or constructive knowledge of each and every one of the above-mentioned policies, practices, and/or customs and were deliberately indifferent as to whether said policies would change.

129.    That each and every one of the above-mentioned policies, practices, and/or customs was a direct and proximate cause of the violations of Fiebrink's Constitutional, Civil and Statutory Rights, which lead to the injuries and damages suffered by Fiebrink, as well as her eventual death.

130.    That the above-mentioned policies, practices, and/or customs, as well as the acts and omissions of the Defendants, were a direct and proximate cause of the injuries and damages suffered by Fiebrink, as well as her eventual death.

## COUNT III – FEDERAL CONSTITUTIONAL CLAIMS BY THE MINOR ROBERT MARTINEZ FOR LOSS OF SOCIETY AND COMPANIONSHIP

131.    Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

132.    As a result of the Defendants' blatant disregard of Fiebrink's acute obvious medical condition, Fiebrink died at CJF.

133.    As a result of Defendants' fabrication of medical records, Fiebrink did not receive the medical care she needed, or any care for that matter, ultimately leading to Fiebrink's death.

29

134.     At all relevant times, it was obvious and known to each of the above listed Defendants that: (a) Fiebrink suffered from chronic addiction; (b) Fiebrink was under the influence of heroin and alcohol upon her arrival to CJF; (c) Fiebrink was exhibiting signs of being under the influence of heroin and alcohol and withdrawals therefrom; and (d) that Fiebrink was going to suffer from withdrawals. Defendants deliberately chose to ignore these facts along with policy and procedure requiring withdrawals medications and monitoring, ultimately causing damages, including death. Defendants collectively, and each of them individually, knew or should have known, that Fiebrink was suffering from serious medical conditions and needed immediate treatment, but deliberately ignored the same by failing to provide proper medical care while Fiebrink was in the CJF and by denying Fiebrink's requests for help.

135.     That the above-named Defendants collectively, and each of them individually, were deliberately indifferent to Fiebrink's serious medical needs and intentionally deprived Fiebrink of the required medical care and treatment and acted with reckless disregard of Fiebrink's obvious and serious medical conditions.

136.     The above-named Defendants collectively, and each of them individually, were deliberately indifferent to Fiebrink serious medical needs and failed to intervene when each of them became acutely aware that Fiebrink was not being provided any medical care while at CJF and that her constitutionally protected right to health care was being violated by other state actors.

137.     That the conduct of the Defendants collectively, and each of them individually, shocks the conscience, was reckless, and demonstrates a deliberate indifference to the consequences of their refusal to provide Fiebrink medical.

138.     That the actions and omissions of all Defendants under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as well as 42 U.S.C. § 1983, were performed under the color of state law and were unreasonable and performed knowingly,

intentionally, maliciously, and with deliberate indifference to Fiebrink's safety, well-being and serious medical needs; with wanton intent for Fiebrink.

139.     That as a direct and proximate result of the deliberate, willful, wanton, and reckless violation of Fiebrink's Constitutional Rights, the minor Robert Martinez suffered damages and the loss of society and companionship of his mother.

## COUNT IV
### Negligence
### All Defendants

140.     Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

141.     Defendants undertook and owed to Fiebrink the duty to make reasonable efforts to care for her in a reasonably prudent manner, to exercise due care and caution and to follow the common law as it relates to persons in their custody who are unable to care for themselves or seek medical attention while in custody.

142.     Notwithstanding the aforementioned duties, Defendants treated Fiebrink in a manner that was extremely negligent, careless, reckless, and without concern for her safety.

143.     That Defendants, in the face of Fiebrink's obvious need for medical attention and assistance, failed to obtain medical attention, failed to identify a medical emergency, and/or failed to act as required.

144.     Defendants failed to adequately train correctional staff and medical staff; failed to develop and implement proper policies and procedures for dealing with inmates suffering from withdrawal at the CJF; failed to have some method, policy, practice, and/or procedure in regards to identifying medical emergencies pertaining to inmates suffering withdrawal, and failed to have an intervention method, policy, practice, and/or procedure in regards to inmates suffering from withdrawal at the CJF so that treatment could be obtained on a timely basis.

31

145.     Defendants engaged in conduct that was so negligent, careless, and reckless that it demonstrated a substantial lack of concern by failing to appropriately implement policies and procedures concerning the training of correctional staff and/or medical staff regarding the processing and relaying of medical information and request for emergent medical treatment and by failing to act on requests for emergent medical treatment,

146.     That as a direct and proximate result of the negligent, careless, and reckless disregard for Fiebrink's safety and well-being, Plaintiffs suffered injuries and damages.

**COUNT V**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**
**Wrongful Death (Wis. Stat. § 895.03)**

147.     Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

148.     That Fiebrink's death was caused by Defendants wrongful acts, negligence, and/or improper conduct

149.     That if Fiebrink's death had not ensued, Fiebrink would have been able to bring a claim against the above named Defendants for violations of Title 42 of the United States Code, Sections 1983 and 1985 for violations of her rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and her rights under the Wisconsin Constitution and Wisconsin Common law.

**CONDITIONS PRECEDENT**

150.     Plaintiffs hereby reassert and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

151.     All conditions precedent to this lawsuit have been performed or otherwise occurred.

**PRAYER FOR RELIEF**

Case 2:18-cv-00832-AJS   Filed 10/16/18   Page 32 of 34   Document 57

152.    WHEREFORE, the Plaintiffs respectfully demand judgment in favor of Plaintiffs against each of the Defendants, jointly and severally, awarding Plaintiffs:

a.    Compensatory damages in an amount to be determined by the Jury;
b.    Punitive damages in an amount to be determined by the Jury;
c.    Reasonable costs and expenses associated with this action including attorneys' fees and experts' fees pursuant to 42 U.S.C. § 1988; and,
d.    Any other further relief as this Court deems just and fair.

153.    Plaintiffs hereby reserve their right to amend their Complaint as additional information becomes known through discovery.

## DEMAND FOR JURY TRIAL

154.    The Plaintiffs demand a trial by jury.

Dated at this 16th day of October, 2018.

Respectfully Submitted,

By: s/ Christopher P. Katers
Christopher P. Katers (SBN: 1067557)
David J. Lang (SBN: 1001218)
Kevin G. Raasch (SBN: 1100196)
JUDGE LANG & KATERS, LLC
8112 W. Bluemound Road, Ste. 101
Wauwatosa, WI 53213
P: (414) 777-0778
F: (414) 777-0776
ckaters@jlk-law.com
dlang@jlk-law.com
kraasch@jlk-law.com

By: s/ Mark L. Thomsen
Mark L. Thomsen (SBN: 01018839)
William F. Sulton (SBN: 1070600)
GINGRAS CATES & WACHS, LLP
3228 Turnberry Oak Drive, Ste. 210
Waukesha, WI 53188
P: (414) 778-0700
F: (414) 778-1770
mthomsen@gcwlawyers.com
wsulton@gcwlawyers.com

By: s/ James J. Gende II
James J. Gende II (SBN: 01030921)
GENDE LAW OFFICES, S.C.
2300 Roundy Drive, Ste. 200
Pewaukee, WI 53072
P: (262) 970-8500
F: (414) 970-7100
jamesg@jamesgendelaw.com

*Attorneys for Plaintiffs*

34