UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF KRISTINA ANN FIEBRINK,
by Special Administrator Nathaniel Cade, Jr.; THE
ESTATE OF ANGELICA M. FIEBRINK; JOSE D.
MARTINEZ, JR.; and ROBERT MARTINEZ,

        Plaintiffs,

    v.

ARMOR CORRECTION HEALTH SERVICE,
INC.; DR. KAREN RONQUILLO-HORTON;
BROOKE SHAIKH APNP; VERONICA
WALLACE, LPN; BRITENY R. KIRK, LPN; EVA
CAGE, LPN; BRANDON DECKER APNP;
MILWAUKEE COUNTY, a municipal corporation;
DAVID A. CLARKE, JR.; RICHARD R.
SCHMIDT; LATISHA AIKENS; BRIAN
PIASECKI; JENNIFER MATTHEWS; LATRAIL
COLE; LATOYA RENFRO; JOHN DOES 1-10;
JOHN DOES 11-20; EVANSTON INSURANCE
COMPANY; and WISCONSIN COUNTY
MUTUAL INSURANCE COMPANY,

        Defendants.

Civil Action No. 2:18-cv-00832

---

**PLAINTIFFS, THE ESTATE OF KRISTINA ANN FIEBRINK, THE ESTATE OF
ANGELICA M. FIEBRINK, JOSE D. MARTINEZ, JR., ROBERT MARTINEZ'S
COMBINED BRIEF IN OPPOSITION TO DEFENDANTS DAVID A. CLARKE JR.,
RICHARD R. SCHMIDT, NANCY EVANS, KEVIN NYKLEWICZ, DR. KAREN
RONQUILLO-HORTON, AND WISCONSIN HEALTH CARE LIABILITY
INSURANCE PLAN'S MOTIONS FOR JUDGMENT ON THE PLEADINGS**

---

NOW COME Plaintiffs The Estate of Kristina Ann Fiebrink ("Fiebrink") and Robert Martinez, by their attorneys, Gingras Cates & Wachs LLP, and Plaintiffs The Estate of Kristina Ann Fiebrink, the Estate of Angelica M. Fiebrink and Jose D. Martinez, Jr., by their attorneys, Judge, Lang & Katers LLC and Gende Law Office SC, and submit this brief in

1

opposition to Defendants David A. Clarke Jr., Richard R. Schmidt, Nancy Evans and Kevin Nyklewicz's motion for judgment on the pleadings (Dkt. #71); and Defendants Dr. Karen Ronquillo-Horton and Wisconsin Health Care Liability Insurance Plan's motion for judgment on the pleadings (Dkt. #87[1]).

## Brief Factual and Procedural Background

Nancy Evans ("Evans") became the commander of the Milwaukee County jail in April 2015 and was the commander during August 24 through 28, 2016 when Fiebrink was jailed. (Dkt. #57 at ¶¶21, 105.) Evans did not have any training on the operations or administration of the jail at the time of her appointment or after. (*Id.*, at ¶105.) Kevin Nyklewicz ("Nyklewicz") was the deputy inspector of the jail during August 24 through 28, 2016. (*Id.*, at ¶¶22, 106.) Nyklewicz did not have any training on the operations or administration of the jail before his appointment or after. (*Id.*, at ¶ 106.) Evans and Nyklewicz were the two persons that ran the day-to-day operations of the jail. (*Id.*, ¶¶21-22.)

Pursuant to Wis. Stat. § 302.336(2), David Clarke ("Clarke") was responsible for the provision of medical care at the jail because he was the elected sheriff: "The sheriff or other keeper is legally responsible for any such prisoner's confinement; maintenance; care, including medical and hospital care." (*Id.*, at ¶19.) Clarke directed Richard Schmidt ("Schmidt") to effectuate the requirements of § 302.336(2). (*Id.*, ¶20.) Thus Clarke and Schmidt were aware that Evans and Nyklewicz—"keepers" of the jail under § 302.336(2)— lacked any training in the operations or administration of jails when they placed them in control of the operations and administration of the jail. (*Id.*, at ¶¶104-110.) Clarke and

---

[1] Plaintiffs previously filed a brief in opposition to Armor's motion to dismiss Count 3. (Dkt. #48.) Plaintiffs incorporate the arguments in that brief here as it relates to Dr. Horton's more recent motion on the same subject. (Dkt. #88 at 12-15.)

