UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| THE ESTATE OF KRISTINA ANN FIEBRINK, by Special Administrator Nathanial Cade, Jr.; THE ESTATE OF ANGELICA M. FIEBRINK; JOSE D. MARTINEZ, JR.; and ROBERT MARTINEZ,<br><br>Plaintiffs,<br>v.<br><br>ARMOR CORRECTIONAL HEALTH SERVICE, INC., DR. KAREN RONQUILLO-HORTON; BROOKE SHAIKH APNP; VERONICA WALLACE LPN; BRITENY R. KIRK, LPN; EVA CAGE, LPN; BRANDON DECKER APNP; MILWAUKEE COUNTY, a municipal corporation; DAVID A. CLARKE JR; RICHARD R. SCHMIDT; LATISHA AIKENS; BRIAN PIASECKI; JENNIFER MATTHEWS; LATRAIL COLE; LATOYA RENFRO; JOHN DOES 1-10; JOHN DOES 11-20, EVANSTON INSURANCE COMPANY; WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,<br><br>Defendants | Case No. 18-CV-00832 |

**VERONICA WALLACE'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Defendant, Veronica Wallace, LPN, by her attorneys, CUNNINGHAM, MEYER & VEDRINE, P.C., in support of her motion for summary judgment, states as follows:

I.  INTRODUCTION AND FACTUAL BACKGROUND

Kristina Fiebrink was incarcerated in the Milwaukee County Jail from late

August 24, 2016, until her passing on August 28, 2016. (SOF ¶¶ 6-7, 88-90[1]). During this period of incarceration, Ms. Fiebrink advised that she had recently taken heroin, but was not experiencing any detoxification symptoms, and was placed on twice a day detoxification checks. (SOF ¶¶ 11, 30-31).

Defendant, Veronica Wallace, was a "pool nurse" for Armor in August 2016; she worked approximately one day a month at Milwaukee County Jail. (SOF ¶ 101). In August 2016, that day fell on August 26th. *Id.* During her shift, Ms. Wallace attempted to conduct a detoxification check on Ms. Fiebrink. (SOF ¶ 102). Ms. Wallace was able to visually observe Ms. Fiebrink and confirm that she did not show visual signs of detoxification or distress. (SOF ¶ 102–04). However, Ms. Wallace did not complete a detoxification check because Ms. Fiebrink refused to be assessed, which was Ms. Fiebrink's right. (SOF ¶ 102, 55). Ms. Wallace told Ms. Fiebrink that she could not help her if she refused treatment. (SOF ¶ 107). After Ms. Fiebrink walked away, Ms. Wallace documented Ms. Fiebrink's refusal in the electronic medical record so to ensure continuity of care. (SOF ¶ 105). Ms. Wallace believed her course of conduct was appropriate given the nature of the interaction that day. (SOF ¶ 109).

The above was the entirety of Ms. Wallace's involvement in this case. Ms. Fiebrink passed away two days later, after refusing care of other medical personnel

---

[1] As an attempt to reduce the parties' and this Court's burden on reviewing the multiple summary judgment motions and supporting materials filed in this case, Ms. Wallace respectfully adopts Armor's proposed statement of facts, which are designated as SOF 1–100; SOF 101–110 are additional statements of facts presented by Ms. Wallace that specifically pertain to her case.

and not submitting any sick call requests, verbally or in writing, on her own. (SOF ¶¶ 62, 70). As the foregoing would indicate, Ms. Wallace's interaction with Ms. Fiebrink was reasonable and certainly not anything that would give rise to an actionable claim under Section 1983 or common law. Indeed, Plaintiffs' medical expert has not provided any opinion specifically pertaining to Ms. Wallace (in fact, he did not read Ms. Wallace's deposition transcript before generating his opinion) (SOF ¶ 110–111), highlighting the reasonableness of Ms. Wallace's conduct during the one interaction she had with Ms. Fiebrink. Furthermore, Plaintiffs have not completely demonstrated that Ms. Wallace's conduct was proximally linked to Ms. Fiebrink's passing, as Ms. Fiebrink's passing was days after the isolated encounter with Ms. Wallace, and was a natural phenomenon arising from her atherosclerosis. (SOF ¶ 91–95). As a result, summary judgment in favor of Ms. Wallace is undoubtedly warranted.

## II. DISCUSSION

**A. <u>General considerations for summary judgment.</u>**

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The entry of summary judgment is not "a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed '"to secure the just, speedy, and inexpensive determination of every action."' *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)

(citing FED. R. CIV. P. 1). "Summary judgment is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994); *see also Celotex*, 477 U.S. at 322.

When reviewing motion for summary judgment, this Court views the evidence and draws all reasonable inferences in light most favorable to the non-movant. *Walker v. Northeast Reg'l Commuter R.R. Corp.*, 225 F.3d 895, 897 (7th Cir. 2000). That does not mean that this Court is "required to draw every requested inference" but rather "only reasonable ones that are supported by the record." *Omnicare v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). Furthermore, the non-movant cannot rely on ambiguous evidence, conclusory allegations, or the hope that supporting evidence may turn up to resist a motion for summary judgment. *See Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1002 (7th Cir. 1998). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. Additionally, the non-movant's failure to present proof on an essential element of his case necessarily renders all other facts immaterial. *Celotex*, 447 U.S. at 322–23. In short, summary judgment requires the non-movant to "put up or shut up." *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012).

