UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THE ESTATE OF KRISTINA ANN
FIEBRINK, by Special Administrator
Nathaniel Cade, Jr.; THE ESTATE OF
ANGELICA M. FIEBRINK; JOSE D.
MARTINEZ, JR.; and ROBERT MARTINEZ,

Case No. 2:18-cv-00832-JPS

Plaintiffs,

v.

ARMOR CORRECTIONAL HEALTH
SERVICES, INC., et al.,

Defendants.

## DECLARATION OF TIMOTHY P. RYAN

I, Timothy P. Ryan, declare pursuant to 28 U.S.C. Section 1746, and under penalty of perjury that the following is true and correct:

1. I am an adult resident of the State of Florida and make this Affidavit based on my personal knowledge and belief.

2. I was retained on February 11, 2019, by Counsel to the plaintiffs, to serve as an expert witness in the above entitled federal civil rights case brought against Armor Correctional Health Care, et al.

3. I have submitted an Expert Witness Report in this case dated March 1, 2019, and have received a notice of deposition.

4. I would like to inform the court that I recently discovered an error in my Expert Witness Report.

5. In my report, I made the misnomer of referring to CO Latril Cole as CO Latoya Renfro. The actions I attributed to CO Renfro were actually performed by CO Cole. I have identified and corrected the following errors:

   a. **Original Paragraph 8d**
   CO Renfro, the day shift (Shift #1) Correctional Officer assigned to the female Unit 6D, was told by Ms. Fiebrink that she had defecated on herself as the result of severe diarrhea. CO Renfro had inmate workers clean up her cell, allowed her to take a shower to clean up, and gave Ms. Fiebrink new clothing, but did not notify medical staff of the situation, make any notice in the log, or write anything on the Tier Card as required. Further, even though there were multiple notices in the logs of Ms. Fiebrink's failure to eat breakfast and lunch meals and combined with the defecation event still did not notify medical. Even on the day and time (7:45 and 7:47 am) of Ms. Fiebrink's death (7:38 am), CO Renfro placed on the Activity Log that there were "No inmates in obvious distress" and continued to log the same even as the Medical Examiner's Office removed the body of Ms. Fiebrink.

   **Corrected Paragraph 8d**
   CO Cole, the day shift (Shift #1) Correctional Officer assigned to the female Unit 6D, was told by Ms. Fiebrink that she had defecated on herself as the result of severe diarrhea. CO Cole had inmate workers clean up her cell, allowed her to take a shower to clean up, and gave Ms. Fiebrink new clothing, but did not notify medical staff of the situation, make any notice in the log, or write anything on the Tier Card as required. Further, even though there were multiple notices in the logs of Ms. Fiebrink's failure to eat breakfast and lunch meals and combined with the defecation event still did not notify medical. Even on the day and time (7:45 and 7:47 am) of Ms. Fiebrink's death (7:38 am), CO Cole placed on the Activity Log that there were "No inmates in obvious distress" and continued to log the same even as the Medical Examiner's Office removed the body of Ms. Fiebrink.

   b. **Original Paragraph 21e**

   On Saturday, August 27, Ms. Fiebrink defecated on herself relative to a severe case of diarrhea. It was significant enough to have CO Renfro instruct inmate workers to help clean up the cell, give Ms. Fiebrink a change of clothes, and allow her to shower. However, CO Renfro did not advise the medical staff, document this event on the Tier Card, nor put this in the Activity Log. Again, this is an event that is indicative severe physically adverse detoxing events requiring medical notification.

2

**Corrected Paragraph 21e**
On Saturday, August 27, Ms. Fiebrink defecated on herself relative to a severe case of diarrhea. It was significant enough to have CO Cole instruct inmate workers to help clean up the cell, give Ms. Fiebrink a change of clothes, and allow her to shower. However, CO Cole did not advise the medical staff, document this event on the Tier Card, nor put this in the Activity Log. Again, this is an event that is indicative severe physically adverse detoxing events requiring medical notification.

c. **Original Paragraph 22**
On the morning of Ms. Fiebrink's death, she was counted twice as "not in distress" by CO Renfro and was only identified as having a concern when an inmate yelling at her got no response. Again, a failure to properly conduct "Wellness Checks" continued the failure of MCSO correction's staff to address their duties and responsibilities in a professional manner.

**Corrected Paragraph 22**
On the morning of Ms. Fiebrink's death, she was counted twice as "not in distress" by CO Cole and was only identified as having a concern when an inmate yelling at her got no response. Again, a failure to properly conduct "Wellness Checks" continued the failure of MCSO correction's staff to address their duties and responsibilities in a professional manner.

d. **Original Paragraph 27d**
CO Renfro failed to advise medical of the severe diarrhea situation affecting Ms. Fiebrink.

**Corrected Paragraph 27d**
CO Cole failed to advise medical of the severe diarrhea situation affecting Ms. Fiebrink.

e. **Original Paragraph 53**
The "Tier Card" is a document, per procedure and practice, that moves with the inmates wherever they are moved within the jail. On the front is some initial identifying information, but on the back is located space to include routine information as well as special needs information. Ms. Fiebrink's card had no significant information on her, even given, her identified special needs and missing clinical contacts and visits. Even something simple like "her self-defecation" or "monitor closely" seemingly would have allowed custody staff to be aware of the concerns surrounding Ms. Fiebrink but there was nothing. Even though some custody staff, like CO Renfro, knew this important information as early as 8/27/2016, no documentation per policy was made on the card. Such inactions support the concept of intentional and deliberate indifference to their required duties at the jail and all to the detriment of Ms. Fiebrink.

3

**Corrected Paragraph 53**

The "Tier Card" is a document, per procedure and practice, that moves with the inmates wherever they are moved within the jail. On the front is some initial identifying information, but on the back is located space to include routine information as well as special needs information. Ms. Fiebrink's card had no significant information on her, even given, her identified special needs and missing clinical contacts and visits. Even something simple like "her self-defecation" or "monitor closely" seemingly would have allowed custody staff to be aware of the concerns surrounding Ms. Fiebrink but there was nothing. Even though some custody staff, like CO Cole, knew this important information as early as 8/27/2016, no documentation per policy was made on the card. Such inactions support the concept of intentional and deliberate indifference to their required duties at the jail and all to the detriment of Ms. Fiebrink.

Further Affiant Sayeth Not.

Pursuant to 28 U.S.C. Sec. 1746 I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed on the 1st day of April, 2019.

/s/ *Timothy P. Ryan*
Timothy P. Ryan