044449/JJR

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

The Estate of KRISTINA ANN FIEBRINK, by Special Administrator NATHANIEL CADE JR.; The Estate of ANGELICA M. FIEBRINK, JOSE D. MARTINEZ, JR., and ROBERT MARTINEZ,
    Plaintiff,

v.

ARMOR CORRECTIONAL HEALTH SERVICE, INC.; VERONICA WALLACE, LPN; BRITENY R. KIRK, LPN; EVA CAGE, LPN; BRANDON DECKER, APNP; MILWAUKEE COUNTY, A MUNICIPAL CORPORATION; LATISHA AIKENS; LATRAIL COLE; JOHN DOES 1-10; JOHN DOES 11-20; AND WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION
    Defendants.

Case No. 18 CV 000832

---

**DEFENDANTS' BRITENY R. KIRK, LPN'S AND EVA CAGE, LPN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. 56 AND CIVIL L.R. 56**

---

Now come the Defendants, BRITENY R. KIRK, L.P.N. and EVA CAGE, L.P.N., by their attorneys, CASSIDAY SCHADE LLP, and, for their Reply Memorandum of Law in Support of Their Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, and, Civil L.R. 56, state as follows:

This Honorable Court should grant these Defendants' Motion For Summary Judgment since there are no genuine issues of material fact with respect to the actions of Defendants, NURSE KIRK and NURSE CAGE. The evidence establishes that these NURSES' actions did not constitute deliberate indifference toward Fiebrink's health, nor, were they "objectively unreasonable". Moreover, Plaintiffs have put forth no expert nursing or physician opinion that establishes any constitutional or statutory claim of deliberate indifference, objective unreasonableness, or of any

1

Wisconsin state law negligence claim as to the specific conduct of either NURSE KIRK or NURSE CAGE, or, that any of their specific actions caused Fiebrink's injuries, including her death.

## I. SUMMARY JUDGEMNT IS WARRANTED AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT, ENTITLING JUDGMENT AS A MATTER OF LAW AS TO NURSE KIRK AND NURSE CAGE

Through the entirety of the events at issue, from August 24 through August 28, 2016, Fiebrink was an inmate subject to the "deliberate indifference" standard under the 8th Amendment, and, it is under this standard that this case should be analyzed. Plaintiffs however, argue that Fiebrink was a "Pre-Trial Detainee" to which the "objectively unreasonable" standard applies. Whichever standard the Court decides to apply to this matter, the evidence and argument in the paragraphs that follow establish that none of NURSE KIRK'S or NURSE CAGE'S specific conduct at issue, was "deliberately indifferent" to Fiebrink's health, nor, was their conduct "objectively unreasonable". Plaintiffs cannot produce a triable issue of fact relative to NURSE KIRK or NURSE CAGE with respect to conduct amounting to a violation of Fiebrink's Constitutional rights, regardless of which standard the Court applies.

### Nurse Britney Kirk did not violate Fiebrink's Constitutional rights regardless of whether the Eighth Amendment or Fourteenth Amendment controls

The evidence establishes that NURSE KIRK did not act deliberately indifferent to Fiebrink's health, and, that none of her subject conduct was objectively unreasonable. Contrary to the Plaintiffs' claims asserted in their Brief, the undisputed evidence establishes that Fiebrink: refused NURSE KIRK'S attempt to conduct her Detox check; refused all care from NURSE KIRK; refused all conversation, counsel, advice, and, evaluation by NURSE KIRK; refused to allow NURSE KIRK to take her vitals; refused to allow NURSE KIRK to "gauge" any alleged withdrawal symptoms; and, refused to allow NURSE KIRK to advise her of the consequences of refusing treatment. The evidence also establishes that at the time of NURSE KIRK'S involvement

with Fiebrink on 8/25/16, that Fiebrink was not "critically in need of care". (Second Reid Dec., Ex. B, Kirk Dep. p. 54, 56; SOMF ¶13, ¶17, ¶21, ¶22).

