IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

THE ESTATE OF KRISTINA ANN FIEBRINK,
by Special Administrator Nathaniel Case, Jr.,
THE ESTATE OF ANGELICA M. FIEBRINK,
JOSE D. MARTINEZ JR., and
ROBERT MARTINEZ,

        Plaintiffs,

                                            **Case No. 18-CV-832-JPS**

v.

ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
DR. KAREN RONQUILLO-HORTON,
BROOKE SHAIKH APNP,
VERONICA WALLACE LPN,
BRITENY R. KIRK LPN,
EVA CAGE, KPN,
BRANDON DECKER APNP,
MILWAUKEE COUNTY,
DAVID A. CLARKE JR.,
RICHARD R. SCHMIDT,
LATISHA AIKENS,
BRIAN PIASECKI,
JENNIFER MATTHEWS,
LATRAIL COLE,
LATOYA RENFRO,
JOHN DOES 1-10,
JOHN DOES 11-20,
EVANSTON INSURANCE COMPANY, and
WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION,

        Defendants.

---

**DEFENDANTS ARMOR CORRECTIONAL HEALTH SERVICES, INC. AND NURSE PRACTITIONER BRANDON DECKER'S REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

---

# INTRODUCTION

In a desperate attempt to defeat Defendants Armor Correctional Health Services, Inc. ("Armor") and Nurse Practitioner Brandon Decker's ("NP Decker") (collectively "Defendants") Motion for Summary Judgment, Plaintiffs rely upon inadmissible material; inaccurate record citations; unsupported (and in several instances, non-existent) proposed factual findings; new *Monell* theories and new opinions proffered by their medical expert after the deadline set by this Court. But based upon this Court's local rules and well-established precedent, Plaintiffs cannot rely upon this sort of material in defeating Defendants' Motion. Further, Plaintiffs inexplicably fail to address many of the arguments presented by Defendants, and even present arguments on defenses not advanced by them. Ttttthe undisputed facts in the record demonstrate that no Armor medical personnel ever had notice that Ms. Fiebrink was going through withdrawal or exhibiting signs of withdrawal. Because Plaintiffs have failed to come forth with sufficient admissible evidence justifying a trial in this matter, this Court should enter summary judgment in Defendants' favor as to each claim asserted against them in this action.

   A. ***The Court Should Bar the Various Inadmissible and Improper Material Proffered by Plaintiffs in Opposition to Summary Judgment***

Plaintiffs rely upon a variety of improper and inadmissible material in an attempt to salvage their claims. This Court should exclude the inadmissible and improper material proffered by Plaintiffs in connection with the pending Summary Judgment Motion.

   **1. The New Opinions from Dr. Lewan, Should be Summarily Rejected by this Court**

Plaintiffs were required to disclose the identities of experts, along with reports and supporting documentation, by March 1, 2019. Defendants' expert disclosures were due on March 28, 2019. Both parties complied with these respective deadlines. Plaintiffs disclosed Dr. Richard B. Lewan as their medical expert and provided a Report from him. **Dkt. 208, at Exh. 22.** Notably,

Dr. Lewan's Report contained *no* opinions regarding the applicable standard of care with which governed Armor's medical personnel, including NP Decker. *Id.* Nor did his Report contain any opinion about the appropriateness of NP Decker's decision to not prescribe taper medication for Ms. Fiebrink in light of the undisputed fact that she had not displayed a single symptom or indication of withdrawal. *Id.* These omissions formed a critical component of Defendants' Summary Judgment Motion. **Dkt. 211 ¶¶ 4, 10-16.**

Plaintiffs' Response to Defendants' Motion for Summary Judgment contains a Declaration from Dr. Lewan in which he expressed new opinions not set forth in his Rule 26 Report. **Dkt. 230** Specifically, his Declaration now includes opinions on standard of care and an opinion regarding NP Decker's decision regarding medications. *Id.* But Fed. R. Civ. P. 26(a)(2)(B) mandated that all opinions offered in this case by Dr. Lewan be set forth in his Report that was disclosed prior to the expert disclosure deadline. A party's failure to comply with Fed. R. Civ. P. 26(a) compels an automatic and mandatory exclusion of late expert opinions in connection with a motion or at a hearing or trial, unless the offering party can prove that its violation of the Rule was justified or harmless. *Fed. R. Civ. P. 37(c);* s*ee* also *Rowe Int'l Corp. v. Ecast, Inc.,* 586 F.Supp.2d 924, 962 (N.D. Ill. 2008); *Baker v. Indian Prairie Cnty. Unif. School Dist. No. 204,* Case No. 96C3927, 1999 U.S. Dist. LEXIS 17221 (N.D. Ill. October 26, 1999) at *14("… [t]he Court will not allow [Plaintiffs] to ambush Defendants with new expert opinions after the expert disclosure deadline and after they filed for summary judgment").

