| | |
|---|---|
| THE ESTATE OF KRISTINA ANN FIEBRINK, by Special Administrator Nathanial Cade, Jr.; THE ESTATE OF ANGELICA M. FIEBRINK; JOSE D. MARTINEZ, JR.; and ROBERT MARTINEZ,<br><br>Plaintiffs,<br>v.<br><br>ARMOR CORRECTIONAL HEALTH SERVICE, INC., et al,<br><br>Defendants | Case No. 18-CV-00832 |

# VERONICA WALLACE'S REPLY IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

Defendant, Veronica Wallace, LPN, by her attorneys, CUNNINGHAM, MEYER & VEDRINE, P.C., provides the following reply in support of her motion for summary judgment:

### A. This Court should disregard any purported expert opinion regarding Ms. Wallace, as it violates Rule 26(a)(2).

Plaintiff's medical expert, Dr. Lewan, issued a report which indicated he did not review Ms. Wallace's deposition transcript, and did not provide any specific criticisms to her care. Dkt. 225-3.[1] That silence, especially given the case law on the subject, is significant. Now recognizing the issue, Plaintiffs violate rules pertaining to expert disclosures as well as summary judgment responses in attempting to keep Ms. Wallace in the case.

As an initial matter, Plaintiffs' proposed statement of facts provides a list of purported

---

[1] A non-medical professional, Timothy Ryan, also did not comment on Ms. Wallace's care, and offers no opinion as to Ms. Wallace, though he attempted to do with respect to other medical staff. Dkt. 236, ¶¶ 202–209 (Plaintiffs' Proposed Statement of Facts). Ms. Wallace joins with co-Defendants that, Mr. Ryan fails to have an appropriate background to opine on medical care. Fed. R. Evid. 703.

opinions by Dr. Lewan and Mr. Ryan concerning other medical providers in the case, but do not provide any specific opinion regarding Ms. Wallace's care. (Dkt. 236, ¶¶ 193–209). Though Plaintiff filed an affidavit from Dr. Lewan with an opinion that concerns Ms. Wallace (impermissibly so, as discussed *infra*), such material is not presented in Plaintiff's Proposed Statement of Facts. *Compare* Dkt. 230 *with* Dkt. 236, ¶¶ 193–209.

The rules pertaining to summary judgment are simple and clear: supporting material that Plaintiffs rely upon must be included within their proposed finding of fact. Material not included is simply, and appropriately, disregarded. *See, e.g.*, *Clark v. Milwaukee County*, No. 04-C-890, 2006 U.S. Dist. LEXIS 71702, at *12 (E.D. Wis. Sep. 19, 2006) (disregarding material not contained within proposed findings of fact); *see also* L.R. 56.1(b)(6). Accordingly, on that ground alone, any expert opinion that Plaintiff has attempted to submit concerning Nurse Wallace must be disregarded.

Assuming *arguendo* that this Court proceeds forward to review Dr. Lewan's statements concerning Ms. Wallace, it should still reject them. The Federal Rules of Civil Procedure and relevant case law is exceedingly clear that an independent expert's report needs to lay out, explicitly, all opinions the expert holds, the methodology used to generate those opinions, and the facts to which the expert applied the methodology. Fed. R. Civ. P. 26(a)(2)(B)(i) ("The report must contain: (i) a <u>complete</u> statement of <u>all</u> opinions….") (emphasis added).

Thus, "[e]xpert reports cannot be 'sketchy, vague, or preliminary in nature'" and must be sufficiently complete "'so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Chappel v. SBC-Ameritech*, No. 05 C 7003, 2007 U.S. Dist. LEXIS 51133, at *3 (N.D. Ill. July 13, 2007) (citing *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998). The expert report "'must include 'how' and 'why' the expert reached a

result, not merely the expert's conclusory opinions.'" *Id.* at \*\*5-6 (citing *Salgado*, 150 F.3d at 741 n.6) (emphasis added). Broad statements and vague referrals simply do not cut it. *Id.* at \*8. Neither does the failure to identify specific facts or data considered by the expert with each proffered opinion. *See Siburt v. U.S. Bank*, No. 10-C-135, 2011 U.S. Dist. LEXIS 94531, at \*11-13 (E.D. Wis. Aug. 23, 2011). "Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores,* 217 F.3d 919, 924 (7th Cir. 2004).