2

Schmidt were additionally aware that Evans and Nyklewicz received no training after they placed them in control of the operations and administration of the jail. (*Id.*)

Dr. Karen Ronquillo-Horton ("Dr. Horton") is the medical director of the jail. (Dkt. #57 at ¶12.) The Amended Complaint makes reference to Dr. Ronald Shansky's October 31-November 4, 2016 report. (*Id.*, at ¶¶47-55.) Dr. Shansky, as memorized in his report, reviewed Fiebrink's death (and others) with Dr. Horton. (Dkt. #115-2 at 13-15.)[2] The review shows that Fiebrink "was booked on 8/24/16 with a history of heroin use," but was not monitored for heroin withdrawal. (*Id.*, at 15.) She "was listed as a level 2 and she should have been seen within three days." (*Id.*) However, Fiebrink "did not get an assessment on 8/27 because a scheduled visit was cancelled due to the fact that she had had, with a prior admission, an intake assessment by a practitioner." (*Id.*) Dr. Shansky's report goes on to state, "We discussed the development of a policy and an encounter form that insures that all people have an assessment by a practitioner even if they have been in previously within a year." (*Id.*) And thus Dr. Horton was aware of the state of affairs concerning the care and treatment of inmates coming into the jail who use heroin.

Courts grant motions pursuant to Rule 12(c) only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief" and "there are no material issues of fact to be resolved." *Northern Ind. Gun & Outdoor Shows, Inc. v. City of*

---

[2] Rule 12(c) motions under the same standard as a motion to dismiss under Rule 12(b). *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449 (7th Cir. 1998). The Court may consider documents incorporated by reference to the pleadings without transforming the motion into one for summary judgment if the documents are referred to in the complaint and are central to the plaintiffs' claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

*South Bend*, 163 F.3d 449 (7th Cir. 1998) (citation omitted). The Amended Complaint in this case (Dkt. #57) exceeds that standard.

**Argument**

42 U.S.C. § 1983 anticipates that a government official will be "responsible for the natural consequences of his actions." *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986) (*quoting Monroe v. Pape*, 365 U.S. 167, 187 (1961)); *see also Berg v. County of Allegheny*, 219 F.3d 261, 272 (3rd Cir. 2000) ("A government official's liability for causing an arrest is the same as for carrying it out." (internal quotation marks omitted)). *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011), explains that "when Congress creates a federal tort it adopts the background of general tort law," including "the traditional tort-law concept of proximate cause." *Id.* at 420. § 1983 is a general tort law. Thus, "[p]roximate cause requires only 'some direct relation between the injury asserted and the injurious conduct alleged. . . .'" *Id.* at 419. In other words, individual liability under § 1983 is appropriate where the "individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). § 1983 should "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe*, 365 U.S. at 187.

To prevail plaintiffs are not required to show "purposeful infliction of harm." *Woodward v. Corr. Medical Servs. of Ill., Inc.*, 368 F.3d 917, 926 (7th Cir. 2004). A prisoner may show deliberate indifference by "demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." *Id.*, at 926-27 (*quoting Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 (7th Cir. 1998). As such, plaintiffs "need not show

4

that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); see also *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) ("[A] prisoner claiming deliberate indifference need not prove that the prison official intended, hoped for, or desired the harm that transpired.") (quoting *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996). "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