### B. <u>Constitutional Claim — Count I</u>

Count I of Plaintiffs' Complaint alleges that Ms. Wallace was deliberately indifferent to Ms. Fiebrink's medical needs under the Eighth, Fourth, and Fourteenth Amendments. (ECF No. 57, ¶¶ 100, 101, 102). As the Court is aware, the

case law concerning detainees has recently been in flux. *See Miranda v. Cty. of Lake*, 900 F.3d 335 (7th Cir. 2018). But, Ms. Wallace agrees with co-defendants and submits that, given Ms. Fiebrink's status as an individual arrested on a warrant for a violation of a prior probationary sentence (SOF ¶¶ 2–4), it is the Eighth Amendment, not the Fourteenth, that applies in this case. *See* ECF No. 204 at 12 (County Defendants' Memorandum); ECF No. 211 at 7 (Armor's Memorandum); *see also Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017); *Lopez v. City of Chicago*, 464 F.3d 711, 718–719 (7th Cir. 2006).

To present a viable Eighth Amendment claim, Plaintiffs must demonstrate that Ms. Fiebrink had an objectively serious medical condition, and Ms. Wallace was subjectively aware of—and consciously disregarded—a risk to Ms. Fiebrink's health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (emphasis added). As with any Section 1983 claim, liability is individual and predicated upon an individual's own actions. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Deliberate indifference requires a culpable state of mind, akin to criminal recklessness. *Norfleet v. Webster,* 439 F.3d 392, 397 (7th Cir. 2006) (emphasis added). Mere negligence, or even gross negligence, does not constitute deliberate indifference. *Archie v. City of Racine,* 847 F.2d 1211, 1219 (7th Cir. 1988).

Accordingly, a claim of deliberate indifference cannot survive summary judgment unless a litigant can present competent evidence that a medical professional's treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person

Page **5** of **10**
Case 2:18-cv-00832-AJS   Filed 03/08/19   Page 5 of 10   Document 224

responsible did not base the decision on such a judgment." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). Indeed, in *Whiting v. Wexford*, the Seventh Circuit found that a plaintiff's lack of supporting expert testimony was considered fatal to his claim that medical personnel were deliberate indifferent to his medical needs. *Whiting*, 839 F.3d 658, 664 (7th Cir. 2016) ("Whiting doesn't have any expert testimony indicating that Dr. David's infection diagnosis and concomitant treatment plan departed from accepted medical practice, much less substantially so.") (emphases in original).

Finally, any Section 1983 claim requires Plaintiffs to demonstrate proximate cause to establish a viable cause of action. *See, e.g.*, *Whitlock v. Brueggeman*, 682 F.3d 567, 582 (7th Cir. 2012) ("'Just as there is no common law tort without injury, there is no constitutional tort without injury.").

Here, assuming *arguendo* that Ms. Fiebrink had a serious medical condition at the time that she encountered Ms. Wallace, Plaintiffs have provided no cognizable basis to proceed with their claim. As noted above, the indisputable facts are these: Ms. Wallace called Ms. Fiebrink out of her cell, and attempted to engage with her and initiate a detoxification check. Ms. Fiebrink decided to exercise her right to refuse assessment. Ms. Wallace nevertheless had an opportunity to visually examine Ms. Fiebrink and made a medical judgment that she was not in distress and was "okay." Ms. Wallace advised Ms. Fiebrink, as was her usual custom, that she could not help Ms. Fiebrink unless she allowed her to conduct an examination. Ms. Fiebrink nevertheless maintained her refusal (as she did during other instances when medical professionals attempted to evaluate her), and returned to her cell. Ms. Wallace

documented the refusal in Ms. Fiebrink's chart so that other providers would be aware of the interaction. And, Ms. Wallace confirmed that she acted appropriately and in the best interests of Ms. Fiebrink.

As the foregoing would suggest, the facts in this case are far afield from a case of deliberate indifference. Plaintiff may attempt to argue that Ms. Wallace's failure to fill out a refusal form requires that this case proceed forward. This is incorrect. It is well-established that a violation of policy or regulations is "immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006). In any event, the function of the refusal form—to document that a refusal occurred and to educate the patient on ramifications of refusal—occurred in this case. Again, Plaintiffs have provided no evidence that Ms. Wallace substantially departed from accepted professional judgment, much less substantially so such that they can proceed past the summary judgment stage. Indeed, Plaintiffs' expert's silence on Ms. Wallace's care speaks volumes on this issue. *Whiting*, 839 F.3d at 664.