The undisputed evidence establishes, that as per her training by Armor, NURSE KIRK asked her accompanying Correctional Officer Stokes to go to Fiebrink's cell to check to see if Fiebrink wanted her Detox check. (SOMF ¶18). Officer Stokes went to Fiebrink's cell and asked Fiebrink if she wanted her Detox check. (SOMF ¶19). Fiebrink told Officer Stokes that she did not want her Detox check. (SOMF ¶19). Officer Stokes advised NURSE KIRK that Fiebrink did not want her Detox check. (SOMF ¶20). NURSE KIRK was not trained by Armor, nor, was it Armor's policy or procedure for NURSE KIRK to go up to Fiebrink's cell to observe or interact with Fiebrink in her own cell. (SOMF ¶12). Rather, Armor trained NURSE KIRK that she was not permitted to go to Fiebrink's cell. (SOMF ¶22). Fiebrink refused to come out of her cell and refused to receive her Detox check. (SOMF ¶21). NURSE KIRK attempted to provide the Detox check to Fiebrink and Fiebrink refused it. (SOMF ¶21). Since Fiebrink refused her Detox check, which was her right, NURSE KIRK did not have the opportunity to physically observe or to speak with Fiebrink. (SOMF ¶22).

Following Fiebrink's refusal of treatment, NURSE KIRK prepared the "Refusal of Treatment" Form (hereinafter "Refusal Form"). NURSE KIRK wanted to document that Fiebrink refused her Detox check. (SOMF ¶23). NURSE KIRK signed the Refusal Form, and then, as per the Armor training, NURSE KIRK obtained the signature of Officer Stokes as a witness on the Refusal Form. (SOMF ¶24). Per Armor policy, Officer Stokes' signature was obtained since Fiebrink refused to sign the Refusal Form. (SOMF ¶24). NURSE KIRK properly completed the Refusal Form, and, properly placed it in the bin where all the Refusal Forms were placed. (SOMF ¶24).

While Plaintiffs claim that NURSE KIRK did not "escalate" Fiebrink's refusal, all of the Refusal Forms were collected by the Nurses' Supervisors and entered into Armor's system. (Reid Dec., Ex. B, p. 59; SOMF ¶25). Moreover, while Plaintiffs claim that NURSE KIRK did not document Fiebrink's refusal in Fiebrink's chart, (Plaintiff's Brief p. 13), this claim is false since under the "Update Notes" for 8/25/16 in Fiebrink's "tasks chart", NURSE KIRK input the data, "Refused appointment. Refusal slip signed. LPN Kirk, Britney, R. on 8/25/16." (Second Reid Dec., Ex. B, Kirk Dep. p. 77; Defendants' Response To Plaintiffs' Proposed Findings of Fact "DRPPFOF" ¶110).

While Plaintiffs claim that NURSE KIRK'S actions were later found to be a "root cause" of Fiebrink's death, the Corrective Action Plan did not indicate that NURSE KIRK was obligated to escalate the care, as there were no symptoms during her shift that warranted escalation. Additionally, this finding should not be considered by the Court as it is a subsequent remedial measure pursuant to Federal Rule of Evidence 407.

There is no evidence in the record that NURSE KIRK "simply did not care" (Plaintiffs' Brief p. 13). Rather, the record establishes that as to NURSE KIRK'S actions, NURSE KIRK did what she was trained by Armor to do and followed Armor's appropriate training, policies and protocols.

Despite Plaintiffs arguments to the contrary, it cannot be said, like in <u>Gayton v. McCoy</u>, 593 F.3d 610 (7th Cir. 2010), that NURSE KIRK'S judgment departed so substantially from the professional norm that she acted deliberately indifferent to Fiebrink's health. Nor, can it be said that NURSE KIRK'S actions were "so dangerous that the deliberate nature of her conduct can be inferred." <u>Gayton</u>, 593 F.3d at 623. NURSE KIRK understood that as of the morning of 8/25/16, Fiebrink was not having any withdrawal symptoms, as she had not been prescribed any

medications, that an earlier assessment performed hours before by Nurse Mai Bruno found no withdrawal symptoms, and, there is no evidence that Fiebrink had any change in her condition on the morning of 8/25/16. (SOMF ¶13). Fiebrink was offered her Detox check by NURSE KIRK, and, Fiebrink refused it, as was her right.