Plaintiffs did not seek consent from Defendants to introduce new medical opinions outside of the disclosure deadline, nor did Plaintiffs obtain leave of this Court to do so. **Harlan Declaration, at ¶ 3**. Plaintiffs offer no explanation in their opposition filings for offering these new opinions in violation of the Court's expert disclosure deadline. The only plausible explanation

3

for the new opinions is that Plaintiffs discovered the deficits associated with Dr. Lewan's Report once they were exposed in the summary judgment briefing process and sought to address those shortcomings via a Declaration. Defendants are clearly harmed by the new opinions offered by Dr. Lewan shortly before the scheduled trial in this matter, and subsequent to Defendants' Motion for Summary Judgment. Numerous courts have barred the introduction of new expert opinions offered in opposition to a summary judgment motion. See e.g., *Grace Christian Fellowship v. KJG Invs. Inc.,* Case No. 07-C-0348, 2011 U.S. Dist. LEXIS 86242 at \*\*15-19 (E.D. Wis. August 4, 2011); *Omaha Public Power Dist. Siemens,* Case No. 99CV352, 2002 U.S. Dist. LEXIS 6087 at \*\*13-14 (D. Neb. January 15, 2002). Accordingly, this Court should not consider the opinions set forth in Paragraphs 8-12 of Dr. Lewan's summary judgment Declaration.

Alternatively, this Court should exclude Dr. Lewan's new opinions and those contained in his Report, on the grounds that they are unreliable and conclusory. Where, as here, an expert relies upon his or her experience in giving opinions, the expert must explain how that experience leads to the conclusions reached. *Fed. R. Evid. 702*. Nowhere in his Report or Declaration does Dr. Lewan explain how his experience enables him to reach his conclusions. For example, Dr. Lewan's Declaration opines that "medication would have prevented Kristina's suffering (as described more fully in [his] report) and death," but provides no explanation as to the methodology that he employed to reach that conclusion or what about his experience enables him to render that opinion. Nor does Dr. Lewan attempt to specify what "medication" could have been administered by NP Decker that would have saved her life. Dr. Lewan even employs the parlance of Section 1983 jurisprudence -- "deliberately indifferent" -- without offering any explanation as to how his background as a family doctor qualifies him to offer that opinion regarding NP Decker's conduct in the context of a correctional facility. Although Dr. Lewan opines that NP Decker's actions were

4

"far below the standard of care for practitioners," he never explains how he reached that conclusion, or even what the standard of care is for nurse practitioners like NP Decker in a correctional setting. These sort of shortcomings resulted in Judge Leinenweber striking substantial portions of a medical expert's report in a Section 1983 case - - *Dixon v. Cook County,* Case No. 09 C 6976, 2012 U.S. Dist. LEXIS 136644 * 10-11 (N. D. Ill. Sept. 25, 2012), rev'd on other grounds, 819 F.3d 343 (7th Cir. 2016). Accordingly, the unreliable and conclusory nature of Dr. Lewan's opinions and conclusions in his Report and Declaration is an alternative basis for this Court to disregard that material in connection with the instant Summary Judgment Motion.