Additionally, the completeness requirement of Rule 26(a)(2) is designed to be just that—a party cannot issue an expert report and then belatedly supplement after the disclosure deadline has passed. *Lexington Ins. Co. v. Horace Mann Ins. Co.*, N.D. Ill. No. 11-C-2352, 2015 U.S. Dist. LEXIS 120061, at \*27 (N.D. Ill. August 27, 2015). Otherwise, court-imposed deadlines would be "rendered . . . largely meaningless." *Id.* Similarly, a party cannot rely upon an expert's subsequent deposition testimony as a vehicle to provide information or opinions that should have been included in the initial report. *Id.*

The completeness requirement of Rule 26(a)(2) is significant in this case given the timing and proximity of trial. Plaintiffs agreed to an expert discovery schedule in which their disclosures were due a week before dispositive motions, and as part of a compressed expert schedule given the impending trial date. (Dkt. 182) (stipulated modification of the scheduling order). Plaintiffs were aware that Defendants and this Court would be relying upon the expert reports in submitting and reviewing dispositive motions.

With that background in existence, Dr. Lewan's report indicated that he did not review Ms. Wallace's deposition transcript. (Dkt. 225-3 at pp. 1-2). Dr. Lewan's disclosure did not provide any specific criticisms of Ms. Wallace's care, much less any specific methodology for his critique of Ms. Wallace's care (*e.g.,* a discussion of applicable standard of care for her profession in this

Page **3** of **15**
Case 2:18-cv-00832-AJS    Filed 04/09/19    Page 3 of 15    Document 258

particular context), and the specific bases or facts that were used to come to that particular conclusion. *See generally id.* Indeed, the only reference to August 26th, the date that Ms. Wallace encountered Ms. Fiebrink, pertains to understaffing, not with respect to Ms. Wallace's care. *See* Dkt. 235 ¶ 59 (unsupported denial of Ms. Wallace's encounter on August 26th, constituting an admission under L.R. 56.1(b)(2)(B)(i)); *and* Dkt. 225-3 at p. 3 (Lewan Report). Confirming this conclusion—that Plaintiff did not provide expert opinion on Ms. Wallace—is the fact that Plaintiffs' other expert witness, Mr. Ryan (who attempted to opine on other medical witnesses) is also completely silent as to Ms. Wallace. (Dkt. 236, ¶¶ 202–209 (Pls' PSOF regarding Mr. Ryan's opinion)); *see also generally* (Dkt. 221-6 (Ryan Report)).

Plaintiffs have now sought to cure this deficiency by inappropriately offering several assertions concerning Dr. Lewan's review. First, in responding to Ms. Wallace's proposed statement of fact that Dr. Lewan did not review Ms. Wallace's deposition, Plaintiffs admit that his report does not have the deposition listed, but deny (without any supportive citation) that he did not review it. Dkt. 233 at 3-4, ¶ 110. The failure to provide any citation in denial requires the Court to deem the statement of fact admitted. L.R. 56.1(b)(2)(B)(i) (requiring specific references in the case of disagreements). Beyond that, the assertion that Dr. Lewan reviewed Ms. Wallace's deposition, but did not include that in his report, is troubling and certainly against the intent of Fed. R. Civ. P. 26(a)(2). At best, this can be construed as an attempt by Plaintiffs (without seeking leave of Court) to supplement a preliminary report with new opinions and bases after the expert disclosure deadline and after dispositive motions were briefed. This Plaintiff cannot do. *E.g.*, *Lexington Ins. Co.*, 2015 U.S. Dist. LEXIS 120061, at **25-26.