People that use heroin are at substantial risk of serious injury and death from withdrawal. *Davis v. Carter*, 452 F.3d 686, 696 (7th Cir. 2006) ("The plaintiff has also presented enough evidence to create triable issues of fact regarding whether certain individual defendants were deliberately indifferent by failing to ensure [the decedent] received timely methadone treatment."); *Foelker v. Outagamie County*, 394 F.3d 510, 513-14 (7th Cir. 2005) (concluding that heroin withdrawal is a serious medical need). The number of people entering jails that report regularly using heroin or opioids is high: 19 percent. Bronson, J., Stoop, J., Zimmer, S., & Berzofsky, M. (2017). *Drug use, dependence, and abuse among state prisoners and jail inmates, 2007-2009* (NCJ 250546). Washington, DC: U.S. Department of Justice, Office of Justice Programs, Bureau of Justice Statistics. (available at https://www.bjs.gov/index.cfm?ty=pbdetail&iid=5966 (visited Nov. 19, 2018)). Because these individuals will experience withdrawal syndrome due to the abrupt substance discontinuation, it is obvious that jails will need to adopt adequate policies to prevent serious injury and death. And heroin withdrawal is known to occur within 12 to 36 from the last use.

Kosten TR, O'Connor PG. Management of drug and alcohol withdrawal. *N. Engl. J. Med.* May 1, 2003; 348(18):1786-1795.

Senior jail officials "can be directly liable" if they "designed or [are] aware of the institution's deliberate indifferent policy that caused a constitutional injury. . . ." *Daniel v. Cook County*, 833 F.3d 728, 737 (7th Cir. 2016) (citations and quotations omitted). In *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981), the Seventh Circuit concluded that "it is a sufficient basis from which to infer personal involvement in the denial of [adequate] care at the pleading stage" to alleged that persons bearing "responsibility for insuring that prison inmates receive adequate medical care" did not provide adequate care. Evans, Nyklewicz, Schmidt, Clarke and Dr. Horton are senior officials responsible for insuring that prison inmates receive adequate medical care and failed to do so. (Dkt. #57 at ¶¶12, 19-22.) The creation of the policies and practices concerning the care and treatment of inmates suffering from withdrawal was designed by these Defendants. *See Chavis v. Rowe*, 643 F.2d 1281, n. 9 (7th Cir. 1981) ("Direct individual responsibility for the conditions of segregation imposed on plaintiff must have rested on an official at a relatively high administrative level.").

Evans, Nyklewicz, Schmidt, Clarke and Dr. Horton are also responsible for the unconstitutional actions and inactions of their subordinates. While the law is that defendants are not vicariously liable for the constitutional violations of subordinates. That does not mean that these defendants may not be liable for the injuries caused by others. *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (Defendants are liable for acts committed in violation of § 1983 if they "know about the conduct and facilitate[] it, approve it, condone[] it, or turn[] a blind eye for fear of what they might see.") (quoting *Jones v. City*

*of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)). It just means that liability is not vicarious, i.e., without fault on defendants' part. *Haynesworth v. Miller*, 820 F.2d 1245, 1259-1260 (D.C. Cir. 1987) ("This responsibility is not premised on the notion of vicarious liability; rather, it is bottomed on the principle that in some contexts failure of an official to safeguard against constitutional transgressions by those under his control constitutes an actionable wrong under Bivens and Section 1983.").

Consider, for example, the case of a police officer that fails to intervene during an unlawful arrest or use of excessive force. *Colbert v. City of Chicago*, 851 F.3d 649, 664 (7th Cir. 2017) ("It is well established that an officer may be liable if she witnesses another officer violating a civilian's constitutional rights, has a reasonable opportunity to intervene, and fails to do so."). The officer did not arrest or use excessive force. Nevertheless, the law permits the arrested or battered person to recover damages from the officer because the officer failed to intervene. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) ("An official satisfies the personal responsibility requirement of § 1983 if she acts or fails to act with a deliberate or reckless disregard of the plaintiff's constitutional rights."). In other words, "a defendant's direct participation in the deprivation is not required." *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000).