Furthermore, Plaintiffs simply cannot demonstrate that Ms. Wallace's actions proximately caused Ms. Fiebrink's death. Ms. Wallace's encounter with Ms. Fiebrink occurred two days before Ms. Fiebrink's passing. In the intervening period, Ms. Fiebrink refused further detoxification checks and did not seek medical treatment even though avenues were available (*i.e.,* flagging down medical staff, flagging down a correctional officer, submitting a medical request form) for her to do so. (SOF ¶¶ 62–63, 69–70). Furthermore, according to the medical examiner who performed the

post-mortem evaluation, Ms. Fiebrink's passing was a natural event caused by existing atherosclerosis, not from complications of heroin withdrawal. (SOF ¶¶ 95–96). Thus, Plaintiff's attempt to causally link Ms. Wallace to Ms. Fiebrink's passing is overly attenuated and constitutes speculation. Summary judgment on Count I is accordingly warranted.

### C. Constitutional Claim — Count III

The next claim against Ms. Wallace is constitutional claim brought by Plaintiff, Robert Martinez, for loss of society. As pointed out by other co-Defendants, this is a claim which Mr. Martinez cannot bring in this case. The Constitution does not give rise to a loss of companionship claim premised upon an incidental result of state action (*i.e.*, the purported violative act was not done for the primary purpose of familial interference). *Russ v. Watts,* 414 F.3d 783, 790 (7th Cir. 2005) (noting that holding otherwise "would create the risk of constitutionalizing all torts against individuals who happen to have families"). This is not a case of family separation. Thus, Mr. Martinez's claim fails as a facial matter. Beyond that, Mr. Martinez's claim also fails in that, as noted above, Ms. Wallace did not violate Ms. Fiebrink's rights when she attempted to conduct a detoxification check on August 26th, 2016, and did not proximately cause Ms. Fiebrink's passing. Summary judgment is warranted on Count III.

### D. State Law Claims – Count IV and V

The final claims against Ms. Wallace, Counts IV and V are state law negligence actions of medical malpractice and wrongful death. To the extent that Count V

incorporates constitutional claims, summary judgment should issue on the grounds discussed above. With respect to the state law aspects of Count IV and V, Plaintiffs have again failed to establish viable claims.

In Wisconsin, in order to prove that a medical professional was negligent, a plaintiff must generally provide expert testimony—through similarly-situated individuals—that the defendant did not conform to the applicable standard of care for that defendant's profession. *See Nowatske v. Osterloh, M.D.,* 198 Wis.2d 419, 433 (Wis. 1996).

In this case, Plaintiffs have put into issue whether Ms. Wallace, a licensed practical nurse, complied with the standard of care when she encountered Ms. Fiebrink on August 26, 2016. The conduct of Ms. Wallace during this encounter, including her assessment of Ms. Fiebrink and her interaction with Ms. Fiebrink, necessarily requires specialized training and education beyond the ordinary experience of mankind—thus requiring expert testimony. *See Nowatske*, 198 Wis. 2d at 437 n. 10. However, Plaintiff has provided no competent expert testimony pertaining to Ms. Wallace. Plaintiff's expert, Dr. Lewan, is completely silent with respect to Ms. Wallace, much less providing any basis for his authority to discuss correctional nursing care, the applicable standard of care at issue, and any breach of such care with respect to Ms. Wallace. Plaintiff may again attempt to use the lack of a refusal form as a surrogate for expert testimony, however, as in the case of the constitutional claim, this fails to pass muster. "Regulations adopted by a private organization do not set the standard of care; the law sets the standard of care."

*DaSilva v. Rymarkiewicz*, No. 14-CV-812, 2015 U.S. Dist LEXIS 164283 at *17-18, 2015 WL 8346412 (E.D. Wis., Dec. 8, 2015) (Duffin, Mag. J.) (dismissing medical malpractice claim for lack of expert testimony) (citing *Estate of Brown v. Physicians Plus Ins. Co. of Wis., Inc.,* 332 Wis.2d 316, ¶ 15 (Ct. App. 2011). Here, the law requires expert testimony, and no expert testimony exists to support Plaintiff's claim against Nurse Wallace.

Finally, as with the constitutional claims, Plaintiffs again fail to demonstrate proximate cause. In addition to those aspects discussed above (continued refusal and lack of proactive efforts on Ms. Fiebrink's part to seek medical attention), Plaintiffs' expert is silent as to Ms. Wallace's actions and any related impact. As a result, any attempt to causally link Ms. Wallace's August 26th interaction with Ms. Fiebrink to Ms. Fiebrink's passing is overly attenuated and speculative.

### III. CONCLUSION

For the above reasons, this Court should grant Ms. Wallace's motion.

Respectfully submitted,

/s/ Chad M. Skarpiak
Michael R. Slovis
Peter J. Strauss
Chad M. Skarpiak (IL Bar #6304021)
CUNNINGHAM, MEYER &
VEDRINE, P.C.
One East Wacker Drive, Suite 2200
Chicago, Illinois 60603
(312) 578-0049
(312) 578-0247 (fax)
mslovis@cmvlaw.com
pstrauss@cmvlaw.com
cskarpiak@cmvlaw.com
Attorneys for Veronica Wallace