At the time of NURSE KIRK'S attempted Detox check, NURSE KIRK clearly did not know of, nor did she disregard, any excessive risk to Fiebrink's health or safety. Nor, can it be inferred from NURSE KIRK'S actions that any inference could be drawn that any substantial risk of serious harm existed as to Fiebrink. There is no evidence that Fiebrink experienced any withdrawal symptoms at all on 8/25/16. Thus, as to NURSE KIRK, Fiebrink had no serious medical need that NURSE KIRK allegedly ignored, was deliberately indifferent to, or acted objectively unreasonable toward. Thus, the evidence in this case prevents a reasonable jury from inferring that any of NURSE KIRK'S actions constituted deliberate indifference and/or that any of her actions were "objectively unreasonable". Accordingly, this Honorable Court should enter summary judgment in favor of NURSE KIRK, and, against the Plaintiffs.

### Nurse Eva Cage did not violate Fiebrink's Constitutional rights regardless of whether the Eighth Amendment or Fourteenth Amendment controls

The evidence establishes that NURSE CAGE did not act deliberately indifferent to Fiebrink's health, and, that none of her subject conduct was objectively unreasonable. Contrary to the Plaintiffs' claims asserted in their Brief, NURSE CAGE did complete a Refusal Form after Fiebrink refused NURSE CAGE'S Detox treatment and CIWA assessment. Fiebrink's refusal prevented NURSE CAGE from explaining to Fiebrink the potential consequences of refusing the CIWA assessment, and, from physically observing Fiebrink. Fiebrink's refusal precluded NURSE CAGE from evaluating Fiebrink to "ensure that Fiebrink was not in danger of dying."

5

Plaintiffs' assertions notwithstanding, the evidence establishes that: on the morning of 8/27/16, NURSE CAGE noticed that Fiebrink did not come out of her cell for her Detox monitoring. (SOMF ¶29). NURSE CAGE asked the Corrections Officer to go to Fiebrink's cell to see if Fiebrink was coming out so that she could have her assessment. (SOMF ¶30). The Officer walked over to Fiebrink's cell, opened the door, and talked to Fiebrink. The Officer then closed the door, went over to NURSE CAGE and said that Fiebrink did not want to come out of her cell. (SOMF ¶31). For safety and security reasons, NURSE CAGE had been trained by Armor not to enter or even approach the inmates' cells. (SOMF ¶32).

Contrary to Plaintiffs' claims that NURSE CAGE did not complete a Refusal Form, and, that Fiebrink's "refusal was not documented in any way", NURSE CAGE filled out a Refusal Form in its entirety, indicating that Fiebrink refused to come out of her cell. (SOMF ¶33; Plaintiff's Brief, p. 15). NURSE CAGE had the attending Officer sign the Refusal Form as well. (SOMF ¶33). NURSE CAGE made a late entry in Fiebrink's chart due to the fact that on 8/27/16, NURSE CAGE left the Jail early, at about noon, because she had her own medical issue that required her to leave prior to the conclusion of her shift. NURSE CAGE had advised her Supervisor at Armor of the same. (SOMF ¶34).

While Plaintiffs claim that, "since CAGE did not document the refusal, she could not have escalated the refusal to a superior", Plaintiffs are incorrect as NURSE CAGE did fill out a Refusal Form, and, would not have escalated Fiebrink's refusal if she was not informed of any symptoms that Fiebrink was having. (Second Reid Dec. Ex. C, Cage Dep. p. 65; SOMF ¶33; DRPPFOF ¶62, ¶63). Since Fiebrink refused a Detox check from NURSE CAGE, NURSE CAGE did not have the opportunity to evaluate Fiebrink. (SOMF ¶31). Fiebrink had a right to refuse NURSE CAGE'S assessment. (Second Reid Dec. Ex. C, Cage Dep. p. 66; DRPPFOF ¶62, ¶63). NURSE CAGE was

6

not allowed to walk off to Fiebrink's cell. (SOMF ¶32). NURSE CAGE was trained by Armor that if the patient did not come out of her cell, or, if the Officer did not report to her that the Patient was too physically sick to come out of her cell, that there was no other way for her to determine whether a patient required additional medical care, even if the patient had refused her check. (Second Reid Dec. Ex. C, Cage Dep. p. 68-69; DRPPFOF ¶62, ¶63).