### 2. Dr. Shansky's Report Should not be Considered by the Court

In opposition to Defendants' Motion for Summary Judgment, Plaintiffs base two of their proposed findings of fact on the report of Court-appointed monitor Dr. Robert Shansky. **Dkt. 236 at ¶¶47-48.** The sole cited support for these proposed facts is, in fact, Dr. Shansky's report. However, Dr. Shansky's report is inadmissible hearsay evidence because Plaintiffs are offering it into evidence to prove the truth of the matters asserted. *Fed. R. Evid. 801.* Moreover, even if Dr. Shansky's report were somehow deemed admissible by the Court, the statements set forth within the report are hearsay. Finally, there has been no foundation established that the statements in the report were made or crafted by someone with first-hand knowledge of the matters discussed. Plaintiffs have not submitted an affidavit or declaration from Dr. Shansky, or anyone else, who can establish a foundation for the admission of the report. Therefore, pursuant to Fed. R. Evid. 702 and Fed. R. Evid. 801, Dr. Robert Shansky's report should be excluded from consideration by the Court.

### 3. The Corrective Action Plan Prepared by Kayla McCullough, is Inadmissible and Cannot be Used to Oppose Defendants' Summary Judgment

Plaintiffs rely upon statements from the Corrective Action Plan (the "CAP") prepared by

5

an employee of Armor, Kayla McCullough, in opposition to Defendants' Motion for Summary Judgment.[1] In Defendants' opening Summary Judgment Memorandum, they specifically argued that the CAP, as well as certain other materials prepared in connection with the remedial efforts undertaken by Armor subsequent to Ms. Fiebrink's death, were inadmissible, pursuant to Fed. R. Evidence 407 and the federal common law self-critical examination doctrine. **Dkt. 211.** As an initial matter, Plaintiffs have waived any opposition to Defendants' arguments by not addressing them in their opposition filing. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). Further, there is no dispute that the CAP and statements set forth therein, are inadmissible on the basis of the self-critical examination privilege and Fed. R. Evid. 407. *See Coates v. Johnson & Johnson,* 756 F.2d 524, 551 (7th Cir. 1985); *Tice v. American Airlines, Inc.,* 192 F.R.D. 270, 272 (N.D. Ill. 2000); *Morgan v. Union Pacific,* 182 F.R.D. 261, 264 (N.D. Ill. 1998); *Robinson v. Troyan,* 2011 U.S. Dist. LEXIS 128945 at *10-12 (E.D. N.Y. November 8, 2011). Here, there is no genuine dispute that the CAP was created as part of Armor's own self-examination into its processes and procedures for the purpose of remedying any discovered problems and making general improvements (**Dkt. 212, ¶99**). Therefore, this Court should apply the self-critical examination privilege here and bar Plaintiffs from using the CAP and the statements of Kayla McCullough therein, in attempt to establish Defendants' liability in this action. Alternatively, the CAP and the statements there should be excluded from evidence, pursuant to Fed. R. Evid. 407. That Rule has also been applied to bar admission of post-accident reports and investigations like the CAP. *See Pastor v. State Farm Mutual,* 487 F.3d 1042,1045 (7th Cir. 2007); *Specht v. Jensen,* 863 F.2d 700,

---

[1] Plaintiffs also reference the following statement: "[t]he patient's demise is strongly leaning towards complications of heroin withdrawal" in support of their claims. But the proposed finding cited by Plaintiffs in support of that statement, PPFOFA ¶ 187 is non-existent and hence the statement should not be considered here. The statement is also inadmissible because it is hearsay and comes from a document that was prepared as part of the post death remedial, self-critical examination undertaken by Armor (Def. PFOF ¶ 99).

6

701-702 (10th Cir. 1988). Accordingly, the CAP and the statements therein should not be considered by this Court in ruling upon the instant Summary Judgment Motion.

Finally, the statements of Ms. McCullough and others in the CAP should be excluded on the grounds that they are hearsay and that no foundation has been established by Plaintiffs that the statements are based upon competent, personal knowledge of the declarants. Ms. McCullough is a layperson who does not, and did not at the time Ms. Fiebrink died, have any medical training. **Dkt. 212, ¶100**. She has also not been identified as an expert witness for any party in the present case. **Harlan Decl. at ¶ 4**. Because there is nothing in the record which even suggests that Ms. McCullough is qualified to testify about the medical causes for Ms. Fiebrink's death, her opinion is inadmissible and cannot be used to create a factual dispute for trial. *See Sowemimo v. Cowan,* Case No. 01-CV-255-DRH, 2004 U.S. Dist. LEXIS 28967 at *6 (S.D. Ill. February 17, 2004). Further, as a non-expert, Ms. McCullough is not permitted to give expert testimony as to the causal relation, if any, between Defendants' actions and omissions and Ms. Fiebrink's death, since such testimony requires a degree of expertise beyond that of a layperson. *Pearson v. Ramos,* 237 F.3d 881, 886 (7th Cir. 2001; *Fedro v. Reno,* 21 F.3d 1391, 1396-97 (7th Cir. 1994). As the party offering the CAP as evidence in this matter, Plaintiffs are responsible for establishing the foundational predicate for the admission of that material. They have simply sought to place that material into evidence without offering any explanation as to how it is even admissible. This Court is not obligated to search for grounds justifying admission of the CAP (or the statements therein) and should not consider it in ruling on the instant Motion.[2]