Second, in attempting to deny Ms. Wallace's proposed finding of fact that Dr. Lewan did not opine on Ms. Wallace's care, Plaintiffs' respond with a single, partial sentence excerpt from

Dr. Lewan's report, which notes that unspecified "medical staff ignored and failed to provide any care whatsoever." (Dkt. 233 at 4, ¶ 111). As an initial matter, this interpretation is again offered by Plaintiffs alone, without any discussion from Dr. Lewan. Indeed, though Dr. Lewan's affidavit presented an (inappropriate) opportunity to confirm that the partial sentence cited by Plaintiffs contained a critique of Ms. Wallace, Dr. Lewan is curiously silent on that topic. *See generally* (Dkt. 230). Second, this assertion is completely insufficient under Rule 26(a)(2) to constitute a proper expert opinion. There is no indication, especially given that Ms. Wallace's name appears *nowhere* in Dr. Lewan's report, and her transcript is not noted as one that he reviewed, that his blanket statement concerning "medical staff" specifically contemplated and addressed Ms. Wallace's care. Beyond that, the statement that Plaintiffs cite to is part of a run-on, off-the-cuff sentence that contains multiple conclusory assertions. (Dkt. 225-3 at p. 2, contained within the last paragraph on the page). The citation referred to after the sentence in question (Dr. Horton's deposition at p. 103) is completely inapposite to the discussion. *Compare* (Dkt. 225-3 at p. 2), *with* (Dkt. 242-24, 103:1-25 [Dr. Horton deposition transcript]). There is no discussion of data that Dr. Lewan utilized, nor a discussion of the methodology purportedly applied. This is the very type of "sketchy, vague", "off the cuff" assertions prohibited by Rule 26(a)(2). *Chappel*, 2007 U.S. Dist. LEXIS 51133, at *3; *Lang*, 217 F.3d at 924.

Third, Plaintiff attempts to provide a completely new opinion by Dr. Lewan in an affidavit filed in response to Ms. Wallace's dispositive motion. (Dkt. 230 at 3, ¶ 12). As noted above, this was not incorporated in Plaintiff's proposed statement of facts and should be disregarded outright. *Clark*, 2006 U.S. Dist. LEXIS 71702 at *12 (disregarding material not contained within proposed findings of fact); *see also* L.R. 56.1(b)(6).

Additionally, the affidavit is a bald attempt to impermissibly supplement Dr. Lewan's

disclosure with a new opinion—without seeking leave of Court to do so. *E.g.*, *Lexington*, 2015 U.S. Dist. LEXIS 1200061, at \*\*25–26 (citing various cases explaining that it is impermissible to supplement an expert disclosure with new opinions after the disclosure deadline). The new topic discussed ("ordering an initial assessment completed by the end of the day, as practitioners were not scheduled . . .") is not touched upon in the initial report at all. *Compare* Dkt. 230 at 3, ¶ 12 *with* Dkt. 225-3. The discussion in the affidavit is a completely different topic than the partial sentence excerpt that Plaintiffs assert was Dr. Lewan's opinion against Ms. Wallace. This attempt only highlights the reality that Dr. Lewan did not present an opinion regarding Ms. Wallace in his initial disclosure.

Furthermore, Dr. Lewan's affidavit fails to provide a sufficient opinion under Rule 26(a)(2). Dr. Lewan fails to provide the data he reviewed (even though Plaintiffs assert that he reviewed Ms. Wallace's deposition transcript, Dr. Lewan remains curiously silent on the subject) or the methodology that he employed. (Dkt. 230 at p. 3, ¶ 12). Even with a second (albeit impermissible) bite at the apple, Plaintiffs again forward conclusory, "off the cuff" remarks that do not pass Rule 26(a)(2) muster. *Chappel*, 2007 U.S. Dist. LEXIS 51133, at \*3; *Lang*, 217 F.3d at 924.