Dr. Shansky's review of Fiebrink's death with Dr. Horton shows that the persons responsible for the operation and administration of medical care at the jail (i.e., these Defendants) failed to adopt a policy that required medical intervention upon observing withdrawal symptoms. (Dkt. 115-2 at 15 ("I am told that after this case occurred all patients for whom withdrawal is identified will have their medications initiated at the time of identification.").) ARNP Brandon Decker ("Decker") specifically denied detoxification

medication to Fiebrink. (Dkt. #57 at ¶¶17, 35.) The process of detoxification requires monitoring by a medical practitioner. Decker, rather than summoning a medical practitioner, decided to wait until one became available. (*Id.*) Latoya Renfro ("Renfro") "knew that Fiebrink was going through withdrawals and did nothing." (*Id.*, at ¶38.) Renfro did nothing because she was awaiting direction from a medical practitioner that was cancelled. (Dkt. #115-2 at 15.) These facts show that Evans, Nyklewicz and Schmidt (keepers of the jail), and Dr. Horton (driver of medical policy) and Clarke failed to adopt adequate policies to deal with the known risks of heroin withdrawal (a reoccurring circumstance in the jail) and failed to adequately supervise and train subordinates on a medical issue that would affect one-fifth of the people that are jailed. These facts preclude granting the Defendants' motions.

In sum, the Amended Complaint alleges that these Evans, Nyklewicz, Schmidt, Clarke and Dr. Horton created a policy (or sanctioned it) by which people addicted to heroin or opioids would unnecessarily suffer from withdrawal symptoms for as many as 3 days or longer if they had a previous jailing; they intentionally eschewed adequate supervision and training of subordinates concerning the medical care and treatment of detainees experiencing withdrawal symptoms; and they failed to act on information indicating that unconstitutional acts were occurring. (See e.g., Dkt. #57 at ¶¶54-55.) In short, Defendants knew that a significant percentage of the jail population would suffer from withdrawal symptoms and were deliberately indifferent to those persons, including Fiebrink's, serious medical needs.

## Conclusion

The Plaintiffs respectfully request that the Court enter an order denying defendants' motions for judgment on the pleadings.

Dated this 20th day of November, 2018.

                                      **GINGRAS, CATES & WACHS, LLP**
                                      Attorneys for The Estate of Kristina A. Fiebrink
                                      and Robert Martinez

                              By:  /s/ William F. Sulton
                                    Mark L. Thomsen
                                    State Bar No. 1018839
                                    William F. Sulton
                                    State Bar No. 1070600

**P.O. ADDRESS**:

3228 Turnberry Oak Dr.
Suite 210
Waukesha, WI  53188
Telephone:    (414) 935-5482
Facsimile:     (414) 778-1770
Email:          mthomsen@gcwlawyers.com

**JUDGE LANG & KATERS LLC**
Attorneys for Estate of Angelica M. Fiebrink,
Estate of Kristina A. Fiebrink, and Jose Martinez, Jr

By: /s/ Christopher P. Katers
 Christopher P. Katers
 State Bar No. 1067557

**P.O. ADDRESS**:
8112 W Bluemound Rd. Ste 101
Wauwatosa, WI 53213
Telephone: (414) 777-0778
Facsimile: (414) 777-0776
Email: ckaters@jlk-law.com

**GENDE LAW OFFICES SC**
Attorneys for Estate of Angelica M. Fiebrink,
Estate of Kristina A. Fiebrink, and Jose Martinez, Jr

By: /s/ James J. Gende II
 James J. Gende II
 State Bar No. 1030921

**P.O. ADDRESS**:

N28 W23000 Roundy Dr. Ste 200
Pewaukee, WI 53072
Telephone: (262) 970-8500
Facsimile: (262) 970-7100
Email: jgende@jamesgendelaw.com