While Plaintiffs claim that NURSE CAGE "did not make any entry into Fiebrink's chart or the CorEMR System regarding Fiebrink's alleged refusal of treatment" on 8/27/16, NURSE CAGE testified that as an LPN she did not make chart notes into the CorEMR as to her interactions with patients, because LPN's were not allowed to enter these chart notes. (Second Reid Dec. Ex. C, Cage Dep. p. 50, Plaintiff's Brief, p. 15). In addition, while Plaintiffs claim that NURSE CAGE'S actions were later found to be a "root cause" of Fiebrink's death, the Corrective Action Plan did not indicate that NURSE CAGE was obligated to escalate the care, as there were no symptoms during her shift that warranted escalation. Additionally, this finding should not be considered by the Court as it is a subsequent remedial measure pursuant to Federal Rule of Evidence 407.

Like Nurse Radcliff in *Gayton*, it cannot be said that NURSE CAGE'S judgment departed so substantially from the professional norm that she acted deliberately indifferent to Fiebrink's health. Nor, can it be said that NURSE CAGE'S actions were "so dangerous that the deliberate nature of her conduct can be inferred. " *Gayton*, 593 F.3d at 623. Fiebrink refused NURSE CAGE'S Detox check. NURSE CAGE did what Armor trained her to do and followed the appropriate policies and protocols.

At the time of NURSE CAGE'S attempted Detox check, NURSE CAGE clearly did not know of, nor, did she disregard any excessive risk to Fiebrink's health or safety. Nor, can it be inferred from NURSE CAGE'S actions that any inference could be drawn that any substantial risk

7

of serious harm existed as to Fiebrink. By the time of NURSE CAGE'S shift on the morning of 8/27/16, no Detox medications had been prescribed to Fiebrink, and, no withdrawal symptoms, or, any other medical issues with respect to Fiebrink, had been reported to the medical staff. There was one reported instance of alleged diarrhea experienced by Fiebrink, but that occurred <u>after</u> NURSE CAGE performed her rounds. Thus, as to NURSE CAGE, there did not exist any known serious medical need as to Fiebrink that NURSE CAGE allegedly ignored. Therefore, the evidence in this case prevents a reasonable jury from inferring that any of NURSE CAGE'S actions constituted deliberate indifference, or, that any of her actions were "objectively unreasonable". Accordingly, this Court should enter summary judgment in favor of NURSE CAGE and against the Plaintiffs.

## II. <u>NURSE KIRK AND NURSE CAGE ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL OF PLAINTIFFS' CLAIMS BECAUSE PLANTIFFS CANNOT ESTABLISH CAUSATION</u>

With respect to causation at Section "F" of the Plaintiffs' Response Brief, the Plaintiffs did not provide the requisite expert opinion necessary to establish that Fiebrink's injuries, including her death, had a causal connection to the specific actions of either NURSE KIRK or NURSE CAGE. In Section 1983 cases the "plaintiff must produce evidence that she sustained actual injury and that her injuries had a causal connection with the alleged [Section 1983] due process violation." <u>Gayton</u>, 593 F.3d at 624. "Expert testimony that the plaintiff suffered because of a delay in treatment would satisfy the requirement." <u>Gayton</u>, 593 F.3d at 610. "Evidence of a plaintiff's diagnosis and treatment, standing alone, is insufficient if it does not assist the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him [her]". <u>Gayton</u>, 593 F.3d at 624.

In this case, the Plaintiffs' proffered evidence of Fiebrink's diagnosis and "treatment" rendered by NURSE KIRK and NURSE CAGE, standing alone, without appropriate expert testimony, is insufficient because it does not assist the jury in determining whether their specific

8

treatment actually exacerbated Fiebrink's condition or otherwise harmed her. Recall that neither NURSE KIRK nor NURSE CAGE, had been assigned to provide any assessment of Fiebrink on the night shift of 8/25/16, on the day shift of 8/26/16, on the night shift of 8/26/16, after noon on 8/27/16, on the night shift of 8/27/16, or, on the morning of 8/28/16. (SOMF ¶35).

Fiebrink was found unresponsive at 7:38 a.m. on August 28, 2016. NURSE CAGE had left the Jail nearly 24 hours earlier. NURSE KIRK had been assigned to assess Fiebrink, *days* before, on the morning of 8/25/16. (Reid Dec., Ex. A, Amended Complaint, ¶44, p. 15; SOMF ¶16, ¶34). While Plaintiff describes "this horrifying debacle in the last hours of life", neither NURSE KIRK or NURSE CAGE, were even at the Jail during these hours. (Plaintiffs' Brief, p. 25).