---

[2] Plaintiffs' opposition filings are replete with instances of improper proposed findings that are unsupported by the record and denials with no record citations, or citations that do not support the denials. The following are proposed findings disputed by Plaintiffs without **any** citation to record evidence: Def's PFOFs 3;18-19;65;71;84-85 and 100. Additionally, Plaintiffs' dispute of the following proposed findings are not genuine and/or supported by admissible evidence in the record as required by Civil L.R. 56(b)(2)(B) and, accordingly, should be rejected by this Court: Def's

7

## B. Plaintiffs Have Failed to Demonstrate Triable Issues as to Their Section 1983 Claim Against NP Decker

Before addressing the many ways that Plaintiffs' Section 1983 claims fall short, it is important to clarify that their claims should be analyzed under the Eight Amendment deliberate indifference standard. Plaintiffs cite *Larry v. Dep't of Corr.,* Case No. 06-C-223-C, 2006 U.S. Dist. LEXIS 30437 *5-7 (W.D. Wis. May 12, 2006), but that case does not call into question this Court's observation in *Tyra v. Hayes,* Case No. 18-CV-1318 (JPS), 2018 U.S. Dist. LEXIS 216687 *2 (E.D. Wis. December 17, 2018) that probation revocation proceedings are an administrative process and not a judicial one. Moreover, Plaintiffs are estopped from arguing the inapplicability of the Eighth Amendment standard here because they expressly represented in the Amended Complaint that their Section 1983 claims are based, in part, on Eighth Amendment (**Dkt. 57 ¶¶ 4;95**). Consequently, this Court should analyze Plaintiffs' Section 1983 claim against NP Decker under the higher deliberate indifference standard of the Eighth Amendment.

NP Decker is entitled to summary judgment on Plaintiffs' Section 1983 against him for a host of reasons. First, Plaintiffs fail to offer any arguments with respect to the qualified immunity defense raised by NP Decker in Defendants' opening Memorandum. This failure on the part of Plaintiffs results in a waiver of any opposition on that defense and dismissal of their claim against him. *See Abrego*, 907 F.3d at 1012.

Second, the undisputed facts in the record clearly establish that NP Decker's medical decisions relative to Ms. Fiebrink's intake were entirely reasonable.[3] Plaintiffs' offer no

---

PFOFs 25;32;34;37;42;60;69-70 and 73. Further, Plaintiffs violated Civil L.R. 56(b)(2)(B)(ii), by failing to support the following additional proposed findings with admissible record evidence: 48; 47-48; 83;129;136-137; 141; 145; 153; 159; 163; 165; 170; 188; 197, 201-206; 208. **Dkt. 236.**

[3] Even if Dr. Lewan's Report and new opinions are considered by this Court, they do not aid Plaintiffs relative to their Section 1983 claims. At best, this material is only evidence of negligence, but Section 1983 requires a higher showing. *See Adell v. Hepp,* Case No. 17-CV-267 (JPS), 2017 U.S. Dist. LEXIS 54515 at *10 (E.D. Wis. April 10, 2017.)