As the Seventh Circuit has noted, "[f]ailure to comply with Rule 26(a)(2)'s requirements results in sanction: the offending party is not allowed to interduce the expert witness's testimony as "evidence on a motion, at a hearing, or at a trial." *Ciomber*, 527 F.3d at 641 (citing Fed. R. Civ. P. 37(c)(1)) (other citation omitted). The sanction is "'automatic and mandatory' unless the offending party can establish 'that its violation of Rule 26(a)(2) was either justified or harmless.'" *Id.*

Here, there is a clear failure to comply with Rule 26(a)(2) disclosure requirements, and a

wholesale lack of justification or harmlessness. Dr. Lewan's report substantially falls short of Rule 26(a)(2) requirements. Plaintiffs provide no satisfactory explanation for Dr. Lewan's vague, off-the-cuff opinions, especially when compared to the detail seen in their other expert's report. Nor do Plaintiffs provide a cogent, supported explanation as to Dr. Lewan's lack of reference to Ms. Wallace in his initial report. Plaintiffs offer no explanation as to why they had Dr. Lewan issue new opinions in his affidavit—nor did they even seek leave of Court to do so—and offer no explanation as to why Dr. Lewan's newfound opinions also fail to meet Rule 26(a)(2) requirements. Nor could Plaintiffs hope to offer such justification. Plaintiffs' attempt is analogous to Dr. Lewan testifying as to such matters for the first time at deposition or at trial, and the Seventh Circuit has unmistakably held this to be improper. *Ciomber*, 527 F.3d at 642. The failures here are fundamental and cut to the heart of the Rule.

Moreover, allowing Plaintiff to amend their disclosures at this stage works significant prejudice on Ms. Wallace. Plaintiffs' disclosures were due on March 1, 2019. *See* Court Order of 2/12/19 (granting stipulated schedule). Neither of Plaintiff's two expert witnesses mentioned Ms. Wallace or her care, nor did either witness indicate that they reviewed Ms. Wallace's deposition. *See generally* (Dkt. 225-3) (Lewan Report) & (Dkt. 221-6) (Ryan Report). The fact that both experts were silent on Ms. Wallace's care, especially considering the existence of commentary on other medical providers, indicated that Plaintiffs were not presenting expert critique of Ms. Wallace's care. Defendants' dispositive motions were due a week later (3/8/19), and Ms. Wallace's motion was predicated on the lack of expert opinion against her. (Dkt. 224). The reliance on Plaintiffs' expert disclosures regarding this issue was appropriate given that a main purpose of Rule 26(a)(2) is "'to shorten or decrease the need for expert depositions,'" and the impending trial and the agreed-to timing of the expert witness disclosures and dispositive

Page **7** of **15**
Case 2:18-cv-00832-AJS    Filed 04/09/19    Page 7 of 15    Document 258

motions. *Ciomber*, 527 F.3d at 642 (internal citation omitted); *see also* Dkt. 182. Thus, Ms. Wallace is thus significantly prejudiced by Plaintiff's attempt to recharacterize and add to their expert disclosures in an attempt to keep Ms. Wallace in the case.

Additionally, after Ms. Wallace (and other co-defendants) filed their dispositive motions on March 8th, Plaintiffs were put on notice of their deficient expert reports. Plaintiffs remained silent until they filed their reply on April 2nd. Dr. Lewan's supplemental affidavit is dated April 1, 2019 (Dkt. 230). By that time, Defendants' expert witness disclosure deadline of March 28th had passed. *See* Court Order of February 12, 2019 (setting deadlines). Ms. Wallace's decisions regarding expert disclosures were predicated upon the opinions—or lack thereof—contained in Plaintiffs' disclosures. Plaintiffs have accordingly attempted to take advantage of the vague nature of Dr. Lewan's report to create an impermissible moving target. *E.g.*, *Lauer v. NIC Indus.*, No. 17-cv-655-wmc, 2018 U.S. Dist. LEXIS 82939, at *8 (W.D. Wis. May 17, 2018). Ms. Wallace has been deprived of the ability to fully assess Dr. Lewan's report and respond accordingly with expert testimony. Indeed, given the inherent vagueness of Dr. Lewan's submissions, this deprivation is an ongoing harm.