Recall that on the day shifts of 8/25/16 and 8/27/16, when NURSE KIRK and NURSE CAGE were assigned to Fiebrink, there is no evidence that Fiebrink had any withdrawal symptoms or any medical complaints. Fiebrink presented with no withdrawal symptoms, she had not been prescribed any withdrawal medications, and, no withdrawal symptoms or issues were reported to medical staff at any point in time through to NURSE CAGE'S assessment on 8/27/16. Fiebrink exercised her right and refused treatment and examination by both NURSE KIRK and NURSE CAGE on their respective shifts. (SOMF ¶17, ¶22, ¶33).

On April 2, 2019, as part of Plaintiffs' Response Brief, for the first time the Plaintiffs proffered a new document, "Declaration of Richard B. Lewan, M.D.", which is attached to the Second Reid Declaration as Exhibit H. Plaintiffs' expert, Dr. Lewan's newly disclosed Declaration contains new critical standard of care opinions against NURSE KIRK and NURSE CAGE at ¶11 of this Declaration. These new standard of care opinions against these Defendant NURSES, however, were not disclosed in the first Expert Report of Dr. Lewan, disclosed by Plaintiffs on 3/1/19, per Court Order. These newly disclosed opinions should be stricken pursuant to Fed. R. Civ. P.

26(a)(2) and Fed. R. Civ. P. 37(c)(1), as they are untimely, being disclosed over a month after the 3/1/19 deadline set by the Court. (Second Reid Declaration, Exhibit I, Text Only Order by Judge J. P. Stadtmueller on 2/12/19).

Federal Rule of Civil Procedure 26(a)(2) "requires parties to disclose the name of any person the party may call to testify as an expert under Federal Rule of Evidence 702. Fed.R.Civ. P. 26(a)(2)(A)." <u>Jenkins v. Bartlett</u>, 487 F.3d 482, 487 (7th Cir. 2007). When the potential witness "is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," the disclosure must also include a "written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B), <u>Jenkins</u>, 487 F.3d at 487. This report must include:

> "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Jenkins, 487 F.3d at 487.

The purpose of the report is to "set forth the substance of the direct examination." Fed. R. Civ. P. 26 advisory committee's note. <u>Id</u>. "<u>The required disclosures must be made within the time frame directed by the court.</u>" Fed. R. Civ. P. 26(a)(2)(C), (emphasis added), <u>Jenkins</u>, 487 F.3d at 487. Moreover, "a party is barred from using at trial evidence that it failed to disclose 'without substantial justification' as required by Rule 26(a), unless that failure was harmless." Fed. R. Civ. P. 37(c)(1) & advisory committee's note. <u>Jenkins</u>, 487 F.3d at 488. In <u>Musser v. Gentiva Health Servs.</u>, 356 F.3d 751, 759 (7th Cir. 2004) for example, the court excluded all of the plaintiff's expert testimony because the plaintiff did not designate these witnesses as experts, nor, did the plaintiff file the required expert reports by the deadline set by the court pursuant to Fed. R. Civ. P. 26(a)(2)(A).

In this case, Plaintiffs failure to disclose their expert's Dr. Lewan's now critical opinions of NURSE KIRK and NURSE CAGE in its initial Expert Report of 3/1/19, is not harmless and is prejudicial to these Defendants. Plaintiffs in their 3/1/19 Expert Report of Dr. Lewan, had every opportunity to disclose every opinion that Dr. Lewan had against Defendants, NURSE KIRK and NURSE CAGE, but disclosed none. In part, because Plaintiffs' expert, Dr. Lewan had no specific criticisms against the specific care and treatment rendered, or allegedly not rendered, by NURSE KIRK and NURSE CAGE, these Defendants moved for and prepared a motion for summary judgment and supporting Memorandum of Law. Trial of this matter is set to proceed on May 13, 2019.

Since Plaintiffs' initial expert disclosure of 3/1/19, there has been no new evidence or testimony secured in this case necessitating a supplementation of Dr. Lewan's initial 3/1/19 Expert Report. Thus, there is no basis for Dr. Lewan to supplement his 3/1/19 Expert Report over a month later, aside from Plaintiffs attempting to survive these Defendants' Motion For Summary Judgment, a practice not allowed by the courts in the Seventh Circuit.