8

admissible evidence that NP Decker's decision to forego prescribing medication given the undisputed fact that Ms. Fiebrink was not exhibiting any withdrawal symptoms at the time he was called to consult on her treatment, represented deliberately indifferent or objectively unreasonable care. Indeed, Plaintiffs have no admissible evidence to contradict the sworn Declaration testimony of ANP Andreoni that NP Decker's actions comported with the prevailing standard of care. (**Dkt. 212 ¶ 85**) Nor is there evidence that NP Decker's decision to have Ms. Fiebrink seen by a medical provider in 48 hours as opposed to 24 hours was inappropriate. For it is undisputed that he ordered her to be monitored for withdrawal symptoms twice a day for a five day period. (**Dkt. 212 ¶ 31**) While Plaintiffs criticize NP Decker's decision to allow Ms. Fiebrink to be housed in general population, they offer absolutely no evidence that she was unable to receive appropriate care and monitoring from that location. And while Plaintiffs argue that NP Decker should have examined Ms. Fiebrink's medical records prior to issuing the treatment order, they fail to explain how doing so would have compelled NP Decker to undertake a different treatment path. Certainly, Plaintiffs offer no admissible expert testimony in that regard.[4] Finally, NP Decker's actions in not prescribing medications due to the absence of withdrawal signs finds supports in a decision authored by Judge Griesbach earlier this year: *Pulera v. Sarzant,* Case No. 15-C-461, 2019 U.S.

---

[4] Plaintiffs' reliance upon *Miranda v. Cty. of Lake,* 900 F.3d 335 (7th Cir. 2018). is curious. There, the undisputed evidence demonstrated that the defendant doctors had knowledge that the decedent was not competent to care for herself and had stopped eating and drinking. Yet, the doctors adpoted a "wait and see" treatment approach. Also undermining the Plaintiffs' Section 1983 claims is the Court's observation that had the doctors merely forgotten that the decedent was in jail or failed to assume coverage of her, they would likely not have exposure under Section 1983. *Id*. at 354. This suggests that the proffered evidence here regarding medication and lack of monitoring, are insufficient to meet the Section 1983 standard. Indeed, the undisputed facts here establish that NP Decker never had notice of Ms. Fiebrink exhibiting withdrawal symptoms or suffering any form of distress, prior to her death. **Dkt. 235 ¶ 36.** Hence, *Miranda* is wholly inapposite and, if anything, supports dismissal of the instant claim based on the Court's observation regarding negligence. *Glisson v. Indiana Department of Corrections,* 849 F.3d 372 (7th Cir. 2017), is similarly unhelpful since the record there established that the contracted jail medical provider in that case knowingly refused to follow state regulations relative to continuity of care which arguably caused the death of an inmate. There are no comparable factual allegations here.

Dist. LEXIS 3666 at *18-19 (E.D. Wis. January 9, 2019) (jail doctor's decision to withhold withdrawal related medication where inmate had not shown signs of withdrawal was reasonable).

Third, Plaintiffs have failed to create a triable issue of causation and have, in fact, waived their opposition to the superseding cause defense asserted by Defendants throughout their Opening Memorandum, by failing to even acknowledge it. **Dkt. 240 ¶¶ 14-15.** Further, Plaintiffs fail to demonstrate how NP Decker could possibly be liable for Ms. Fiebrink's alleged suffering and death, when he specifically ordered that she receive CIWA monitoring, twice a day, for a five-day period. It is undisputed that neither NP Decker nor any other Armor medical personnel was made aware that Ms. Fiebrink was exhibiting signs of withdrawal. Further, Plaintiffs offer *no* evidence that NP Decker was obligated to personally follow up to ensure that his intake orders were being followed. In sum, none of the admissible evidence presented by Plaintiffs raises a triable issue as to the constitutional sufficiency of NP Decker's actions, and the claim against him should thus be summarily rejected by this Court under either constitutional standard.

### C. No Triable Issue Exists in Connection with Plaintiffs' Evolving *Monell* Claims

#### 1. The Record Evidence does not Support Plaintiffs' New Failure to Train Claim

In their opposition to Defendants' Motion to Dismiss (**Dkt. 116**) Plaintiffs identified six separate *Monell* claims. Defendants moved for summary judgment on each of those claims. Now, without seeking leave of the Court to file an amended complaint, Plaintiffs assert five different *Monell* claims. **Dkt. 240.** This Court should bar Plaintiffs from attempting to amend their complaint via summary judgment filing. *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996)("[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"). Moreover, because Plaintiffs did not address any of Defendants' arguments as to the six *Monell* claims referenced in their response to Motion to

10

Dismiss, they have effectively waived any opposition to those arguments and conceded that summary judgment should be granted on those claims. *Abrego*, 907 F.3d at 1012.