If this Court is inclined to allow Plaintiffs to proceed with respect to Dr. Lewan, Ms. Wallace would request an opportunity to supplement her expert disclosures. The difficulty, is, of course, twofold: first, trial is right around the corner. Second, Dr. Lewan's vague report inevitably means that he will be (impermissibly, in Defendant's view) modifying his expert report at his deposition to fill in the fundamental deficiencies noted above. *E.g.*, *Lexington Ins. Co.*, 2015 U.S. Dist. 120061, at *26. The totality of these circumstances requires that this Court disregard any attempt by Plaintiffs to present expert testimony regarding Ms. Wallace's care.

Finally, Plaintiffs have attempted to shoehorn in inappropriate opinion testimony regarding

Ms. Fiebrink's care and treatment at the Milwaukee County Jail through Dr. May as well as post-incident corrective measures taken by Armor. This Court should properly disregard these materials. First, Dr. May was not personally involved in treatment, and thus does not have sufficient personal knowledge to testify as to the care that was provided to Ms. Fiebrink. *E.g.,* (Dkt. 242-18, 15:22, 16:3; 16:24–17:2); Fed. R. Evid. 601, 602. Second, to the extent that Dr. May was asked to provide his opinions after reviewing the record in question, this should be barred as Dr. May was not disclosed as an expert witness. (Dkt. 256, ¶ 5); Fed. R. Civ. P. 26(a)(2); 37(c). Accordingly, Dr. May's testimony is accordingly without evidentiary value and should be appropriately disregarded.

With respect to the post-incident corrective actions taken by Armor, these are also inadmissible for a variety of reasons. First, the author of these materials, Ms. McCullough, was not disclosed as an expert. Dkt. 256, Dkt. 255; Fed. R. Civ. P. 26(a)(2); 37(c). Ms. McCullough is also not a medical professional, and thus any opinion that arguably exists in these documents lack the requisite foundation for admission. Fed. R. Evid. 703. Finally, as noted in Defendants' response to Plaintiff's proposed statement of facts, such material is inadmissible under the self-critical examination doctrine and Federal Rule of Evidence 407, which precludes admission of subsequent remedial measures. *E.g.*, Dkt. 254, ¶ 57.

### B. This Court should disregard Plaintiffs' Brief in Opposition, as, without leave of Court, Plaintiffs incorporated a previously-filed response in their brief, thus vastly exceeding the page limit in contravention of this Court's Local Rules.

Response briefs are limited to 30 pages, and briefs exceeding those page limits may not be filed without prior leave of Court. L.R. 7(f). The substantive portion of Plaintiffs' brief runs approximately 28 pages. *See generally* Dkt. 240. However, Plaintiffs' attempt to respond to arguments concerning Count III of the Complaint (the loss of society claim), is a single footnote

that states that "[f]or purposes of judicial economy," Plaintiffs were including "all of the arguments presented in D. 48" with respect to prior motions to dismiss. (Dkt. 240, at 2, n.2). The substantive response in that filing is approximately 18 pages. *See generally* Dkt. 48. Thus, Plaintiffs' responsive brief essentially contains 46 pages of argument. Plaintiffs did not seek leave of court to file an oversized brief, possibly in light of this Court denying a prior request by co-Defendants to file an oversized brief. (Dkt. 192). This Court should accordingly disregard Plaintiffs' responsive brief, or, in the alternative, deem Plaintiff to have waived argument on Count III.