Plaintiffs' tactic in trying to survive these Defendants' Motion For Summary Judgment by having their expert, Dr. Lewan, attempt to offer new opinions a month after Plaintiffs' disclosure deadline, is not unheard of in other district courts in the Seventh Circuit. For example, in *Malibu Media, LLC v. Doe*, a respondent to a summary judgment motion sought to survive it by issuing additional expert opinions in his response brief under the guise of "supplementation." Case No. 13C 6312, 2016 U.S. Dist. LEXIS 14798, *38-39 (N.D. Ill. 2016). The *Malibu* court did not accept this. The *Malibu* court noted,

> "Malibu's effort to add new opinions to [its expert's] original declaration is gamesmanship under the guise of supplementation. Courts have regularly stricken such purported supplementation of an expert report that appears on summary judgment briefing. *citing*, 8A Charles A. Wright, Arthur R. Miller & Charles L. Marcus, *Federal Practice and Procedure*

11

§2049.1, at 319-20 (3d ed. 2010), (collecting cases); 'Supplementation of an expert report permits a party to correct inadvertent errors or omissions. Supplementation, however, is not a license to amend an expert report to avoid summary judgment." *Malibu*, 2016 U.S.Dist. LEXIS 14798 at *38.

Since Dr. Lewan's new criticisms disclosed against NURSE KIRK and NURSE CAGE should be stricken, the Plaintiffs do not have any medical criticism or expert opinion that establishes that either NURSE KIRK or NURSE CAGE'S specific treatment or actions had a causal connection to Fiebrink's injuries, including her death. Therefore, like in *Gayton*, this Court should find that NURSE KIRK'S and NURSE CAGE'S actions were not the cause of Fiebrink's injuries, including her death, and, grant Summary Judgment in favor of NURSE KIRK and NURSE CAGE on Plaintiffs' Section 1983 claims.

In addition, since the Plaintiffs did not respond to these Defendants' arguments with respect to the criticisms against NURSE KIRK and NURSE CAGE provided by the Plaintiffs' other expert, Timothy P. Ryan, it is clear, that under the *Daubert* framework, Mr. Ryan lacks specific knowledge in either nursing or in medicine, to assist the trier of fact to understand or to determine whether NURSE KIRK'S or NURSE CAGE'S specific conduct, was below the applicable standard of care or whether their specific actions had a causal connection with the alleged statutory or constitutional violations.

### III. PLAINTIFFS CANNOT SUSTAIN THEIR BURDEN OF PROOF ON PLAINTIFFS' STATE LAW NEGLIENCE CLAIM

In support of their state law negligence claim, Plaintiffs argue that, "none of the Armor Defendants provided Fiebrink medical care that met the constitutional standard much less a negligence standard", and, that "summary judgment is generally not appropriate in negligence actions." (Plaintiffs' Brief, p. 24-25.) This argument is unavailing. This Court must enter summary judgment in favor of these Defendants, NURSE KIRK and NURSE CAGE, on this medical

negligence state law claim since the Plaintiffs have not established through expert testimony, the applicable standard of nursing care to be applied to NURSE KIRK'S and NURSE CAGE'S actions, and, that their alleged failure to conform to that standard of nursing care caused Fiebrink's injuries, including her death.

In Plaintiffs' Negligence Count IV, all of the allegations against NURSE KIRK and NURSE CAGE involve questions of nursing judgment that are to be evaluated under a professional care standard. The Plaintiffs' Negligence claim against these nurses is clearly one for medical malpractice.

As previously stated, in a medical malpractice case in Wisconsin, the plaintiff must establish the standard of care, establish that the defendant failed to conform to the standard of care, and, establish that the defendant's failure to conform to the standard of care, caused the plaintiff's injury. *Carney-Hayes v. Northwest Wisconsin Home Care*, 284 Wis.2d 56, 81-82, 699 N.W.2d 524, 537 (Wis. 2005). To hold a professional liable, the plaintiff has the burden, to show that the professional failed in the requisite degree of care and skill. *Froh v. Milwaukee Medical Clinic, S.C.*, 85 Wis.2d 308, 317, 270 N.W.2d 83, 87 (Wis App. 1978). Moreover, "that degree of care and skill can only be proved by the testimony of experts. Without such testimony the jury has no standard which enables it to determine whether the defendant failed to exercise the degree of care and skill required of him". *Froh*, 270 N.W.2d at 87.