Plaintiffs now assert a single-incident *Monell* claim based on Armor's alleged failure to train its nurses on several of its policies. But Plaintiffs' claim misses the mark in several very important aspects. First, while *Monell* claims of the single incident variety are cognizable under Section 1983, they are extremely limited and only applicable where the facts demonstrate that "a violation of federal rights may be a highly predictable consequence of a failure to equip [officials] with specific tools to handle recurring situations." *Terry v. County of Milwaukee,* Case No. 17-CV-1112-JPS, 2019 U.S. Dist. LEXIS 5197 at *36 (E.D. Wis. January 11, 2019), quoting *Bd. Of County Comm'rs v. Brown,* 520 U.S. 397, 409 (1997). The Defendants' policymakers must be shown to '"know to a moral certainty" that a constitutional violation will occur but for adequate safeguards. *Id.,* quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) n.10. The undisputed facts do not support such a finding here. There is no evidence that the nurses involved in Ms. Fiebrink's care were deliberately indifferent to her needs. The record establishes that each of them attempted to perform CIWA monitoring on Ms. Fiebrink, but she refused those services. There is no evidence that Ms. Fiebrink was incompetent or unable to make an informed decision about her care. Plaintiffs have offered no expert testimony that the operative standard of care compelled them to escalate Ms. Fiebrink's refusals or convince her to allow monitoring. It is also undisputed that Ms. Fiebrink had received taper medication on many of her prior visits and a health assessment from a medical provider earlier in 2016. **Dkt 212, ¶¶71, 72.**[5] There is no evidence in the record even suggesting that any of Armor's personnel were aware that Ms. Fiebrink was going through

---

[5] Plaintiffs also make passing reference that their Monell claims are caused, in part, or alleged under staffing and the supposed unavailability that nurse practitioners on weekends. The Plaintiffs have no record support for those claims. The Shansky Report is inadmissible and the nurse practitioners and physicians are on call during weekends (Harlan Declaration.)

withdrawal or exhibiting signs associated with withdrawal. Moreover, the undisputed facts establish that NP Decker ordered that Ms. Fiebrink be monitored for heroin withdrawal. **Dkt 212, ¶¶59, 60, 62.** Finally, unlike the situation in the cases cited by Plaintiffs, the training here relates to licensed medical professionals who, by virtue of their credentialing and licensing, have received the education and training necessary to provide constitutionally-appropriate care. *See Connick v. Thompson,* 563 U.S. 51, 67 (2011) (recurring constitutional violations due to lack of training not obvious, given the significant training that prosecutors undergo generally).[6]

Second, the record does not support a finding that there was a complete failure to train nursing personnel regarding Armor's policies and care for jail inmates – a proof requirement for single-incident *Monell* claims in the training context. *Estate of Williams v. Ind. State Police,* 26 F. Supp.3d 824, 858-861 (S.D. Ind. 2014)(single-incident failure to train plaintiff must do more than show a few officers received insufficient training; there must be a showing that the training program as a whole was inadequate.)[7] While Plaintiffs offer some evidence that a few of Armor's nurses had not been fully trained as to some of its policies, they offer no evidence that Armor's training program overall was constitutionally deficient. On the contrary, the undisputed evidence in the record reveals that Armor had a robust training program for its nurses as to its various policies – including how to treat inmates going through withdrawal. Harlan Declaration; **Dkt 212, ¶¶28, 29, 75.** Hence, the record here is radically different than the ones in the cases cited by Plaintiffs on page 19 of their Brief. In those cases, there was a complete absence of any viable

---

[6] There is also no evidence in the record as to who Armor's policymakers are for Monell purposes. This is yet another basis for rejecting Plaintiffs' Monell claims. See *Good v. City of Irving,* Case No. 3:06-CV-2133, 2009 U.S. Dist. LEXIS 24570 (N.D. Tex. March 26, 2009) at * 27.