### C. This Court Should Appropriately Disregard Improper Responses to Findings of Fact and Improperly Asserted Factual Contentions in Plaintiff's Responsive Brief.

To appropriately resist a proposed finding of fact, a party must provide adequate support for such denial. L.R. 56(b)(2)(B)(i); *see also, e.g.*, *SJ Props. Suites v. STJ, P.C.,* 759 F.Supp.2d 1032, 1053 n.22 (E.D. Wis. 2010). "To the extent that a party has responded to a proposed finding of fact with the statement 'deny' without citing any supporting factual material, that party has failed to raise a genuine factual dispute." *SJ Props.*, 759 F. Supp. 2d at 1053 n. 22. A party also cannot raise "factual statements in briefs that were not included in the proposed findings of fact." *Id.* Finally, in resisting summary judgment, a party may not file more than 100 statements of additional facts. L.R. 56(b)(2)(B)(ii).

The Court should appropriately disregard any assertion made outside of these rules. First, as noted in Defendants' joint response to Plaintiffs' proposed statement of facts, Plaintiffs exceeded the Local Rule limited by over 100 statements. *See generally* Dkt. 236. Plaintiffs did so after being aware of a compressed briefing time frame, seeking additional time to file a response (which resulted in this Court's ordering no additional extensions, *see* Order of April 1, 2019), and not seeking leave from the Court to file an oversized statement of proposed facts. As with their

oversized brief, Plaintiffs thought it sufficient to drop a footnote explaining their own rationale for proceeding forward without leave of Court. (Dkt. 236, p. 1, n.1). Further compounding the issue is Plaintiffs' attempt, without authority, to incorporate separate findings of fact regarding the Milwaukee County Jail into their brief. (Dkt. 240 at p. 6).

Plaintiffs have provided no legal basis that responding to multiple motions for summary judgment automatically allows them to pool together statements of fact to exceed the response allotment under L.R. 56(b)(2)(B)(ii). Again, Plaintiffs have attempted to skirt this Court's clear dictates regarding size limitations. This Court should not countenance Plaintiffs attempt to do so, and should disregard all purported statements of fact beyond the first 100 statements presented in Plaintiffs' proposed findings of fact in opposition to the Armor Defendants' motions. (Dkt. 236).

Plaintiff has also inserted a multitude of secondary sources in their resistance to summary judgment. *See e.g.*, Dkt. 240 at 21–22 & nn. 3–10. These are offered without corresponding statements of fact, and without any foundational basis. They, and others, should be appropriately disregarded by the Court. *SJ Props.*, 759 F. Supp. 2d at 1053 n. 22.

Finally, in several instances, Plaintiff has attempted to insert additional facts after admitting to a certain fact within Defendants' proposed statement of facts. *E.g.*, Dkt. 235, p. 11, ¶ 55. Such practice is improper, and those additional facts should be disregarded. *See Knights v. Williams*, No. 02-C-5017, 2005 U.S. Dist. LEXIS 15526 at *5 (N.D. Ill. 2005) (noting that "the Seventh Circuit has consistently affirmed that this practice is improper" in an analogous situation).

### D. Plaintiff has not presented sufficient evidence to overcome Ms. Wallace's Motion for Summary Judgment.

The foregoing reveals the reality of Plaintiffs' argument against Ms. Wallace: attempt to throw vague, unsupported accusations against her, muddle up the arguments against her in a joint response, and hope that this Court throws its hands up and allows the case against her to proceed

to trial. However, this Court should decline to do so, as Plaintiff has failed to sufficiently "put up" with respect to Ms. Wallace. *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012).