Whether expert testimony is required in a negligence case against a nurse, and thus whether the court should give the professional care instruction or the ordinary care instruction, depends on whether the alleged negligent act involved professional nursing care or custodial care. *Payne v. Milwaukee Sanitarium Found., Inc.*, 81 Wis. 2d 264, 275-76, 260 N.W.2d 386, 392 (Wis. 1977). Professional nursing care involves "those matters involving special knowledge or skill or experience

13

on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study or experience." *Payne*, 81 Wis.2d at 276. Expert testimony is required to establish the standard of care in these matters. *Id.* In *Payne*, the court held that any claim of negligence based on the lack of supervision given, brought against the nurse, required expert testimony to establish. *Payne*, 81 Wis. 2d at 276. Since the level of supervision ordered for the *Payne* patient related to therapy and security, this was a matter involving special knowledge or skill or experience on a subject not within the realm of the ordinary experience of mankind, which required special learning, study, or experience. *Payne*, 81 Wis. 2d at 276.

Like in *Payne*, the conduct at issue of NURSE KIRK and NURSE CAGE, in attempting to provide Fiebrink with her Detox physical assessment, in believing that Fiebrink had no withdrawal symptoms, with Fiebrink refusing the treatment, and, with the Nurses completing the required "Refusal of Treatment" Form due to Fiebrink's refusal, in the setting of Jail security, these are all issues of nursing judgment. Moreover, the issues of whether or not NURSE KIRK and NURSE CAGE adequately checked on Fiebrink, in a secured jail setting, whether they adequately attempted to evaluate her pursuant to the nursing training they were given, or, whether Fiebrink's refusal of Detox assessments should have been "escalated" to the next level of nursing supervision, all implicate a standard of nursing care and judgment. These subjects are not within the realm of the ordinary experience of mankind, all require special study or experience, and, all need to be established by nursing expert testimony.

With respect to the Plaintiffs' expert Dr. Lewan, since his new criticisms against NURSE KIRK and NURSE CAGE were untimely disclosed and should be stricken, they should not be permitted to establish the Plaintiffs' burden of proof in the Plaintiffs' state law medical negligence claim. Moreover, Dr. Lewan's first Expert Report in this matter failed to establish that either

14

NURSE KIRK or NURSE CAGE, failed to conform to the nursing standard of care, as the Report contained no specific criticisms of the specific conduct of either NURSE KIRK or NURSE CAGE. (SOMF ¶37).

Also, although the Plaintiffs' expert, Timothy Ryan's Expert Report did contain specific criticisms of the conduct of NURSE KIRK and NURSE CAGE with respect to standard of care and causation, Plaintiffs did not respond to these Defendants' arguments that Mr. Ryan has had no nursing or medical education, training, background, licensure, or, experience, whatsoever. (SOMF ¶40).

In this case, since the Plaintiffs have failed to disclose or to provide any expert nursing opinion that establishes the applicable standard of care, that establishes that the specific conduct of NURSE KIRK and NURSE CAGE failed to conform to that standard, and, that that specific deviation of the nursing standard of care was a substantial factor in causing Fiebrink's injuries and damages, including her death, the Plaintiffs cannot establish a *prima facie* case of state law medical or nursing negligence against NURSE KIRK or NURSE CAGE. Thus, this Court should enter summary judgment in favor of NURSE KIRK and NURSE CAGE and against the Plaintiffs.

WHEREFORE, the Defendants, BRITENY R. KIRK, L.P.N., and, EVA CAGE, L.P.N., respectfully request that this Honorable Court enter Summary Judgment in their favor pursuant to Federal Rule of Civil Procedure 56, and, Civil Local Rule 56, and, grant such other relief as this Honorable Court deems equitable and just.

Dated this 9th day of April, 2019.

Respectfully submitted,
CASSIDAY SCHADE LLP

By: /s/ *John J. Reid*
　　　John J. Reid

One of the Attorneys for the Defendants, BRITENY R. KIRK, L.P.N., and, EVA CAGE, R.N.

John J. Reid
Wisconsin Bar No. 1057458
CASSIDAY SCHADE LLP
111 East Wisconsin Avenue, Suite 2100
Milwaukee, WI 53202
414-224-1086
414-224-6044 – Fax
jreid@cassiday.com

9120696