[7] Plaintiffs rely upon the new opinions of Dr. Lewan and the unauthenticated, hearsay report of Dr. Shansky to support their failure to train argument. These materials are inadmissible and cannot form the basis for Plaintiffs' opposition to the instant Motion for Summary Judgment. *Lock Realty Corp. IX*, 2009 U.S. Dist. LEXIS 84069 at *15; *Looney v. Zimmer, Inc.,* 2004 U.S. Dist. LEXIS 17596 at **11-12; *Omaha Public Power Dist.,* 2002 U.S. Dist. LEXIS 6087 at **13-14.

training effort by the defendants.[8] Accordingly, the cases cited by Plaintiffs do not aid them at all in the summary judgment process.

### 2. Plaintiffs' Other Eleventh Hour *Monell* Claims are also Unavailing

Summary judgment is also appropriate on the additional, belated *Monell* claims. With respect to the "minimum-level-of-sickness" *Monell* claim, the Court should initially be aware that virtually all of the record cites on page 22 of Plaintiffs' Brief are non-existent. Further, Plaintiffs never allege in their Brief what the contours of that policy are. And they also fail to explain how Armor could have such a policy when the undisputed facts establish that Ms. Fiebrink received medication to treat her withdrawal symptoms on numerous occasions when she was jailed, despite scoring less than 8 on CIWA assessments. **Dkt. 212, ¶ 71; Response to Plaintiffs' PFOF ¶ 44**. Nor do they address Dr. Horton's testimony that had she been handling Ms. Fiebrink's case, she would have prescribed medications under the circumstances. That testimony wholly undercuts Plaintiffs' arguments about the existence of a supposed "minimum – level – of sickness" policy. While NP Decker indicated that the CIWA scale was used as a benchmark for when to initiate medications from his perspective, he never testified that Armor policy prevented medication from being prescribed unless a patient exhibited symptoms of drug withdrawal. And finally, Plaintiffs utterly fail in demonstrating the necessary notice to Armor's policymakers (completely unidentified by Plaintiffs) relative to the supposed harm associated with the minimum-level-of-sickness policy. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989); *Williams v.*

---

[8] While Plaintiffs rely upon the Report of Timothy Ryan in support of their claims in this case, Mr. Ryan's opinion regarding training of Armor's medical personnel is not admissible. He is not a medical expert and lacks any medical qualifications to offer any opinion as to what training is appropriate for medical professionals. **Dkt. 221.** And moreover, those opinions are conclusory and unreliable. **Dkt. 221.** Indeed, he offers no indication as to the prevailing standard for training of medical professionals like Armor nurses, or any indication as to how he concluded that the training was inadequate. He merely refers to the inadmissible report of Dr. Shansky in that regard. **Dkt. 221**. Nor has he submitted a sworn Declaration indicating that the Report at **Dkt. 221** is the Report he prepared in this case that is referenced in **Dkt. 231**.

13

*Milwaukee Cty.,* Case No. 18-CV-1045(JPS), 2019 U.S. Dist. LEXIS 5979 at *12 (E.D. Wis. January 14, 2019.)

Plaintiffs also miss the mark with regard to their undeveloped, one-per-year health assessment *Monell* claim argument. This claim fails because there is no admissible evidence that such a policy exists. Ms. Fiebrink's own situation demonstrates that inmates can receive multiple health assessments in the same year, given that she was scheduled for a second one in 2016 during her last jail stint. **Dkt. 212, ¶84.** Nor do Plaintiffs offer evidence of an inmate whose medical case merited multiple health assessments within the same year, but was denied them due to the supposed policy.[9] In short, summary judgment should be granted on both of these last-minute *Monell* claims.

### 3. Plaintiffs' Failure to Create a Triable Issue as to Causation also Supports Rejection of Their *Monell* Claims on Summary Judgment

Nowhere in their Brief do Plaintiffs explain how the facts in the record enable them to satisfy their causation burden. Instead, Plaintiffs merely parrot language from certain decisions holding that causation is an issue for jury determination. While that may be true, summary judgment is the "put up or shut up" moment in a case, and a non-moving party cannot ignore its obligation to introduce evidence demonstrating an entitlement to trial. *Springer v. Durflinger,* 518 F.3d 479, 484 (7th Cir. 2008). Further, Plaintiffs utterly ignore Defendants' superseding cause defense in its Opening Memorandum and the failure to marshal any arguments in opposition means that Plaintiffs have conceded this point. *Ennin, LLC*, 878 F.3d at 595. Finally, Plaintiffs' burden of demonstrating a triable issue on causation is made even more difficult by virtue of the