> 1. *The case is appropriately decided under an Eighth Amendment standard.*

Plaintiffs do not directly address the case law cited in support of the application of the Eighth Amendment in this case. Rather, they assert that *Larry v. Department of Corrections*, 06-C-223-C, 2006 U.S. Dist. LEXIS 30437 (W.D. Wis. 2006) should carry the day. As the Court can readily discern from the case, it is inapposite to the posture at hand, as *Larry* did not concern conditions of confinement, but rather the right to a preliminary hearing in a timely fashion. *See generally id*. As noted by the County, the Seventh Circuit has previously applied the Eighth Amendment to a probation violator's condition claim. *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002). This is conceptually in line with other decisions that it is the Eighth Amendment that applies to a conditions claim after conviction. *Lopez*, 464 F.3d 711, 719 (7th Cir. 2006).

> 2. *Regardless of the test applied, there is no basis for this case to proceed to trial against Nurse Wallace.*

With respect to the constitutional claims, as this Court noted in *Terry v. County of Milwaukee*, a Fourteenth Amendment medical claim must clear several issues, which this court distilled down to the following: "(1) the defendants made a volitional act with regard to [the medical condition]; (2) whether the act was objectively unreasonable under the circumstances in terms of treating or assessing [the condition]; and (3) whether the defendants acted purposefully, knowingly, or recklessly with respect to the risk of harm. *Terry v. County of Milwaukee*, No. 17-CV-1112-JPS, 2019 U.S. Dist. LEXIS 5197, at *21 (E.D. Wis. Jan. 11, 2019).

When resolving the issues of fact, the Court should determine that Plaintiffs have conceded that Ms. Wallace attempted to assess Ms. Fiebrink on August 26, 2016, but that Ms. Fiebrink refused treatment. First, Plaintiffs failed to provide appropriate citation to the statement of fact

that Ms. Wallace attempted to perform an assessment on August 26th—Plaintiffs merely said "Deny," which is insufficient. (Dkt. 235, p. 13, ¶ 59)[2]; *SJ Props.*, 759 F.Supp.2d at 1053 n. 22. . Second, Plaintiffs' attempt to dispute that Ms. Fiebrink refused Ms. Wallace's assessment (Dkt. 233, ¶ 102) is unavailing: Plaintiff's denial addresses a collateral aspect—whether a refusal form was filled out—not the factual contention at issue that a refusal occurred. (Dkt. 233, ¶ 102). The citation provided (34:15–35:5) focuses upon the completion of the written refusal form, not whether Ms. Wallace saw Ms. Fiebrink. (Dkt. 242-7, 34:15–35:5). In fact, Plaintiffs admit that Ms. Wallace entered Ms. Fiebrink's refusal in the electronic record to ensure continuity of care. (Dkt. 233 ¶ 105). Furthermore, Plaintiffs themselves seek to establish that Ms. Fiebrink saw Ms. Wallace and refused care. (Dkt. 254, p. 39 at ¶¶ 111, p. 40, ¶ 118). And, Plaintiffs have agreed that Ms. Wallace had the right to refuse treatment. Dkt. 235, p. 11, ¶ 55

Similarly, Plaintiffs' denial that Ms. Wallace thought Ms. Fiebrink was not in distress and was okay is also insufficient, as the citation provided, concerning whether a written refusal form was filled out (especially considering Plaintiffs' admission as to the electronic refusal entry) is unresponsive to the assertions presented. (Dkt. 233 ¶¶ 103–104). So too is Plaintiffs' denial (using the same citation) that Ms. Wallace's customary practice was to advise the patient of consequences of refusal, and that Ms. Wallace advised Ms. Fiebrink of that fact. (Dkt. 233, ¶¶ 107–108). Plaintiffs admit, though, that Ms. Wallace believed her care to be proper. (Dkt. 233 ¶ 109).