---

[9] Plaintiffs' Monell claims are also flawed because there is no evidence that the Defendants were "deliberately indifferent" in the medical care that was rendered to Ms. Fiebrink. The cases cited by Plaintiffs on the deliberate indifference issue all involve instances where the inmate or arrestee was known by the defendant to be in immediate need of medical treatment on account of statements made by the person or symptoms that were exhibited. But here, it was undisputed that no Armor nurse or other personnel was aware that Ms. Fiebrink was in distress or displaying symptoms associated with heroin withdrawal. In fact, Plaintiffs admit that the Correctional Officers never informed Armor about the diarrhea episode that forms the basis of their claims against the County (**Dkt. 238, at ¶69**). Nor is there any evidence of Ms. Fiebrink requesting medication or treatment and being denied the same.

14

undisputed evidence here, which shows that despite the existence of the alleged unconstitutional policies, Ms. Fiebrink was afforded constitutionally appropriate medical care in August of 2016 and prior thereto. Specifically, it is undisputed that she received a health assessment and taper medications during earlier jail stays in that same year. **Dkt. 212, at ¶71.** In fact, her withdrawal symptoms were managed without incident. Hence, it is difficult to understand how the policies Plaintiffs now assail could be the "moving force" behind the injuries Ms. Fiebrink allegedly sustained. If the policies were truly the "moving force" behind her alleged injuries, one would expect that those same policies would have prevented her from receiving appropriate care for the same medical condition, on those earlier occasions. Because Plaintiffs have not met their burden of raising a triable issue as to the causation element of their *Monell* claims, this is an independent basis for the grant of summary judgment in Defendants' favor.

### D. Plaintiffs' State Law Negligence Claim and Robert Martinez's Loss of Society and Companionship Claim are also Ripe for Summary Judgment

In responding to Defendants' summary judgment arguments relative to their state law tort claims, Plaintiffs detour into a lengthy discussion about state law immunity – an issue never raised by Defendants. Yet, they ignore, as set forth above, Defendants' superseding cause defense completely. This is grounds, in and of itself, for entering judgment in Defendants' favor as to the negligence claims. Additionally, Plaintiffs do not produce admissible, competent evidence to demonstrate that Armor and the nurses involved in Ms. Fiebrink's care violated the prevailing standard of care. Even if Dr. Lewan's new opinions were deemed timely, they are nevertheless inadmissible because they are conclusory and unreliable. Without competent, admissible medical expert testimony, Plaintiffs cannot, as a matter of law, raise a triable issue as to Defendants' liability. Finally, this Court should find that Plaintiffs have waived any opposition to Defendants' summary judgment arguments because their arguments are undeveloped, do not cite to any record

15

evidence and offer little more than a recitation of broad, general standards on Wisconsin negligence law. *Ennin, LLC*, 878 F.3d at 595.

Plaintiffs' treatment of Defendants' opposition to Robert Martínez' loss of society and companionship claim is similarly underwhelming. Indeed, Plaintiff Martínez does not even include an argument in his Brief. Rather, he refers the Court to an earlier filing in connection with a Motion to Dismiss. This failure to advance an argument, along with reference to record evidence supporting the argument, effectively serves as a concession relative to Defendants' position.

## CONCLUSION

For all the above reasons, and those set forth in Defendants' Opening Memorandum, this Court should grant summary judgment in their favor and dismiss Plaintiffs' claims, with prejudice.

Dated at Milwaukee, Wisconsin this 9th day of April, 2019.

By: */s/ Emery K. Harlan*
Emery K. Harlan
State Bar No. 1000240
Eric L. Andrews
State Bar No. 1068550
Carlos Pastrana
State Bar No. 1088286
735 N. Water Street, Suite 610
Milwaukee, WI 53202
(414) 436-0353 Phone
(414) 436-0354 Facsimile
emery.harlan@mwhlawgroup.com
eric.andrews@mwhlawgroup.com
carlos.pastrana@mwhlawgroup.com

**COUNSEL FOR DEFENDANTS**