On the other hand, Plaintiffs offered no specific expert criticism regarding Wallace in their proposed statement of fact. While Plaintiffs attempt to assign blame to Wallace through Armor's corrective action plan, there are myriad issues with this attempt. First, Plaintiffs attempt to

---

[2] Ms. Wallace adopted Armor's statement of facts 1–100, with a few (under the 150 limit) of her own. Dkt. 225.

establish these facts through additional fact that they asserted in response to Defendants' proposed statement of facts. (Dkt. 240 at 14, citing "DPFOFA ¶ 62, 74"); *see also* (Dkt. 235 at p. 14, ¶ 62 & p. 17, ¶ 74) (Plaintiff's Response to Armor's Proposed Facts). As noted above, this is improper. *Knights*, 2005 U.S. Dist. LEXIS 15526 at \*5. Beyond that, the facts cited do not discuss Ms. Wallace, they discuss other medical providers. *See* (Dkt. 235 at p. 14, ¶ 62 (discussing Ms. Cage); Dkt. 235 p. 17, ¶ 74 (discussing Ms. Shaikh)). Indeed, the other citations to "DPFOFA ¶ 115, 121, 128" do not correspond to any citation, as Armor's proposed findings of fact end at 100. (Dkt. 240, p. 14); *see also Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002) ("'Judges are not like pigs, hunting for truffles buried in' the record.") (citation omitted). In any event, as noted above, the corrective action plan and any alleged opinions derived from it are inadmissible either under Fed. R. Evid. 407 or under federal common law, are offered without suitable foundation (either generally or with respect to Ms. Wallace specifically), and were not disclosed as opinion testimony.

Thus, even after Plaintiffs have attempted to throw everything against the proverbial wall to see what sticks, the following facts remain: Ms. Wallace encountered Ms. Fiebrink on August 26th to assess Ms. Fiebrink. Ms. Fiebrink refused assessment, which was her right to do. Ms. Wallace observed that Ms. Fiebrink was not in any distress, and documented the refusal electronically. Ms. Wallace customarily advised patients of the potential dangers associated with refusals of care, and advised Ms. Fiebrink that she could not help her if she refused care. Ms. Fiebrink persisted in her refusal, as was her right. Ms. Wallace documented the refusal in Ms. Fiebrink's chart to allow for continuity of care. Ms. Wallace believed that her care was appropriate. And, finally, though avenues were available for Ms. Fiebrink to request medical assistance if she felt the need, she did not do so after her encounter with Ms. Wallace. Dkt. 235,

¶¶ 69–71.

The deficiencies noted in Ms. Wallace's opening brief also still remain: Plaintiffs have not appropriately asserted the requisite expert testimony that Ms. Wallace's care was deficient, much less to the extent that it could be deemed negligent, reckless, or deliberately indifferent. Indeed, Plaintiffs have not asserted any grounds, beyond mere speculation, that Ms. Fiebrink was suffering any withdrawal symptoms at the time of the encounter with Ms. Wallace days before her passing, much less that Ms. Fiebrink was in such a state that there was a substantial risk of serious harm to her. Given that—along with 1.) Ms. Fiebrink's repeated, documented refusals for assessment in the record; 2.) Ms. Fiebrink's decisions not to independently seek medical attention in the time after her encounter with Ms. Wallace; and 3.) the only competent expert evidence present before this Court is that Ms. Fiebrink's passing was due to natural causes unrelated to withdrawal—Plaintiffs have also provided no competent evidence that Ms. Wallace proximately caused any harm to Ms. Fiebrink. *Whitlock v. Brueggemann,* 682 F.3d 567, 572–83 (7th Cir. 2012).

### E. Conclusion.

For the above reasons, this Court should grant Ms. Wallace's motion.

Respectfully submitted,

/s/ Chad M. Skarpiak
Michael R. Slovis
Peter J. Strauss
Chad M. Skarpiak (IL Bar #6304021)
CUNNINGHAM, MEYER &
VEDRINE, P.C.
One East Wacker Drive, Suite 2200
Chicago, Illinois 60603
(312) 578-0049
mslovis@cmvlaw.com
pstrauss@cmvlaw.com
cskarpiak@cmvlaw.com